## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

ATLAS COPCO CONSTRUCTION   )
MINING TECHNIQUE USA LLC, a   )
Delaware Limited Liability Company,   )
and ATLAS COPCO CUSTOMER   )
FINANCE USA LLC, a New Jersey   )
Limited Liability Company   )
  )
V.   )    No.
  )
INDIE ENERGY SERVICES   )
COMPANY, LLC, an Illinois Limited   )
Liability Company, and DANIEL   )
CHEIFETZ, an individual.   )

```
FILED: APRIL 25, 2008
08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN
```

### VERIFIED COMPLAINT

Plaintiffs, ATLAS COPCO CONSTRUCTION MINING TECHNIQUE USA LLC ("CMT") and ATLAS COPCO CUSTOMER FINANCE USA LLC ("ACF") by their undersigned counsel, for their Complaint against defendants INDIE ENERGY SERVICES COMPANY, LLC ("Indie Energy") and DANIEL CHEIFETZ ("Cheifetz"), an individual, state as follows:

### NATURE OF ACTION

1.    This is an action to recover property, amounts due on Indie Energy's accounts with Plaintiff, and fees, costs, and expenses, based on Indie Energy's failure to make payments to Plaintiff and Cheifetz's personal guarantee of those payments.

### PARTIES

2.    Plaintiff CMT is a Delaware Limited Liability Company with its principal place of business in Commerce City, Colorado. Its sole member is Atlas Copco North America LLC, a Delaware Limited Liability Company with its principal place of business in New Jersey. Atlas

Copco North America LLC has two members: Atlas Copco USA Holdings Inc., a Delaware Corporation with its principal place of business in New Jersey, and Atlas Copco Finance S.a.r.l., a Luxembourg corporation.

3.    Plaintiff ACF is a Delaware Limited Liability Company with its principal place of business in New Jersey. Its membership is identical to that of CMT. Specifically, its sole member is Atlas Copco North America LLC, a Delaware Limited Liability Company with its principal place of business in New Jersey. Atlas Copco North America LLC has two members: Atlas Copco USA Holdings Inc., a Delaware Corporation with its principal place of business in New Jersey, and Atlas Copco Finance S.a.r.l., a Luxembourg corporation.

4.    Defendant Cheifetz is a citizen of Illinois, residing at 1000 Michigan Avenue, Wilmette, Illinois 60091.

5.    Defendant Indie Energy is an Illinois Limited Liability Company with its principal place of business located at 1020 Church Street, Evanston, Illinois 60201. Its sole member is Defendant Cheifetz, a citizen of Illinois.

## JURISDICTION AND VENUE

6.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy, without interest and costs, exceeds $75,000.

7.    This court has personal jurisdiction over Defendants because of Defendants' presence in, and contacts with, the forum state.

8.    Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) because both Defendants reside therein, a substantial

part of the events or omissions giving rise to the claim occurred therein, and a substantial part of the property that is the subject of the action is situated therein.

## FACTS COMMON TO ALL COUNTS

9.      Plaintiffs are, and were at all relevant times, engaged in the business of financing, leasing, and renting, among other things, construction and mining equipment.

10.     On or about July 17, 2006, CMT and Indie Energy entered into a Master Capital Equipment Lease ("T2W Agreement") whereby Plaintiff leased to Indie Energy an Atlas Copco drill, model number T2W, serial number 6201, attached to a vehicle, year 1997, make International, model 2000 Series 2674, vehicle ID number 1HTGLATT3VH431381, in exchange for periodic rent payments. CMT delivered said property to Indie Energy. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit A**.

11.     On or about July 18, 2006, Defendant Cheifetz executed a Guarantee ("First Guarantee") whereby he personally agreed to assume any and all of Indie Energy's obligations to CMT upon Indie Energy's default or failure to pay on any of its obligations to CMT. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit B**.

12.     On or about April 12, 2007, CMT and Indie Energy entered into an Installment Loan & Security Agreement ("Compressor Agreement") whereby CMT loaned $99,450 to Indie Energy to be repaid in installments at an interest rate of 7.95%. In exchange, CMT retained a security interest in the collateral, an Atlas Copco compressor, model number XRVS 976CD, serial number 539285. The compressor was previously delivered on or about April 4, 2007. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group**

**Exhibit C**.

13.     On or about April 12, 2007, Defendant Cheifetz executed a Guarantee ("Second Guarantee") whereby he personally agreed to assume any and all of Indie Energy's obligations to CMT upon Indie Energy's default or failure to pay on any of its obligations to CMT. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit D**.

14.     On or about June 20, 2007, CMT and Indie Energy entered into an Installment Loan & Security Agreement ("TH60 Agreement") whereby CMT loaned $564,588.46 to Indie Energy to be repaid in installments at an interest rate of 7.95%. In exchange, CMT retained a security interest in the collateral, an Atlas Copco drill, model number TH60, serial number 21129, mounted on a Peterbilt truck, serial number 1NPAL40X-7-7D661603. The collateral was previously delivered on or about May 23, 2007. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit E**.

15.     On or about May 24, 2007, Defendant Cheifetz executed a Guarantee ("Third Guarantee") whereby he personally agreed to assume any and all of Indie Energy's obligations to CMT upon Indie Energy's default or failure to pay on any of its obligations to CMT. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit F**.

16.     CMT's rights under these agreements were duly assigned to ACF, a related entity.

17.     On or about March 7, 2008, ACF notified Indie Energy and Cheifetz that the T2W, Compressor, and TH60 accounts were overdue and delinquent. On or about March 24, 2008, Plaintiffs notified Indie Energy that it was in default and demanded return of the collateral.

A true and correct copy of relevant documents is attached hereto and made a part hereof as **Exhibit G**.

18.    As of the date of this Complaint, Indie Energy owes $187,497.81 on the T2W Agreement, $72.571.79 on the Compressor Agreement, and $529,575.87 on the TH60 Agreement.

19.    As of the date of this Complaint, Indie Energy has an outstanding consumables balance of $57,078.05.  A true and correct copy of relevant documents is attached hereto and made a part hereof as **Exhibit H**.

### COUNT I:  ACTION FOR REPLEVIN

20.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-19 as though fully set forth herein.

21.    After executing the above-referenced Agreements, Indie Energy became delinquent in its payments.

22.    On or about March 7, 2008, Plaintiffs notified Indie Energy that the accounts were overdue and delinquent.  Indie Energy refused to make the required payments, and continues to do so.  On or about March 24, 2008, Plaintiffs notified Indie Energy that it was in default and demanded return of the collateral.

23.    Due to Indie Energy's default on the three Agreements, Plaintiffs are entitled to the immediate possession of (1) the T2W drill, serial number 6201; (2) the vehicle, year 1997, make International, model 2000 Series 2674, vehicle ID number 1HTGLATT3VH431381; (3) the compressor, model number XRVS 976CD, serial number 539285; (4) the TH60 drill, serial number 21129; and (5) the Peterbilt truck, serial number 1NPAL40X-7-7D661603.

24.     Defendants' refusal to surrender possession of said property is wrongful and in violation of Plaintiffs right to immediate and exclusive possession of this equipment.

25.     As a proximate result of Defendants' wrongful possession and detention of said property, Plaintiffs have suffered, and continue to suffer, the loss of use of said property, and the depreciation of said property.

26.     Plaintiffs have incurred, and continue to incur, the cost of possession, including, without limitation, attorney's fees, court costs and litigation expenses, in an attempt to enforce their rights.

27.     Said property not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of Plaintiffs, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against Plaintiffs.

28.     WHEREFORE, Plaintiffs request this Court enter an Order and Judgment granting Plaintiffs the following relief:

A.     Immediate possession and delivery of the property described herein;

B.     Damages for the detention of the property, while the same was wrongfully detained by Defendant;

C.     Their expenses, attorney's fees and other costs of collection; and

D.     Such other and further relief as this Court deems just and proper.

### COUNT II: BREACH OF CONTRACT (T2W AGREEMENT)

29.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-28 as though fully set forth herein.

30.     Indie Energy was notified by e-mail on or about March 7, 2008 that all of its accounts, including the T2W Agreement, were delinquent.

31.     Indie Energy has refused to pay the amounts due on said Agreement.

32.     Pursuant to ¶ 19(A) of said Agreement, Indie Energy is in default due to its continuing failure to pay amounts due under the Agreement.

33.     Pursuant to ¶ 19(F) of said Agreement, all sums due and to become due under said agreement are immediately due and payable to Plaintiffs.

34.     WHEREFORE, Plaintiffs request this Court enter an Order and Judgment granting Plaintiffs the following relief:

A.     Payment of the balance due under the T2W Agreement, including, but not limited to any unpaid principal, interest, and/or fees;

B.     Its expenses, attorney's fees and other costs of collection; and

C.     Such other and further relief as this Court deems just and proper.

**COUNT III:  BREACH OF CONTRACT (COMPRESSOR AGREEMENT)**

35.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-34 as though fully set forth herein.

36.     Indie Energy was notified by e-mail on or about March 7, 2008 that all of its accounts, including the Compressor Agreement, were delinquent.

37.     Indie Energy has refused to pay the amounts due on said Agreement.

38.     Pursuant to Section 4 of said Agreement, Indie Energy is in default due to its continuing failure to pay amounts due under the Agreement.

39.     Pursuant to said Agreement, the outstanding principal balance, with all accrued

and unpaid interest thereon, and all other amounts payable to Plaintiff under the terms of said Agreement are immediately due and payable to Plaintiffs.

40.    WHEREFORE, Plaintiffs request this Court enter an Order and Judgment granting Plaintiffs the following relief:

A.    Payment of the balance due under the Compressor Agreement, including, but not limited to any unpaid principal, interest, and/or fees;

B.    Their expenses, attorney's fees and other costs of collection; and

C.    Such other and further relief as this Court deems just and proper.

## COUNT IV: BREACH OF CONTRACT (TH60 AGREEMENT)

41.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-40 as though fully set forth herein.

42.    Indie Energy was notified by e-mail on or about March 7, 2008 that all of its accounts, including the TH60 Agreement, were delinquent.

43.    Indie Energy has refused to pay the amounts due on said Agreement.

44.    Pursuant to Section 4 of said Agreement, Indie Energy is in default due to its continuing failure to pay amounts due under the agreement.

45.    Pursuant to said Agreement, the outstanding principal balance, with all accrued and unpaid interest thereon, and all other amounts payable to Plaintiffs under the terms of said Agreement are immediately due and payable to Plaintiffs.

46.    WHEREFORE, Plaintiffs request this Court enter an Order and Judgment granting Plaintiffs the following relief:

A.    Payment of the balance due under the TH60 Agreement, including, but not limited

to any unpaid principal, interest, and/or fees;

B.    Their expenses, attorney's fees and other costs of collection; and

C.    Such other and further relief as this Court deems just and proper.

**COUNT V:  ACTION TO RECOVER AMOUNTS DUE ON AN ACCOUNT**

47.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-46 as though fully set forth herein.

48.    Indie Energy owes CMT $57,078.05 on the consumables account set forth in Exhibit H.

49.    Pursuant to the above-referenced Guarantees executed by Cheifetz, this amount is also due and payable in full by Cheifetz.

50.    WHEREFORE, Plaintiff CMT requests this Court enter an Order and Judgment against Defendants in the amount of $57,078.05, plus interest and costs, including attorney fees.

**COUNT VI:  ACTION TO RECOVER AMOUNTS DUE UNDER GUARANTEES**

51.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-50 as though fully set forth herein.

52.    Defendant Cheifetz executed three separate Guarantees, each corresponding to one of the above-referenced Agreements.

53.    Each Guarantee requires Cheifetz to promptly pay all of Indie Energy's obligations, indebtedness, and liabilities of any kind, including unrelated and after-acquired debt, due to Plaintiff upon Indie Energy's default on any agreement, in addition to costs and expenses, including attorney fees.

54.    As a result of Indie Energy's defaults on all three said Agreements, all three

accounts are immediately due and payable in full.

55.    In addition to the amounts due under the three said Agreements, Indie Energy has an outstanding consumables balance of $57,078.05. This balance is also immediately due and payable under said Guarantees.

56.    WHEREFORE, Plaintiffs request this Court enter an Order and Judgment granting Plaintiffs the following relief:

A.    Payment of the balance due under all three agreements, including, but not limited to any unpaid principal, interest, and/or fees;

B.    Payment of the outstanding consumables balance;

C.    Their expenses, attorney's fees and other costs of collection; and

D.    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

ATLAS COPCO CONSTRUCTION MINING
TECHNIQUE USA LLC and ATLAS COPCO
CUSTOMER FINANCE USA LLC

By:  /s/ Victor J. Pioli_____ _
            One of Their Attorneys

Joseph R. Marconi
Victor J. Pioli
JOHNSON & BELL, LTD.
33 W. Monroe Street
Suite 2700
Chicago, IL 60603
(312) 372-0770
(312) 372-9818 (fax)

## VERIFICATION

Gail Rovere, an Account Manager at Atlas Copco Customer Finance North America, being duly sworn on oath states that to the best of her knowledge, the information set forth in the foregoing Complaint is true and correct and that she has the authority to make this verification on behalf of herself and the foregoing Plaintiffs.

_____
Gail Rovere

Subscribed and Sworn to before
me this 23ʳᵈ day of April, 2008.

_____
Notary Public

GAIL E. DAVIS
NOTARY PUBLIC - New Jersey
No. 2292452
Commission Expires 11/15/2012

08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN

# GROUP EXHIBIT A

# Master Capital Equipment Lease

This Master Capital Equipment Lease (this "Lease") is entered into and between the Atlas Copco Construction Mining Technique USA Inc., a Delaware corporation with an address at 3700 E. 68th Avenue, P.O. Box 1159, Commerce City, Colorado 80022 ("Lessor"), and Indie Energy Services Company, LLC. with an address at 1202 Church St. Evanston, IL. 60201 ("Lessee", and together with Lessor, the "Parties") and the parties hereto agree as follows:

1.  Equipment Leased.  Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property identified on **Exhibit/s A** (with all attachments, replacement parts, substitutions, additions, repairs and accessories incorporated therein and/or affixed thereto, and proceeds thereof, the "Equipment").

2.  Term.  The term of this Lease (the "Term") shall begin on the Effective Date and shall end on the date set forth on **Exhibit/s A**.

3.  Payments.  During the Term Lessee shall pay to Lessor base rent ("Base Rent") as set forth on **Exhibit/s A**. Lessee shall begin paying Base Rent on the first day of the first calendar month following the Effective Date and shall make payments of Base Rent on the first day of every calendar month thereafter until the expiration of the Term.  In addition to Base Rent, Lessee shall pay directly or reimburse Lessor in the full amount of all other taxes, fees or other costs associated with or connected to the Equipment or the delivery of the Equipment to Lessee if, as and when due and all such amounts, together with all of Lessee's other payment obligations and all costs incurred by Lessor on account of any default by Lessee, shall be payable by Lessee as "Additional Rent" upon demand by Lessor.  If Lessee remains in possession of the Equipment after the expiration of the Term and Lessee has not purchased the Equipment as provided in this Lease, then, in addition to all other rights and remedies available to Lessor, Lessee shall make monthly payments to Lessor equal to two (2) times the Base Rent set forth herein.  The Base Rent is based on Lessee's agreement to purchase the Equipment upon the expiration of the Term as provided in this Lease.  If Lessee (i) fails to purchase the Equipment upon the expiration of the Term as provided in this Lease and (ii) uses the Equipment in excess of the usage hours set forth on **Exhibit/s A** (the "Maximum Usage Hours"), then, in addition to all other amounts payable by Lessee to Lessor pursuant to this Lease, Lessee shall pay to Lessor the Excess Usage Fee set forth on **Exhibit/s A** for each hour Lessee uses the Equipment in excess of the Maximum Usage Hours.  Lessor shall not be liable to Lessee for any hindrance in the use of the Equipment whether caused by Lessee's inability to obtain service or spare parts or to proceed with any planned project(s) or for any other reason whatsoever.  Lessee's payment obligations are absolute and are not subject to any contingency, credit, set-off or deduction of any kind.

4.  Purchase Obligation.  Lessee shall purchase the Equipment from Lessor at the expiration of the Term.  The purchase price for the Equipment (the "Purchase Price") at that time shall be the Residual Value of the Equipment set forth on **Exhibit/s A** plus the amount of any value added taxes and any other taxes or charges occasioned by the transfer title to the Equipment from Lessor to Lessee.  Lessee shall pay the Purchase Price for the Equipment to Lessor on the day that the last payment of Base Rent is due.

5.  Use, Nature and Location of Equipment.  Lessee warrants and agrees that the Equipment will be used primarily for the purpose indicated on **Exhibit/s A**.  Lessee and Lessor agree that regardless of the manner of affixation, the Equipment shall remain personal property and not become part of any real estate.  Lessee agrees to keep the Equipment at the location and in the state (the "State") set forth on **Exhibit/s A**.  Upon prior written notice to Lessor, Lessee may change the location of the Equipment provided that: (i) Lessee is not in default at the time of such notice or at the time the location of the Equipment is changed and (ii) Lessee does not permit the Equipment to be located outside of the State.  Lessee will not remove the Equipment from the State without the prior written consent of Lessor unless the Equipment is located in the State of Pennsylvania.

6.  Delivery Acceptance: Immediately upon delivery to and acceptance by Lessee of an item of Equipment, Lessee shall execute and deliver Exhibit/s A relating to such item of Equipment, identifying same and acknowledging receipt thereof, with the information required on said **Exhibit/s A** fully completed.  Execution of such **Exhibit/s A** shall constitute Lessee's acknowledgement that (i) the Equipment is satisfactory and acceptable to Lessee and that Lessee has examined the Equipment to the extent and in the manner it deems necessary or appropriate; (ii) the Equipment is in good operating order, repair, condition and appearance; (iii) is of the design and capacity selected by Lessee; (iv) and is suitable for the purposes for which it was leased.  The execution of such **Exhibit/s A** by Lessee shall also constitute Lessee's waiver of any right of revocation with respect to the Equipment.

7.  Repairs.  Lessor shall not be obligated to install, erect, test, adjust, service or make any repairs or replacements to the Equipment or otherwise.  Lessee shall not incur for Lessor's account any liability or expense without Lessor's prior written consent.  Lessee shall inspect the Equipment within 48 hours after its receipt.  If Lessor does not notify Lessor within such 48 hour period that the Equipment is defective, Lessee shall be conclusively presumed to have accepted the Equipment in its then condition.  Thereafter, Lessee shall effect and bear the expense of all necessary repairs,

Initial here ⌐⌐

maintenance, operation and replacements required to be made to maintain the Equipment in good condition, normal wear and tear excepted. Lessee shall ensure that all adjustments, repairs and other servicing of the Equipment is done only by Atlas Copco authorized dealers and that all replacement parts installed into the Equipment shall be original Atlas Copco parts. **Exhibit/s A** indicates whether Lessor requires that Lessees enter into a Service Maintenance Contract with respect to the Equipment. If Lessor so requires, Lessee shall execute the Service Maintenance Contract attached to this Lease as **Exhibit/s B**.

8. <u>Operating the Equipment</u>. Lessee is responsible for the Equipment and any and all damages caused to or by the Equipment. Without limiting the foregoing, Lessee will use the Equipment only for its intended use and in accordance with its rated capacity, operating instructions and safety guidelines and Lessee shall maintain the Equipment in a commercially reasonable manner. Lessee shall insure that only such persons as are properly trained, qualified and, if applicable, licensed in its proper and safe use shall operate the Equipment. Lessee agrees to provide all persons who will use, handle or work in close proximity to the Equipment (i) all health, safety, and product information related to the Equipment that is provided or made available by the manufacturer and (ii) adequate health and safety protection and warnings, including, without limitation, those relating to noise exposure, vibration exposure and exposure to silica dust and other harmful dusts, particles, mists and vapors, if applicable. Lessee shall ensure compliance with all applicable laws, ordinances, rules and regulations governing the operation of the Equipment.

9. <u>Indemnity</u>. Lessee shall indemnify and save Lessor harmless from any and all injury to or loss of the Equipment from whatever cause, and from any and all liability arising out of the use, maintenance and/or delivery thereof. Lessee shall be credited with any amounts received by Lessor from insurance procured by Lessee. Damages for any loss or damage to the Equipment shall be based on the then fair market value of the Equipment, irrespective of rentals theretofore paid or accrued.

10. <u>Insurance</u>. All risk of loss, damage to or destruction of the Equipment and all property damage and personal injuries (including death) caused by the Equipment shall at all times be on Lessee. During the Term, Lessee, at Lessee's expense, shall procure and maintain insurance against all risks of loss or physical damage to the Equipment for the full insurable value thereof. Lessee shall also procure and maintain breach of warranty insurance and such other insurance in such amounts and against such risks as Lessor may specify, and shall promptly deliver each policy to Lessor with a standard long-form mortgagee endorsement attached thereto showing loss payable to Lessor. Each insurance policy maintained by Lessee shall be with an insurance carrier satisfactory to Lessor, provide Lessor with not less than 30 days written notice of cancellation and be satisfactory to Lessor in form, terms and amount. Lessor's acceptance of policies in lesser amounts or covering lesser risks shall not be a waiver of Lessee's obligations under this Lease. No act or omission of Lessee or any of its officers, agents, employees or representatives shall affect the obligations of the insurer to pay the full amount of any loss.

Lessee hereby assigns to Lessor any monies which may become payable under any such policy of insurance and irrevocably constitutes and appoints Lessor as Lessee's attorney in fact (a) to hold each original insurance policy, (b) to make, settle and adjust claims under each policy of insurance, (c) to make claims for any monies which may become payable under policies, including returned or unearned premiums, and (d) to endorse Lessee's name on any check, draft or other instrument received in payment of claims or returned or unearned premiums under each policy and to apply the funds to the payment of Lessee's indebtedness to Lessor; provided, however, Lessor is under no obligation to do any of the foregoing.

Should Lessee fail to furnish any insurance policy to Lessor, or to maintain such policy in full force, or to pay any premium in whole or in part relating thereto, then Lessor, without waiving or releasing any default or obligation by Lessee, may (but shall be under no obligation to) obtain and maintain insurance and pay the premium therefor on behalf of Lessee and add the premium to Lessee's indebtedness to Lessor under this Lease. The full amount of any such premium paid by Lessor shall be payable by Lessee upon demand, and failure to pay same shall constitute an event of default under this Lease.

11. <u>Taxes</u>. Lessee shall comply with all laws, ordinances and regulations relating to the ownership, possession, use or maintenance of the Equipment, and indemnify and save Lessor harmless against actual or asserted violations, and pay all costs and expenses of every character occasioned by or arising out of such ownership, possession, use or maintenance. Lessee agrees that, during the term of this Lease, in addition to all other amounts provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges (including penalties and interest, if any, and fees for titling or registration, if required) levied or assessed:

    (a) upon the interest of the Lessee in the Equipment or upon the use or operation thereof or on the earnings arising therefrom; and

    (b) against Lessor on account of its acquisition or ownership of the Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee, or the rent herein provided for, or the earnings arising therefrom, exclusive, however, of any taxes based on net income of Lessor.

Lessee agrees to file, on behalf of Lessor, all required tax returns and reports concerning the Equipment with all appropriate governmental agencies, and within not more than 30 days after the due date of such filing, to send Lessor confirmation, in form satisfactory to Lessor, of such filing.

12. Title. All Equipment shall remain personal property and title thereto shall remain in Lessor exclusively. Lessee shall keep the Equipment free from any and all liens and claims, and shall not permit Lessor's title or rights in the Equipment to be encumbered or impaired.

13. Inspection. Lessee shall, whenever requested, advise Lessor of the exact location and condition of the Equipment and shall give Lessor immediate notice of any attachment or other judicial process affecting the Equipment, and indemnify and save Lessor harmless from any loss or damage caused thereby. Lessor may, for the purpose of inspection, at all reasonable times enter upon any job, building or place where the Equipment is located and may remove the Equipment forthwith, without notice to Lessee, if, in the opinion of Lessor, the Equipment is being used beyond its capacity or Lessee is improperly caring for or abusing the Equipment in any manner.

14. Non-Waiver. Time is of the essence. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. Waiver of any default shall not waive any other default. No remedy of Lessor hereunder shall be exclusive of any other remedy available at law, in equity or otherwise provided in this Lease, but each shall be cumulative and in addition to every other remedy.

15. No Warranty. Lessor, not being the manufacturer of the Equipment, nor manufacturer's agent, makes no warranty or representation, either express or implied, as to the fitness, quality, design, condition, capacity, suitability, merchantability or performance of the Equipment or of the material or workmanship thereof, it being agreed that the Equipment is leased "as is" and that all such risks, as between the Lessor and the Lessee, are to be borne by the Lessee at its sole risk and expense and Lessee agrees not to assert any claim whatsoever against the Lessor based thereon. Lessee further agrees, regardless of cause, not to assert any claim whatsoever against the Lessor for loss of anticipatory profits or consequential damages. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding on Lessor. All prior conversations, agreements and/or representations related to this Lease and/or to the Equipment are integrated in this Lease.

16. Possession. Lessor covenants to Lessee that Lessor is the lawful owner of the Equipment free from all encumbrances and that, conditioned upon Lessee's performing the conditions hereof, Lessee shall peaceably and quietly hold, possess and use the Equipment during the Term without let or hindrance.

17. Performance of Obligations of Lessee by Lessor. In the event that the Lessee shall fail duly and promptly to perform any of its obligations hereunder, the Lessor may, at its option, perform them for the account of Lessee without thereby waiving such default, and any amount paid or expense, fee (including reasonable attorneys' and other professionals' fees), penalty or other liability incurred by the Lessor in such performance, together with interest thereon at a rate equal to the lesser of (i) 1 1/2% per month or (ii) the maximum rate of interest permitted by applicable law, shall be payable by the Lessee upon demand as Additional Rent for the Equipment.

18. Further Assurances. Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this Lease and/or Lessor's rights hereunder.

19. Default. An Event of Default shall occur if:

(A) Lessee fails to pay when due any installment of rent and such failure continues for a period of 10 days;

(B) Lessee shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder and such failure continues uncured for 15 days after written notice thereof to Lessee by Lessor;

(C) Lessee dies, ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation, or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action looking to its dissolution or liquidation;

(D) within 60 days after the commencement of any proceedings against Lessee seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within 60 days after the appointment without

Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated;

(E) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublet the Equipment or any item thereof or

(F) a third party takes any action to foreclose on, obtain possession or control of, collect, sell or otherwise dispose of or exercise any rights with respect to any of the Equipment without the express written consent of Lessor.

Upon the occurrence of an Event of Default, Lessor, at its option, may do any or all of the following:

1.   declare all sums due and to become due hereunder immediately due and payable;

2.   proceed by appropriate court action or actions or other proceedings either at law or in equity to enforce performance by the Lessee of any and all covenants of this Lease and to recover damages for the breach thereof;

3.   demand that Lessee deliver the Equipment forthwith to Lessor at Lessee's expense at such place as Lessor may designate; and

4.   Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the Equipment may be or by Lessor is believed to be, and repossess all or any item thereof, disconnecting and separating all thereof from any other property and using all force necessary or permitted by applicable law so to do, Lessee hereby expressly waiving all further rights to possession of the Equipment and all claims for injuries suffered through or loss caused by such repossession; Lessor may sell or lease the Equipment at a time and location of its choosing provided that Lessor acts in good faith and in a commercially reasonable manner, but Lessor shall, nevertheless, be entitled to recover immediately as liquidated damages for loss of the bargain and not as a penalty (i) any unpaid Base Rent or Additional Rent that accrued up to the time of Lessor's possession plus (ii) an amount equal to the difference obtained by subtracting (a) proceeds of such sale or the aggregate rental value from such lease (discounted to present value at the then prime rate of interest + 3%) from (b) the aggregate rent reserved hereunder for the unexpired term of this Lease plus the Residual Value of the Equipment, provided, however, that if any statute governing the proceeding in which such damages are to be proved specifies the amount of such claim, Lessor shall be entitled to prove as and for damages for the breach an amount equal to that allowed under such statute. The provisions of this Section shall be without prejudice to any rights given to the Lessor by such statute to prove for any amounts allowed thereby. Should any proceedings be instituted by or against Lessor for monies due to Lessor hereunder and/or for possession of any or all of the Equipment or for any other relief, Lessee shall pay a reasonable sum as attorneys' fees. No remedy referred to herein is intended to be exclusive of any other remedy stated herein or of any other remedy otherwise available to Lessor at law or in equity.

20. Assignments.  Without the prior written consent of Lessor, Lessee shall not assign this Lease or its interests hereunder or enter into any sub-lease with respect to the Equipment, it being agreed that Lessor will not unreasonably withhold its consent to a sub-lease of the Equipment. The conditions hereof shall bind any permitted successors and assigns of Lessee. Lessor may assign the rents reserved herein or all or any of Lessor's other rights hereunder. After such assignment, Lessor shall not be the assignee's agent for any purpose. Lessee will settle all claims arising out of alleged breach of warranties or otherwise, defenses, set-offs and counterclaims it may have against Lessor directly with Lessor, and not assert any such against Lessor's assignee, Lessee hereby agreeing to remain responsible therefor. Lessee on receiving notice of any such assignment shall abide thereby and make payment as may therein be directed. Following such assignment, solely for the purpose of determining assignee's rights hereunder, the term "Lessor" shall be deemed to refer to Lessor's assignee.

21. Miscellaneous.  Lessee will not change or remove any insignia or lettering on the Equipment and shall conspicuously identify each item of the Equipment by suitable lettering thereon to indicate Lessor's ownership. All transportation charges shall be borne by Lessee. All notices relating hereto shall be sent certified mail, return receipt requested to Lessor or Lessee at the addresses indicated on **Exhibit/s A.** If any part hereof is contrary to, prohibited by or deemed invalid under applicable laws or regulations of any jurisdiction, such provision shall be inapplicable and deemed omitted but shall not invalidate the remaining provisions hereof. Lessee waives all rights under all exemption laws. **Lessee acknowledges the receipt of a true copy of this Lease.** This Lease is irrevocable for the full term hereof and for the aggregate rental herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason. Any payment not made when due shall, at the option of Lessor, bear late charges thereon calculated at a rate equal to the lesser of (i) 1 1/2% per month or (ii) the maximum rate of interest permitted by applicable law. In the event this Lease is deemed to create a security interest, Lessee grants Lessor a security interest in the Equipment as security for all of Lessee's indebtedness and obligations owing under this Lease as well as all other present and future indebtedness and obligations of Lessee

07/18/2006 09:09 FAX  847 570 8100        THE HOMESTEAD                    ☑ 014/016

to Lessor of every kind and nature whatsoever.  Lessee shall be responsible for and pay to Lessor a returned check fee, not to exceed the maximum permitted by law, which fee will be equal to the sum of (1) the actual bank charges incurred by Lessor plus (ii) all other actual costs and expenses incurred by Lessor.  The returned check fee is payable upon demand as Additional Rent under this Lease.  Lessee authorizes Lessor to file a financing statement with respect to the Equipment and ratifies the filing by Lessor of any such financing statement previously filed.

**22. Lessee's Organizational Information.**  If Lessee is an organization, Lessee (a) is the type of organization, (b) is organized under the laws of the jurisdiction, (c) has its principal place of business, and (d) if it is a "registered organization" as defined in Article 9 of the Uniform Commercial Code (i.e., organized solely under the laws of a single State and as to which the State must maintain a public record showing the organization to have been organized), has the organizational identification number (or, if none, has been assigned no such number by the State of organization), all as set forth on **Exhibit/s A**.  Lessee's name, as it appears on **Exhibit/s A** and on the signature line of this Lease, is Lessee's **exact and complete legal name**.  If Lessee is an individual, Lessee's exact and complete legal name and principal residence are as set forth under Lessee's name on the signature line of this Lease.  Lessee agrees to notify Lessor immediately in the event of a change in any of the foregoing facts or information.

[The remainder of this page is intentionally left blank]



Initial here 

07/18/2006 09:09 FAX  847 570 8100          THE HOMESTEAD                    Ø 015/016

This Lease contains the entire agreement between the parties with respect to the Equipment, and may not be altered, modified, terminated or discharged except by a writing signed by the party against whom such alteration, modification, termination or discharge is sought.  **Lessee's initials** – _____

**IN WITNESS WHEREOF**, Lessee and Lessor have duly executed this Lease as of **July 17, 2006**.

***LESSEE***:

Indie Energy Services Company, LLC.

By _____          Title _Manager_____

     If Lessee is a corporation, have this Lease signed by the President, Vice President or Treasurer and indicate the signatory's official title.  If the Lessee is a limited liability company, have this Lease signed by the managing member.  If the signatory is an owner, so indicate.

***LESSOR***:

Atlas Copco Construction Mining Technique USA Inc.

By _____          Title VP Finance & Administration
    Jim Levitt

07/18/2006 09:10 FAX 847 570 8100　　THE HOMESTEAD　　☒016/016

## Exhibit A to Master Capital Equipment Lease
### (Schedule No 1 )

This exhibit is pursuant to and made part of the **Master Capital Equipment Lease** dated July 17, 2006, (as amended, restated, modified and supplemented, the "Master Capital Equipment Lease") between Atlas Copco Construction Mining Technique USA Inc., as Lessor, and **Indie Energy Services Company, LLC.** as Lessee.

Intro: The "Effective Date" of this Lease is **July 17, 2006**,

1.　**Equipment Description, Serial Numbers and Application:** Atlas Copco brand, model T2W. Serial number **6201.**

2.　**The "Term" of the Lease with respect to Equipment:** 49 months, commencing on **July 17, 2006,** and ending on **August 1, 2010.**

3.　**Base Rent:** The aggregate amount of the Base Rent payable hereunder is **$315,126.24** of which Lessee has paid **$0** in advance. The balance of the Base Rent payable hereunder shall be paid in monthly installments of **$6565.13** until fully paid.

4.　**Residual Value:** Upon the expiration of the Term, the Residual Value of the Equipment shall be **$0.**

5.　**Acknowledgement of Receipt of Equipment:** Lessee acknowledges that the Equipment above described has been delivered to and received by it, is as represented, and is acceptable and satisfactory to it, and the same has been accepted as Equipment leased by Lessee under said Master Equipment Lease.

6.　**The Equipment shall be used primarily for:**

　　☒ business or commercial purposes (other than agricultural)
　　☐ agricultural purposes (see definition below)
　　☐ both agricultural and business or commercial purposes.

　　Agricultural purposes generally means farming, including dairy farming, but it also includes the transportation, harvesting, and processing of farm, dairy or forest products if what is transported, harvested, or processed is farm, dairy, or forest products grown or bred by the user of the Equipment itself.  It does not apply, for instance, to a logger who harvests someone else's forest or a contractor who prepares land or harvests products on someone else's farm.

7.　**Location of Equipment:** The location at which the Lessee shall keep the Equipment is Cook County, IL.

8.　**Service and Maintenance Contract:** Lessor ☐ requires ☒ does not require that Lessee enter into a Service Maintenance Contract.

| LESSEE | LESSOR |
|---|---|
| Indie Energy Services Company, LLC: | Atlas Copco Construction Mining Technique USA Inc. |
| By; _____ | By: _____ |
| Title: _Manager_ | Title: VP Finance & Administration |
| Address: _1000 Church Street Blvd_ | Address: 3700 E 68ᵗʰ Ave. Commerce City, CO. 80022 |
| Phone #: _847-960-4850_ | Phone #: 303.217.2804 |

(Address and Phone numbers are inserted for contact purposes only and not for purposes of effecting Notice)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

, IL

IL, Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | INDIE ENERGY SERVICES COMPANY, LLC. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |

| | | | | | |
|---|---|---|---|---|---|
| 1c. MAILING ADDRESS 1202 CHURCH ST | CITY EVANSTON | STATE IL | POSTAL CODE 60201 | COUNTRY US |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION IL | 1g. ORGANIZATIONAL ID #, if any 01901982 | □ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | □ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | ATLAS COPCO CONSTRUCTION MINING TECHNIQUE USA INC. | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |

| | | | | | |
|---|---|---|---|---|---|
| 3c. MAILING ADDRESS 3700 E. 68TH AVE. | CITY COMMERCE CITY | STATE CO | POSTAL CODE 80022 | COUNTRY US |

**4. This FINANCING STATEMENT covers the following collateral:**
ONE (1) ATLAS COPCO BRAND DRILL, MODEL #T2W, SERIAL #6201, INCLUDING ALL ATTACHMENTS, ACCESSORIES, REPLACEMENTS AND SUBSTITUTIONS THERETO AND ALL PROCEEDS AND PRODUCTS THEREOF, TOGETHER WITH ALL DOCUMENTS, GENERAL INTANGIBLES, CONTRACT RIGHTS, INSTRUMENTS, ACCOUNTS AND CHATTEL PAPER ARISING OUT OF THE LEASING, SALE OR OTHER DISPOSITION THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | George | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA Indie Energy - 7/20/06 | | | | | | |

21444825

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| INDIE ENERGY SERVICES COMPANY, LLC. | | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12. ☒ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME** - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ATLAS COPCO CUSTOMER FINANCE USA, INC. | | | |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1020 CHURCH ST | EVANSTON | IL | 60201 | US |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**

**14. Description of real estate:**

**16. Additional collateral description:**

**15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

# STATE OF ILLINOIS

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1HTGLATT3VH431381 | 1997 | INTERNATIONAL | 2000 SERIES 2674 | TANDEM | X6299057050 |
| 1HTGLATT3VH431381 | | | | | |

| DATE ISSUED | ODOMETER | CCM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 10/26/06 | | | USED | 07/17/06 |

| MOBILE HOME SQ. FT. | TYPE OF TITLE |
|---|---|
| | ORIGINAL |

**MAILING ADDRESS**

INDIE ENERGY SERVICES CO
1020 CHURCH ST
EVANSTON IL 60201-3623

LEGEND(S)

**OWNER(S) NAME AND ADDRESS**    MILEAGE NOT REQUIRED

INDIE ENERGY SERVICES CO
1020 CHURCH ST
EVANSTON IL 60201-3623

**FIRST LIENHOLDER NAME AND ADDRESS**

**SECOND LIENHOLDER NAME AND ADDRESS**

**RELEASE OF LIEN**
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____  By _____  Signature of Authorized Agent _____  Date _____

Firm Name _____  By _____  Signature of Authorized Agent _____  Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.

Secured Party: *Atlas Copco Customer Finance USA LLC*    Address: *84 Maple Avenue  Pine Brook NJ 07058*

Federal and State law require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING—ODOMETER DISCREPANCY

If this vehicle is one of more than a commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application.

ODOMETER READING

Signature(s) of Seller(s) _____    DATE OF SALE _____

Printed Name(s) of Seller(s) _____

"I am aware of the above odometer certification made by seller."

Signature(s) of Buyer(s) _____    Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

**G01588300**
CONTROL NO.

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN

# GROUP EXHIBIT B

07/18/2006 08:05 FAX  847 570 8100         THE HOMESTEAD                    Ø 003/016

# GUARANTY

**IN CONSIDERATION** of credit and financial accommodations extended, to be extended or continued to the Customer identified on Schedule A attached hereto (the "Customer"), by the Vendor identified on Schedule A (the "Vendor"), the undersigned (and joint and severally if more than one guarantor) does hereby guarantee to the Vendor the prompt payment at maturity, or when otherwise due, of the Guaranteed Indebtedness, as defined below, together with any and all costs and expenses incurred by the Vendor in enforcing this Guaranty. The term "Guaranteed Indebtedness" means all obligations, indebtedness and liabilities of the Customer to the Vendor or its assigns of any kind or character, now existing or hereafter arising, whether primary, secondary, direct, indirect, related, unrelated, fixed, contingent, liquidated, joint, several, or joint and several, whether arising by direct indebtedness or by right of indemnification, and all interest and other sums due and to become due thereon, and all extensions, renewals, modifications and rearrangements thereof, howsoever arising, including, without limitation, the "Financing Documents" described on Schedule A. The undersigned further guarantees to the Vendor that the Customer will fully, promptly and punctually perform and observe each and every agreement, covenant or condition of any agreement, loan agreement, note or mortgage on the part of the Customer to be performed and observed. The undersigned agrees to pay to the Vendor upon demand all costs and expenses, including counsel fees, which may be incurred in the collection of the Guaranteed Indebtedness and/or the undersigned's obligations under this Guaranty.

1.      The undersigned hereby: (a) assents to all terms made or to be made with the Vendor by the Customer; (b) consents that the Vendor may: (1) exchange or surrender any collateral now or hereafter held as security for the Guaranteed Indebtedness, (2) waive, release or delay the exercise of any of the Vendor's rights or remedies with respect to the Guaranteed Indebtedness or this Guaranty; (c) waives all suretyship defenses and defenses in the nature thereof; and (d) waives all notices whatsoever in respect to this Guaranty and to the Guaranteed Indebtedness.

2.      The Vendor may release all or any part of any obligation of any of the undersigned, if more than one, and any such release shall not affect or release any obligation hereunder of any of the undersigned not so released. No delay in making demand on the undersigned for payment of the obligations of undersigned hereunder shall prejudice the Vendor's right to enforce such payment. All of the Vendor's rights and remedies shall be cumulative.

3.      In the event the Customer fails to pay when due all or any portion of the Guaranteed Indebtedness, or if the Customer defaults in any agreement, covenant or condition of any agreement, loan agreement, note or mortgage, then the Guaranteed Indebtedness shall be deemed, for the purposes of this Guaranty, to be immediately due, without further notice or demand from the Vendor, and the obligations of the undersigned

hereunder shall be immediately due. the Vendor shall not be bound to exhaust its recourse against the Customer or other persons or upon any collateral or liens the Vendor may hold before being entitled to payment from the undersigned, the undersigned hereby waiving all rights to invoke the principles of marshalling, and all similar equitable remedies. The obligation of the undersigned shall not be affected by any determination made with respect to impairment, adequate protection or collateral valuation in any proceeding affecting the Customer, and the undersigned waives any and all claims or defenses to the Vendor's right to payment and performance of the Guaranteed Indebtedness, including, without limitation, the Vendor's failure to properly perfect a security interest or mortgage lien upon property of the Customer.

4.     The payment made by the undersigned of any amount pursuant to this Guaranty shall not in any way entitle the undersigned to any right, title or interest (whether by way of subrogation or otherwise) in or to any of the Guaranteed Indebtedness or any proceeds thereof, or any security therefore, and the undersigned does hereby expressly acknowledge and agree that he is not a creditor of the Customer by virtue of this Guaranty.

5.     This Guaranty has been delivered by the undersigned for bona fide business and/or personal reasons, in that the undersigned will derive a direct or indirect business or personal benefit. The undersigned hereby specifically and expressly acknowledges that the delivery of this Guaranty is a material consideration to the Vendor without which the Vendor would not extend or continue the credit and financial accommodations to the Customer pursuant to the terms and provisions of the Financing Documents.

6.     Should a claim be made upon the Vendor at any time for repayment of any amount received by the Vendor, in full or partial payment of the Guaranteed Indebtedness, regardless of the source of such payment, the undersigned shall remain liable to the Vendor for the amount so repaid to the same extent that it is as if such amount had never originally been received by the Vendor, and notwithstanding any prior satisfaction or termination hereof, or the cancellation of any note or other instrument evidencing any of the Guaranteed Indebtedness. The undersigned further waives any and all claims of subrogation and the like which the undersigned may obtain as a result of having to make payments to the Vendor hereunder and do further agree that they shall not become a creditor of the Customer.

7.     This Guaranty shall, in all respects, be continuing and absolute, and shall remain in full force and effect with respect to each Guarantor until written notice by United States certified mail of its discontinuance as to such Guarantor, or notice of the death or dissolution of such Guarantor, shall have been actually received by the Vendor; provided, however, that no notice shall affect or release such Guarantor's obligation hereunder with respect to (a) Guaranteed Indebtedness which was incurred prior to receipt by the Vendor of such notice or which is thereafter incurred in renewal, extension or modification of any or all of such Guaranteed Indebtedness; or (b) any Guaranteed Indebtedness incurred pursuant to an agreement entered into prior to receipt by the

Vendor of such notice, which agreement bound the Vendor to permit such Guaranteed Indebtedness to be incurred.

8.    With respect to any of the obligations or undertakings of the Customer or any other Guarantor, nothing stated herein shall be construed to:

a.    release, modify, impair, change, limit, or waive any of the Guaranteed Indebtedness;

b.    release, modify, impair, limit, change, or waive any liens securing or any security for any liens securing or any security for any or all of the Guaranteed Indebtedness;

c.    limit or impair enforcement of any of the Guaranteed Indebtedness;

d.    limit, release, modify, impair, change, or waive any of the Financing Documents or the enforcement thereof;

e.    release, modify, limit, change, or waive any indebtedness, obligations, or undertakings of any maker, guaranty, or endorser of any of the Guaranteed Indebtedness other than the undersigned;

f.    cause the failure of the undersigned to pay or perform any liability or obligation of the undersigned to the Vendor hereunder as, when and in the manner required hereby or under the Financing Documents as, when and in the manner required thereby;

g.    limit or impair the undersigned's liability with respect to recovery of insurance or condemnation proceeds or other similar funds under the Financing Documents or payments attributable to any part or all of any collateral which secures any Guaranteed Indebtedness;

h.    limit or impair the Vendor's rights, powers, remedies, or privileges under any other document, instrument, or agreement executed and/or delivered pursuant to the Note or any of the Guaranteed Indebtedness;

i.    limit or impair the Vendor's right to recover costs or expenses from any other guarantor;

j.    limit or impair obligations of the undersigned under any other agreement with the Vendor; or

9.    Miscellaneous.



a.    This Guaranty shall be construed in accordance with the internal substantive laws of the State of New York. Any action hereon or related hereto may only be brought in a court of competent jurisdiction located within the State of New York, and the undersigned hereby consent to the jurisdiction of such courts for all purposes related hereto.

b.    **THE UNDERSIGNED, FOR THE EXPRESS PURPOSE OF EXPEDITING THE RESOLUTION OF DISPUTES HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING IN WHICH THE UNDERSIGNED AND LENDER ARE ADVERSE PARTIES.**

c.    This Guaranty shall inure to the benefit of the Vendor, its successors, assigns, endorsees and any person to whom the Vendor may grant any interest in the Guaranteed Indebtedness, and shall be binding upon the undersigned and the undersigned's successors, assigns, heirs, executors, administrators and other legal representatives thereof.

*[Signature Page Follows.]*



Executed and delivered to the Vendor as of the _18_ day of __July__ , 20_06_.

GUARANTOR:

**Daniel Cheifetz**

Name: _____ ,

Individually

STATE OF

COUNTY OF

     The foregoing instrument was acknowledged before me this ____ day of _____, 20__, by _____, individually.

_____

Notary Public/Justice of the Peace

My Commission Expires: _____

## SCHEDULE A

**Guarantor:**
Daniel Cheifetz

*Mailing address:*
*1020 Church Street*
*Evanston, IL 60201*

Address: 1000 Michigan Ave
Wilmette, IL 60091

Attn: _____
Tel:  847-910-4850
Fax:  —
E-mail:  *daniel @ Indie energy. com*

**Vendor:**
Atlas Copco Construction Mining Technique USA Inc.
Address: 3700 E 68th Ave
Commerce City, CO.80022

Attn: George Grammerstorf
Tel:  303.600.2330
Fax:  303.600.2323
E-mail: george.grammerstorf@us.atlascopco.com

**Customer:**
Indie Energy Services Company, LLC.
1020 Church St.
Evanston, IL 60201

Attn:  *David Cheifetz*
Tel:  *847-910-4850*
Fax:  _____
E-mail:  *david @ Indieenergy. com*

**Financing Documents:**
Master Capital Equipment Lease
Exhibit A to Master Capital Equipment Lease
Guaranty
Schedule A (to Guaranty)
ACH Debit Authority Terms & Conditions
Electronic Payment Authorization Form

08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN

# GROUP EXHIBIT C



# INSTALLMENT LOAN & SECURITY AGREEMENT

FOR VALUE RECEIVED, the undersigned borrower ("Borrower"), promises to pay to the order of the lender ("Lender"), the below stated principal sum together with interest on the unpaid principal balance hereof from time to time outstanding at the rate per annum set forth below. The financial obligation of the Borrower to the Lender is herein called the "Loan". The Loan shall accrue interest by reference to the Fixed Rate as set forth below.

Principal payments and Interest shall be due and payable as set forth below. If not sooner paid, all outstanding principal and accrued and unpaid interest thereon shall be paid to the Lender on the Last Payment Date set forth below. In the absence of demonstrable error, the books and records of the Lender shall constitute conclusive evidence of the unpaid principal balance hereof from time to time.

The Borrower may, upon at least two business days' prior written notice to the Lender stating the proposed date and aggregate principal amount of the prepayment, prepay the outstanding principal amount in whole, together with accrued interest to the date of such prepayment on the principal amount prepaid and without discount.

All payments hereunder shall be payable in lawful money of the United States. All payments shall be applied first to any costs, fees and expenses of the Lender due hereunder, then to interest due hereunder, and any balance shall be applied in reduction of principal in the inverse order of maturity.

## FINANCING SCHEDULE

| Purchase Price: | $104,000.00 | Less Cash: | $11,050.00 | Financing Term: | 36 months |
|---|---|---|---|---|---|
| Documentation Fees: | $0 | Less Trade-In: | $ | Interest Rate: | 7.95% |
| Total Price: | $104,350.00 | Down Payment: | $11,050.00 | Principal Financed: | $99,450.00 |

| Number of Payments in Series | Amount of Payments in Series | Date of First Payment in Series | Date of Last Payment in Series | Total Amount of Payments in Series |
|---|---|---|---|---|
| 36 | $3114.88 | May 4, 2007 | April 4, 2010 | $112,135.68 |

This Loan is secured by certain collateral described below. If any Event of Default shall occur, the Lender may, at its option, declare to be immediately due and payable the then outstanding principal balance, with all accrued and unpaid interest thereon, and all other amounts payable to the Lender hereunder, whereupon all such amounts shall become and be due and payable immediately. In the event that any payment due hereunder shall not be paid when due, the Borrower shall pay a late fee of the greater of $100.00 or five percent (5.00%) of the outstanding principal payment missed.

## COLLATERAL -- EQUIPMENT DESCRIPTION & LOCATION

| Description (model, serial number) | Purchase Price |
|---|---|
| 1 Atlas Copco Brand Compressor, Model #XRVS 976CD, SERIAL # 539285 | $104,000.00 |
| Sales Tax @6.25% | $6500.00 |
| Equipment Location (if other than billing address below)<br>As below | Delivery Date<br>April 4, 2007 |

## Section 1    Grant of Security Interest.

1.1. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower hereby grants to the Lender a security interest in and first lien on all of the Borrower's rights in the Collateral to secure the Secured Obligations.

1.2. As used herein, the term "Secured Obligations" shall mean the payment and performance of all debts, liabilities, obligations, covenants, agreements and indemnities of the Borrower to the Lender, of every kind, nature and description, due or to become due, now existing or hereafter arising, including, without limitation, all debts, liabilities and obligations under this agreement; all renewals, amendments, modifications, consolidations, replacements, increases and extensions thereof, therefore and thereto (collectively, the "Loan Documents"); and any other form of indebtedness owed by the Borrower to the Lender.

1.3. As used herein, the term "Collateral" shall mean: (a) All the Borrower's right, title and interest in and to the goods, property and equipment (including any software or computer programs embedded therein) set forth and described in this Security Agreement (the "Equipment"); (b) All          the Borrower's right, title and interest in and to all additions, replacements, accessions, substitutions, modifications and improvements to the foregoing; (c) All of the Borrower's rights in, to and under policies and certificates of insurance, including claims or rights to payment and all proceeds, refunds, and premium rebates, including without limitation, proceeds of fire, theft or any other physical damage or loss relating directly or indirectly to the foregoing; (d) All books, records, and information relating to any of the foregoing, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded, and maintained, and all computer programs, computer records, computer software, rights of access to computer bureaus and computer data relating to the foregoing; and (e) All proceeds (cash and non-cash) and products of the foregoing, provided that the grant to the Lender of a security interest in proceeds shall not be deemed a consent by Lender to a sale or other disposition of any Collateral.

1.4. As used herein (a) the term "UCC" shall mean the Uniform Commercial Code as adopted and in effect in the State of Illinois; and (b) the term "Guarantor" shall mean a guarantor, if any, of the Secured Obligations.



## Section 2. Covenants.

The Borrower hereby covenants and agrees for the benefit of the Lender as follows:

2.1. The Borrower will do all things necessary to preserve, renew and keep in full force and effect and in good standing its existence and material qualifications and rights necessary or desirable in the ordinary conduct of its business.

2.2. The Borrower shall retain ownership and possession of the Collateral and keep the Collateral free and clear of all Liens and other property interest of any and every kind whatsoever, except those in favor of the Lender. The Borrower shall promptly notify the Lender of (i) any Lien made or threatened against the Collateral or any part thereof, and (ii) any material change in the Collateral, including without limitation, any material decrease in the value thereof.

2.3. The Borrower shall deliver to the Lender, promptly upon receipt of same, copies of all notices, certificates, documents and instruments received by the Borrower which materially affect the Collateral.

2.4. The Borrower shall pay or cause to be paid promptly when due all taxes, betterments, assessments and other governmental levies, insurance premiums and other charges, to whomever and whenever laid or assessed, whether on this agreement or on any interest therein or on the Secured Obligations, or on the Collateral, which if unpaid might by law become a Lien on the Collateral; provided, however, that any such tax, assessment, charge, levy or claim need not be paid if the validity or amount thereof shall currently be contested in good faith by appropriate proceedings and if the Borrower shall have set aside on its books appropriate reserves with respect thereto in accordance with generally accepted accounting principles; and provided, further, that the Borrower will pay all such taxes, assessments, levies or other governmental charges forthwith upon the commencement of proceedings to foreclose any Lien which may have attached as security therefore.

2.5. The Borrower will keep and maintain each item of Equipment in good operating condition, ordinary wear and tear excepted, and the Borrower will provide all maintenance and service and all repairs necessary for such purpose.

2.6. The Borrower will use the Collateral for lawful purposes only, with all reasonable care and caution in conformity with all applicable laws, rules, regulations and ordinances.

2.7. The Collateral is now and shall remain personal property, and the Borrower will not permit any of the Collateral to become a part of or affixed to real property without written prior consent of the Lender and without first making all arrangements and delivering, or causing to be delivered, to Lender all instruments and documents including, without limitation, waivers and subordination agreements by any party necessary, at the sole discretion of the Lender, to preserve and protect the primary security interest granted herein in the Collateral to the Lender.

2.8. At all times, and at its sole cost and expense, the Borrower shall (i) cooperate with Lender to record and maintain appropriate financing and continuation statements; (ii) pay all recording, filing or other taxes, fees and other charges relating thereto; and (iii) shall comply with all such statutes and regulations, as may be required by law in order to establish, preserve, perfect and protect the first Lien of the Lender in the Collateral (including, without limitation, any interests acquired after the execution hereof) and the rights of the Lender there under. The Lender may record or file as such a financing statement or statements, a carbon, photographic or other reproduction of this agreement. Borrower hereby authorizes the Lender to prepare and file such financing statements (including continuation statements or amendments thereof or supplements thereto) or other instruments as the Lender may from time to time deem necessary or appropriate in order to perfect and maintain the security interest granted hereunder in accordance with the UCC, including without limitation, any financing statement that describes the Collateral.

2.9. If and to the extent from time to time requested by the Lender, the Borrower shall furnish to the Lender written statements, signed and, if so requested, acknowledged, setting forth the amount of the Secured Obligations which the Borrower acknowledges to be due to the Lender, specifying any claims of offset or defense which the Borrower asserts against the Secured Obligations or any obligations to be performed hereunder, the then state of facts relative to the condition of the Collateral, and such other matters as the Lender shall request.

2.10. The Borrower 'I notify the Lender at least thirty (30) days prior to any change in the ...ame, structure or identity of the Borrower, or the use by the Borrower of any trade name or trade style not heretofore disclosed to the Lender, or the address of the Borrower's chief executive office or location and the address of any location of Collateral; in each case by an amendment to this Security Agreement.

2.11. The Borrower will promptly notify the Lender (a) of any material adverse change in its financial condition, assets, business or prospects and (b) any litigation, arbitration or administrative proceeding to which the Borrower may hereafter become a party and which may involve any material risk of any judgment or liability which may have a material adverse effect on the Collateral or Borrower's ability to pay and perform the Secured Obligations as and when due.

2.12. The Borrower shall allow the Lender and its representatives access and right of inspection of the Collateral at its location at reasonable times, with reasonable frequency, and in a reasonable manner, and in the event of loss or damage to the Collateral shall send prompt written notice thereof to the Lender.

2.13. The Borrower will maintain with financially sound and reputable companies insurance policies (i) insuring the Equipment against loss by fire, explosion, theft and such other casualties as are usually insured against by companies engaged in the same or similar businesses, and (ii) insuring the Borrower and the Lender against liability for personal injury and property damage relating to the Equipment, such policies to be in such form and in such amounts and coverage as may be reasonably satisfactory to the Lender, with losses payable, in the case of casualty policies, to the Lender as its interests may appear. All insurance policies with respect to the Equipment shall (i) contain a "Lender's Loss Payable" endorsement which shall provide that in respect of the interests of the Lender in such policy the insurance shall not be invalidated by any action or inaction of the Borrower or any other person and shall insure the interests of the Lender as they appear, regardless of any breach or violation of any warranties, declarations or conditions contained in such policies by the Borrower; (ii) provide that no cancellation, reduction in amount or change in coverage thereof shall be effective until at least thirty (30) days after receipt by the Lender of written notice thereof; (iii) waive any right of subrogation of the insurer against, or any right of set-off, counterclaim or any other deduction in respect of any liability of, the Lender to such insurer; (iv) provide that the Lender shall receive promptly copies of any notices to the Borrower of any default or other act or omission by the Borrower which might invalidate or render unenforceable, in whole or in part, such policy or result in the lapse thereof, in whole or in part; and (v) be otherwise satisfactory in all respects to the Lender. Each liability policy carried in accordance with this Section shall be primary without right of contribution from any other insurance policy which is carried by the Borrower or the Lender to the extent that such other insurance policy provides the Borrower or the Lender with contingent or excess liability insurance with respect to its interest in the insured property and shall expressly provide that all of the provisions thereof, except the limits on liability, shall operate in the same manner as if there were a separate policy covering each insured. The Borrower shall, if so requested by the Lender, deliver to the Lender as often as the Lender may reasonably request, a Certificate of Insurance evidencing such coverage. All such insurance proceeds received by the Lender may be applied by the Lender in its discretion to the satisfaction of the Secured Obligations or to repair or replacement of any property which sustained the casualty, except as otherwise required by applicable law.

2.14. The Borrower shall not permit the Collateral to be relocated to a jurisdiction outside the contiguous United States, and the Borrower shall give the Lender prior written notice if any item of Collateral is to be removed from its current jurisdiction to another within the United States.

2.15. The Borrower will defend the Collateral against the claims and demands of all persons.

## Section 3. Right of Lender to Perform for Borrower.

3.1. Whether or not an Event of Default exists under this Security Agreement, the Lender shall have the following rights: (a) The Lender is hereby specifically authorized to make, at the Lender's sole option, any or all payments required to be made either hereunder or otherwise in respect of the Collateral by the Borrower. Such payments may include, but are not limited to, payments for taxes, assessments, betterments

shall have the right, but not the duty, to p    rm any obligations of the Borrower relating to the Collateral, without   iiving any other rights or releasing the Borrower from any obligation hereunder **(b)** The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding which, in the Lender's sole judgment, affects the Collateral or any of the rights created or secured by this Security Agreement. Such rights may be exercised by the Lender at any time, but only after notice to the Borrower, and only to the extent permitted by law and necessary to protect the Lender's rights hereunder and in the Collateral.

3.2. Any sums paid, and any costs or expenses, including reasonable attorneys' fees, incurred by the Lender, pursuant to the Lender's exercise of rights specified or referred to herein, shall:  (a) as between the parties hereto and their successors-in-interest, be deemed valid, so that in no event shall the necessity or validity of any such payments, costs or expenses be disputed by the Borrower; and (b) with respect to such sums, costs and expenses, be, until paid, part of the Secured Obligations and, until paid, shall accrue interest at the Default Rate as defined in this Agreement.

### Section 4.   Events of Default.

The occurrence of any one or more of the following events shall constitute an Event of Default hereunder (each an "Event of Default"): **(a)** the Borrower shall fail to make any payment of the Secured Obligations within five (5) days of when due; **(b)** the Borrower shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by the Borrower under this Agreement within fifteen (15) days after the date of written notice thereof sent by the Lender; **(c)** any representation or warranty made by the Borrower herein or in any document or certificate furnished to the Lender in connection herewith shall have been incorrect in any material respect when made; **(d)** the Borrower shall fail to make any payment of any "material indebtedness" (meaning indebtedness equal to or exceeding ten percent (10%) of the original principal amount of the Loan) (other than indebtedness constituting Secured Obligations) for money borrowed or indebtedness under any capitalized lease or other purchase money obligation or shall fail to perform the terms of any agreement relating to such indebtedness and such breach or default shall continue, without having been duly cured, waived or consented to, beyond the period of grace, if any, therein specified, or any such indebtedness shall be accelerated or declared due and payable prior to the stated maturity thereof; **(e)** the Borrower or any "affiliate" (meaning, as applied to any person or entity, a person or entity which directly or indirectly controls, is controlled by, or under common control with such person or entity) shall fail to pay, observe or perform any obligation, indebtedness, covenant or agreement to or with the Lender or any of its "affiliates" to be paid, observed or performed on the part of the Borrower or its "affiliates" and such default shall continue without having been duly cured, waived or consented to beyond the period of grace, if any, therein specified; **(f)** there shall be imposed on the Collateral or any part thereof any Lien other than a Lien in favor of the Lender; **(g)** there shall occur any loss, theft, fire, substantial damage to or destruction of a material portion of the Collateral, or any seizure of any of the Collateral; **(h)** there shall occur the entry of any material judgment against the Borrower, which judgment is not satisfied or appealed from (with execution or similar process stayed) within thirty (30) days of its entry; **(i)** (x) the Borrower shall generally not pay its debts as such debts become due, shall admit in writing its inability to pay its debts generally or shall make a general assignment for the benefit of creditors, (y) any proceeding shall be instituted by or against the Borrower seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or composition of it or its debts, under any applicable law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a custodian, receiver, trustee or other similar official for it or for any substantial part of its property; provided, however, that in the case of any such proceedings instituted against the Borrower (but not instituted by the Borrower) either such proceedings shall remain undismissed or unstayed for a period of 45 days or more or any action sought in such proceedings shall occur, or (z) the Borrower shall take any corporate action to authorize any action set forth in clauses (x) and (y) above; **(j)** any provision of this Agreement after delivery thereof shall for any reason fail or cease to be valid and binding on, or enforceable against, the Borrower, or the Borrower shall so state in writing; **(k)** this Agreement shall for any reason fail or cease to create valid and enforceable Liens on any Collateral purported to be covered hereby or, such Liens shall fail or cease to constitute the first priority Liens or the Borrower shall so state in writing; **(l)** all, or a controlling interest of, the capital stock of the Borrower shall be sold, assigned, or otherwise transferred or if a security

therein or with resp     thereto; **(m)** Lender shall determine, in its sole discretion and in g   faith that there has been a material adverse change in the financial condition of the Borrower since the date hereof, or that Borrower's ability to make any payment under this Agreement promptly when due or otherwise comply with the terms of the Loan Documents is impaired; or **(n)** any one or more of the foregoing events shall occur with respect to the Guarantor as if it were the "Borrower" named herein.

### Section 5.   Remedies.

If an Event of Default hereunder shall have occurred, then, or at any time thereafter while such Event of Default is continuing, the Lender may lawfully exercise any of the following remedies (and the Borrower hereby authorizes and empowers the Lender with the aide and assistance of any persons): (a) To enter upon such place as the Collateral may be found and take possession of and carry away the Collateral with or without due process of law at any time or times, and to dispose of the Collateral and apply the proceeds thereof to the Secured Obligations ; and to exercise any or all of the rights and powers and pursue any or all of the remedies that are available to a secured party under the UCC or any other applicable law or in equity in respect to the Collateral. Beyond the safe custody of the Collateral, the Lender shall have no duty as to any of the Collateral in its possession or the possession of its nominee or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto

Upon issuance of a notice of default by Lender, all payments received by the Borrower in connection with the use of any of the Collateral shall be held by the Borrower in trust for the Lender, shall be segregated from other funds of the Borrower and shall forthwith upon receipt by the Borrower be turned over to the Lender, in the same form as received by the Borrower (duly endorsed by the Borrower to the Lender, if required). Any and all such payments so received by the Lender (whether from the Borrower or otherwise) shall be held by the Lender as collateral security for, and then or at any time thereafter, may be applied in whole or in part for the benefit of the Lender against, all or any part of the Obligations in such order as the Lender, in its discretion, may determine.

The Borrower will reimburse the Lender for all fees of attorneys or collection agencies and all expenses, costs and charges paid or payable to third persons or suffered or incurred by the Lender in attempting or effecting protection or preservation of its security interest in the Collateral or the enforcement of any provision of this Security Agreement. Costs of collecting the amounts secured hereby shall be added to the principal amount due hereunder and shall be secured by, and payable out of, the Collateral.

Any sale or other disposition of the Collateral may be at public or private sale upon such terms and in such manner as the Lender deems advisable, having due regard to compliance with any statute or regulation which might affect, limit, or apply to the Lender's disposition of the Collateral. Unless the Collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold on a recognized market (in which event the Lender shall provide the Borrower with such notice as may be practicable under the circumstances), the Lender shall give the Borrower at least the greater of the minimum notice required by law or seven (7) days prior written notice of the date, time, and place of any proposed public sale of, and of the date after which any private sale or other disposition, of the Collateral, or any portion thereof, is to be made.

In connection with the Lender's exercise of the Lender's rights under this Section, the Lender may enter upon, occupy, and use any premises owned or occupied by the Borrower, and may exclude the Borrower from such premises or portion thereof as may have been so entered upon, occupied, or used by the Lender. In no event shall the Lender be liable to the Borrower for use or occupancy by the Lender of any premises pursuant to this Section, nor for any charge (such as wages for the Borrower's employees and utilities) incurred in connection with the Lender's exercise of the Lender's rights and remedies.

The Lender may require the Borrower to assemble the Collateral and make it available to the Lender at the Borrower's sole risk and expense at a place or places which are reasonably convenient to both the Lender and the Borrower (including at the Borrower's premises) or the Lender may render any Collateral unusable to the Borrower.

All rights, remedies and options conferred upon the Lender by the terms of this Agreement or by law shall be cumulative and may be exercised

successively or concurrently and are not altern    e or exclusive of any other such rights, remedies or options.  No expre    or implied waiver by the Lender of any default or event of default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent Default or Event of Default.  The failure or delay of the Lender in exercising any rights granted hereunder shall not constitute a waiver of any such right in the future and any single or partial exercise of any particular right by the Lender shall not exhaust such rights or constitute a waiver of any other right provided herein.

## Section 6.  Miscellaneous.

6.1. If the Lender is made a party defendant to any litigation concerning this Agreement, any Loan Document or the Collateral or any part thereof, then the Borrower shall indemnify, defend and hold the Lender harmless from and against all claims, liabilities, judgments, costs and expenses by reason of said litigation, including reasonable attorneys' fees and expenses incurred by the Lender in any such litigation, whether or not any such litigation is prosecuted to judgment.

 All amounts due to the Lender pursuant to this Section shall bear interest at the Default Rate from time to time in effect until paid. The "Default Rate" shall mean a per annum rate of the lesser of (i) the interest rate of the Loan plus four percent (4%) per annum or (ii) the maximum rate of interest then permitted by law.

6.2. When all Secured Obligations have been indefeasibly paid and performed in full and no further obligation on the part of the Borrower shall exist, this Security Agreement shall cease and terminate, and, at the Borrower's written request, accompanied by such certificates, opinions and proof as the Lender shall reasonably deem necessary, the Collateral furnished hereunder shall revert to the Borrower and the estate, rights, title, and interest of the Lender therein shall cease, and thereupon on the Borrower's written request~~ and at its cost and expense, the Lender shall~~ execute proper instruments, acknowledging satisfaction of and discharging the Security Interest created by this Agreement, and shall redeliver to the Borrower the Collateral furnished hereunder then in its possession; subject, however, to the terms and provisions contained in Section 6.3 hereof.

6.3.  All covenants, agreements, representations and warranties made herein or in the Note and in certificates delivered pursuant hereto or thereto shall be deemed to have been material and relied upon by Lender, notwithstanding any investigation made by Lender or on Lender's behalf, and shall survive the execution and delivery to Lender hereof and thereof. Each such covenant, agreement, representation and warranty is hereby confirmed by the Borrower to be true and correct in all respects with the same force and effect on and as of the date of delivery of any Collateral to Lender as though made as of the date of such delivery.

6.4. Borrower agrees to indemnify, defend and save and hold harmless Lender and its officers, directors, employees, agents and advisors and affiliates (each, an "Indemnified Party") from and against, and shall pay on demand, any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and expenses of counsel) that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or resulting from this Agreement (including, without limitation, enforcement of this Agreement), except to the extent such claim, damage, loss, liability or expense is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.

6.5. This Security Agreement may not be waived, changed or discharged orally but only by an agreement in writing and signed by the Lender, and any

oral waiver, change    scharge of any provision of this Agreement shall be without authority   . _ of no force and effect.

6.6 (a)All notices, demands, requests, consents and other communications provided for in this Agreement shall be given in writing, (including electronic mail), and addressed to the party to be notified at the address for such party set forth below or at such other address as shall be notified in writing to the other parties. (b)All notices, demands, requests, consents and other communications described in clause (a) above shall be effective (i) if delivered by hand, including any overnight courier service, upon personal delivery, or (ii) if delivered by mail, three business days after deposited in the mails, and (iii) if delivered by electronic mail or any other telecommunications device, when transmitted to an electronic mail address (or by another means of electronic delivery) as provided in clause (a) above.

6.7 The covenants, representations, warranties and agreements herein set forth shall be binding upon the Borrower, its successors and assigns and shall inure to the benefit of the Lender, its successors and assigns. Any purchaser, assignee or transferee of any of the Secured Obligations and the Lender's Lien hereunder shall forthwith become vested with and entitled to exercise all the powers and rights given by this Agreement to the Lender, as if said purchaser, assignee, transferee or pledgee were originally named herein.

6.8. This Security Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois without regard to choice of law principles. Any action or suit in connection with this Agreement or the transactions contemplated herein or therein may be brought in any court of record in the State of New York, the parties hereby irrevocably submitting and consenting to the non-exclusive jurisdiction of each ~~thereof, and each party irrevocably waives, to the fullest extent it may~~ effectively do so under applicable law, any objection it may have or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and claim that the same has been brought in an inconvenient forum. Service of process may be made on the other party by mailing a copy of the summons to such party, by registered mail, at its address to be used for the giving of notices under this Security Agreement and the Note. IN THE EVENT OF ANY LITIGATION IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN, THE DEBTOR AND THE LENDER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ALL RIGHTS TO A TRIAL BY JURY.

6.9.  This Agreement, any Schedules or Exhibits hereto and any riders or other attachments, any application submitted by the Borrow to the Lender and any guaranty or subordination agreement delivered together under this Agreement (the "Loan Documents") constitute the entire agreement between the parties with respect to the subject matter hereof. If at any time one or more provisions of this Agreement or the Loan Documents, any amendment or supplement thereto or any related writing is or becomes invalid, illegal or unenforceable in whole or in part in any jurisdiction, the validity, legality and enforceability of such provision in any other jurisdiction or of the remaining provisions shall not in any way be affected or impaired thereby.

6.10.  If more than one Person constitutes the Borrower or the Guarantor, the obligations of such Persons shall be joint and several.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Security Agreement, under seal, on the day and year first below written.

| LENDER | | BORROWER | |
|---|---|---|---|
| **Name** | **Contact Person** | **Name** | **Contact Person** |
| Atlas Copco Construction and Mining USA LLC | G. Grammerstorf | Indie Energy Services Company, LLC | Daniel Cheifetz |
| **Address** | **Telephone** | **Address** | **Telephone** |
| 3700 E. 68th Avenue | 1.303.600.2330 | 1020 Church Street | 847.371.1604 |
| **City / State** | **Zip Code** | **City / State** | **Zip Code** |
| Commerce City, CO | 80022 | Evanston, Illinois | 60201 |
| **Signature (Duly Authorized)** | **Date** | **Signature (Duly Authorized)** | **Date** |
| | 06-15-07 | | |
| **Name** | **Title** | **Name** | **Title** |
| Jim Levitt | VP Finance | Daniel Cheifetz | CEO |

**Atlas Copco**

**INVOICE**

**No.** ⟨ 293618 ⟩
**Date:** 7-04-23
**Page:** 1

Remit To:
Atlas Copco CMT USA LLC
4795 Collection Center Drive
Chicago, IL 60693

Sold to:
INDIE ENERGY SERVICES CO, LLC

1020 CHURCH STREET
EVANSTON
IL 60201

Ship to:
INDIE ENERGY SERVICES CO, LLC

1020 CHURCH STREET
EVANSTON
IL 60201

| Customer Number | Purchase Order Number | Purchase Order Date | Terms Days |
|---|---|---|---|
| 801580 | DANIEL CHEIFETZ 7-04-23 | | **Net 30 days** |

| AC sales order | Shipped on | Weight | Shipping Information |
|---|---|---|---|
| 149962 | 7-04-23 | .000 | |

| Description | Article no. | Qty | Unit price | Disc. | Total |
|---|---|---|---|---|---|
| XRVS 976CD ASME BOX | 8162140910 | 1 | 104000.00 | | 104000.00 |
| MACH.-NR. 539285 | | | | | |
| Down Payment Received | | | | | 11050.00- |
| STATE: IL | | | | | 6500.00 |
| Balance due is  financed over 36 months with ACF. | | | | | |

All claims must be made within 14 days from receipt of goods.  No returns accepted without prior approval.  All returns are subject to a minimum handling and restocking charge.  Service charge on overdue accounts of 2% per month.

**TOTAL**    99450.00

**Atlas Copco Construction and Mining Technique USA LLC**
3700 E. 68th Avenue
P.O. Box 1159
Commerce City, CO 80022
www.atlascopco.com

A Company within the Atlas Copco Group
Telephone:      (303) 287-8822
Toll Free       (800) 732-6762
Fax:            (303) 288-8828

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

RECEIVED
SECRETARY OF STATE
UNIFORM COMM CODE DIV.

2007 APR 24 2007 APR 20 PM 4:30

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO:  (Name and Address)    11051 ATLAS COPCO CM

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

10968218

ILIL

UCU104/24/07:03:1662:
20.00 Ck01
SOSIL 13:30  12036914 FS

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| INDIE ENERGY SERVICES COMPANY, LLC | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1020 CHURCH ST | EVANSTON | IL | 60201 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION IL | 1g. ORGANIZATIONAL ID #, if any 01901982 | NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ATLAS COPCO CONSTRUCTION MINING TECHNIQUE USA LLC | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3700 E. 68TH AVE. | COMMERCE CITY | CO | 80022 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE (1) ATLAS COPCO BRAND COMPRESSOR, MODEL #XRVS 976CD, SERIAL #539285, INCLUDING ALL ATTACHMENTS, ACCESSORIES, REPLACEMENTS AND SUBSTITUTIONS THERETO AND ALL PROCEEDS AND PRODUCTS THEREOF. TOGETHER WITH ALL DOCUMENTS, GENERAL INTANGIBLES, CONTRACT RIGHTS, INSTRUMENTS, ACCOUNTS AND CHATTEL PAPER ARISING OUT OF THE LEASING, SALE OR OTHER DISPOSITION THEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

| 10968218 | George | Indie Energy (3) 4/23/07 |
|---|---|---|

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2007 APR 24

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME
**INDIE ENERGY SERVICES COMPANY, LLC**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

UCU1 04/24/07 03:1662:
20.00 CK01
SOSIL 13:30 12036914 FS

**10. MISCELLANEOUS**
10068218-IL-0

**11051 ATLAS COPCO CM**

George

Indie Energy (3) 4/23/07

File with: Illinois

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12.** ☒ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME
**ATLAS COPCO CUSTOMER FINANCE USA LLC**

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 34 MAPLE AVE PO BOX 2028 | PINE BROOK | NJ | 07058 | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years
☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

Prepared by UCC-Direct Services, Inc., P.O. Box 29071
Glendale, CA. 91209-9071 Tel (800) 331-3282

# GROUP EXHIBIT D

## GUARANTY

**IN CONSIDERATION** of credit and financial accommodations extended, to be extended or continued to the Customer identified on <u>Schedule A</u> attached hereto (the "Customer"), by the Vendor identified on <u>Schedule A</u> (the "Vendor"), the undersigned (and joint and severally if more than one guarantor) does hereby guarantee to the Vendor the prompt payment at maturity, or when otherwise due, of the Guaranteed Indebtedness, as defined below, together with any and all costs and expenses incurred by the Vendor in enforcing this Guaranty. The term "Guaranteed Indebtedness" means all obligations, indebtedness and liabilities of the Customer to the Vendor or its assigns of any kind or character, now existing or hereafter arising, whether primary, secondary, direct, indirect, related, unrelated, fixed, contingent, liquidated, joint, several, or joint and several, whether arising by direct indebtedness or by right of indemnification, and all interest and other sums due and to become due thereon, and all extensions, renewals, modifications and rearrangements thereof, howsoever arising, including, without limitation, the "Financing Documents" described on <u>Schedule A</u>. The undersigned further guarantees to the Vendor that the Customer will fully, promptly and punctually perform and observe each and every agreement, covenant or condition of any agreement, loan agreement, note or mortgage on the part of the Customer to be performed and observed. The undersigned agrees to pay to the Vendor upon demand all costs and expenses, including counsel fees, which may be incurred in the collection of the Guaranteed Indebtedness and/or the undersigned's obligations under this Guaranty.

1.    The undersigned hereby: (a) assents to all terms made or to be made with the Vendor by the Customer; (b) consents that the Vendor may: (1) exchange or surrender any collateral now or hereafter held as security for the Guaranteed Indebtedness, (2) waive, release or delay the exercise of any of the Vendor's rights or remedies with respect to the Guaranteed Indebtedness or this Guaranty; (c) waives all suretyship defenses and defenses in the nature thereof; and (d) waives all notices whatsoever in respect to this Guaranty and to the Guaranteed Indebtedness.

2.    The Vendor may release all or any part of any obligation of any of the undersigned, if more than one, and any such release shall not affect or release any obligation hereunder of any of the undersigned not so released. No delay in making demand on the undersigned for payment of the obligations of undersigned hereunder shall prejudice the Vendor's right to enforce such payment. All of the Vendor's rights and remedies shall be cumulative.

3.    In the event the Customer fails to pay when due all or any portion of the Guaranteed Indebtedness, or if the Customer defaults in any agreement, covenant or condition of any agreement, loan agreement, note or mortgage, then the Guaranteed Indebtedness shall be deemed, for the purposes of this Guaranty, to be immediately due, without further notice or demand from the Vendor, and the obligations of the undersigned

hereunder shall be immediately due. the Vendor shall not be bound to exhaust its recourse against the Customer or other persons or upon any collateral or liens the Vendor may hold before being entitled to payment from the undersigned, the undersigned hereby waiving all rights to invoke the principles of marshalling, and all similar equitable remedies. The obligation of the undersigned shall not be affected by any determination made with respect to impairment, adequate protection or collateral valuation in any proceeding affecting the Customer, and the undersigned waives any and all claims or defenses to the Vendor's right to payment and performance of the Guaranteed Indebtedness, including, without limitation, the Vendor's failure to properly perfect a security interest or mortgage lien upon property of the Customer.

4.    The payment made by the undersigned of any amount pursuant to this Guaranty shall not in any way entitle the undersigned to any right, title or interest (whether by way of subrogation or otherwise) in or to any of the Guaranteed Indebtedness or any proceeds thereof, or any security therefore, and the undersigned does hereby expressly acknowledge and agree that he is not a creditor of the Customer by virtue of this Guaranty.

5.    This Guaranty has been delivered by the undersigned for bona fide business and/or personal reasons, in that the undersigned will derive a direct or indirect business or personal benefit. The undersigned hereby specifically and expressly acknowledges that the delivery of this Guaranty is a material consideration to the Vendor without which the Vendor would not extend or continue the credit and financial accommodations to the Customer pursuant to the terms and provisions of the Financing Documents.

6.    Should a claim be made upon the Vendor at any time for repayment of any amount received by the Vendor, in full or partial payment of the Guaranteed Indebtedness, regardless of the source of such payment, the undersigned shall remain liable to the Vendor for the amount so repaid to the same extent that it is as if such amount had never originally been received by the Vendor, and notwithstanding any prior satisfaction or termination hereof, or the cancellation of any note or other instrument evidencing any of the Guaranteed Indebtedness. The undersigned further waives any and all claims of subrogation and the like which the undersigned may obtain as a result of having to make payments to the Vendor hereunder and do further agree that they shall not become a creditor of the Customer.

7.    This Guaranty shall, in all respects, be continuing and absolute, and shall remain in full force and effect with respect to each Guarantor until written notice by United States certified mail of its discontinuance as to such Guarantor, or notice of the death or dissolution of such Guarantor, shall have been actually received by the Vendor; provided, however, that no notice shall affect or release such Guarantor's obligation hereunder with respect to (a) Guaranteed Indebtedness which was incurred prior to receipt by the Vendor of such notice or which is thereafter incurred in renewal, extension or modification of any or all of such Guaranteed Indebtedness; or (b) any Guaranteed Indebtedness incurred pursuant to an agreement entered into prior to receipt by the

Vendor of such notice, which agreement bound the Vendor to permit such Guaranteed Indebtedness to be incurred.

8.     With respect to any of the obligations or undertakings of the Customer or any other Guarantor, nothing stated herein shall be construed to:

a.     release, modify, impair, change, limit, or waive any of the Guaranteed Indebtedness;

b.     release, modify, impair, limit, change, or waive any liens securing or any security for any liens securing or any security for any or all of the Guaranteed Indebtedness;

c.     limit or impair enforcement of any of the Guaranteed Indebtedness;

d.     limit, release, modify, impair, change, or waive any of the Financing Documents or the enforcement thereof;

e.     release, modify, limit, change, or waive any indebtedness, obligations, or undertakings of any maker, guaranty, or endorser of any of the Guaranteed Indebtedness other than the undersigned;

f.     cause the failure of the undersigned to pay or perform any liability or obligation of the undersigned to the Vendor hereunder as, when and in the manner required hereby or under the Financing Documents as, when and in the manner required thereby;

g.     limit or impair the undersigned's liability with respect to recovery of insurance or condemnation proceeds or other similar funds under the Financing Documents or payments attributable to any part or all of any collateral which secures any Guaranteed Indebtedness;

h.     limit or impair the Vendor's rights, powers, remedies, or privileges under any other document, instrument, or agreement executed and/or delivered pursuant to the Note or any of the Guaranteed Indebtedness;

i.     limit or impair the Vendor's right to recover costs or expenses from any other guarantor;

j.     limit or impair obligations of the undersigned under any other agreement with the Vendor; or

9.     <u>Miscellaneous</u>.

a.   This Guaranty shall be construed in accordance with the internal substantive laws of the State of New York.  Any action hereon or related hereto may only be brought in a court of competent jurisdiction located within the State of New York, and the undersigned hereby consent to the jurisdiction of such courts for all purposes related hereto.

b.   **THE UNDERSIGNED, FOR THE EXPRESS PURPOSE OF EXPEDITING THE RESOLUTION OF DISPUTES HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING IN WHICH THE UNDERSIGNED AND LENDER ARE ADVERSE PARTIES.**

c.   This Guaranty shall inure to the benefit of the Vendor, its successors, assigns, endorsees and any person to whom the Vendor may grant any interest in the Guaranteed Indebtedness, and shall be binding upon the undersigned and the undersigned's successors, assigns, heirs, executors, administrators and other legal representatives thereof.

*[Signature Page Follows.]*



Executed and delivered to the Vendor as of the ___ day of _____, 20__.

GUARANTOR, **DANIEL CHEIFETZ**

By: _____

Name:

STATE OF

COUNTY OF

    The foregoing instrument was acknowledged before me this ____ day of _____, 20__, by _____, the _____(*title*) of _____ (*Guarantor*).

_____

Notary Public/Justice of the Peace

My Commission Expires:_____

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN

# GROUP EXHIBIT E



# INSTALLMENT LOAN & SECURITY AGREEMENT

FOR VALUE RECEIVED, the undersigned borrower ("Borrower"), promises to pay to the order of the lender ("Lender"), the below stated principal sum together with interest on the unpaid principal balance hereof from time to time outstanding at the rate per annum set forth below. The financial obligation of the Borrower to the Lender is herein called the "Loan". The Loan shall accrue interest by reference to the Fixed Rate as set forth below.

Principal payments and interest shall be due and payable as set forth below. If not sooner paid, all outstanding principal and accrued and unpaid interest thereon shall be paid to the Lender on the Last Payment Date set forth below. In the absence of demonstrable error, the books and records of the Lender shall constitute conclusive evidence of the unpaid principal balance hereof from time to time.

The Borrower may, upon at least two business days' prior written notice to the Lender stating the proposed date and aggregate principal amount of the prepayment, prepay the outstanding principal amount in whole, together with accrued interest to the date of such prepayment on the principal amount prepaid and without discount.

All payments hereunder shall be payable in lawful money of the United States. All payments shall be applied first to any costs, fees and expenses of the Lender due hereunder, then to interest due hereunder, and any balance shall be applied in reduction of principal in the inverse order of maturity.

### FINANCING SCHEDULE

| Purchase Price: | $604,500.00 | Less Cash: | $ | Financing Term: | 36 months |
|---|---|---|---|---|---|
| Documentation Fees: | $350.00 | Less Trade-In: | $44,761.54 | Interest Rate: | 7.95% |
| Total Price: | $604,850.00 | Down Payment: | $44,761.54 | Principal Financed: | $564,588.46 |

| Number of Payments in Series | Amount of Payments in Series | Date of First Payment in Series | Date of Last Payment in Series | Total Amount of Payments in Series |
|---|---|---|---|---|
| 36 | $10,677.96 | July 1, 2007 | July 1, 2010 | $671,406.56 |

This Loan is secured by certain collateral described below. If any Event of Default shall occur, the Lender may, at its option, declare to be immediately due and payable the then outstanding principal balance, with all accrued and unpaid interest thereon, and all other amounts payable to the Lender hereunder, whereupon all such amounts shall become and be due and payable immediately. In the event that any payment due hereunder shall not be paid when due, the Borrower shall pay a late fee of the greater of $100.00 or five percent (5.00%) of the outstanding principal payment missed.

### COLLATERAL – EQUIPMENT DESCRIPTION & LOCATION

| Description (model, serial number) | Purchase Price |
|---|---|
| 1 Atlas Copco Brand Drill Model #TH60, Serial #21129 mounted on Peterbilt truck Serial# 1NPAL40X-7-7D661603<br>Freight<br>Sales tax to be paid to taxing source directly by Indie Energy | $604,500.00<br>$4,500.00 |
| Equipment Location (if other than billing address below)<br>As below | Delivery Date<br>May 23, 2007 |

## Section 1   Grant of Security Interest.

1.1. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower hereby grants to the Lender a security interest in and first lien on all of the Borrower's rights in the Collateral to secure the Secured Obligations.

1.2. As used herein, the term "Secured Obligations" shall mean the payment and performance of all debts, liabilities, obligations, covenants, agreements and indemnities of the Borrower to the Lender, of every kind, nature and description, due or to become due, now existing or hereafter arising, including, without limitation, all debts, liabilities and obligations under this agreement; all renewals, amendments, modifications, consolidations, replacements, increases and extensions thereof, therefore and thereto (collectively, the "Loan Documents'); and any other form of indebtedness owed by the Borrower to the Lender.

1.3. As used herein, the term "Collateral" shall mean: **(a)** All the Borrower's right, title and interest in and to the goods, property and equipment (including any software or computer programs embedded therein) set forth and described in this Security Agreement (the "Equipment"); **(b)** All the Borrower's right, title and interest in and to all additions, replacements, accessions, substitutions, modifications and improvements to the foregoing; **(c)** All of the Borrower's rights in, to and under policies and certificates of insurance, including claims or rights to payment and all proceeds, refunds, and premium rebates, including without limitation, proceeds of fire, theft or any other physical damage or loss relating directly or indirectly to the foregoing; **(d)** All books, records, and information relating to any of the foregoing, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded, and maintained, and all computer programs, computer records, computer software, rights of access to computer bureaus and computer data relating to the foregoing; and **(e)** All proceeds (cash and non-cash) and products of the foregoing, provided that the grant to the Lender of a security interest in proceeds shall not be deemed a consent by Lender to a sale or other disposition of any Collateral.

1.4. As used herein **(a)** the term "UCC" shall mean the Uniform Commercial Code as adopted and in effect in the State of Illinois; and **(b)** the term "Guarantor" shall mean a guarantor, if any, of the Secured Obligations.

**Borrowers initials here**

**Section 2.   Covenants.**

The Borrower hereby covenants and agrees for the benefit of the Lender as follows:

2.1. The Borrower will do all things necessary to preserve, renew and keep in full force and effect and in good standing its existence and material qualifications and rights necessary or desirable in the ordinary conduct of its business.

2.2. The Borrower shall retain ownership and possession of the Collateral and keep the Collateral free and clear of all Liens and other property interest of any and every kind whatsoever, except those in favor of the Lender. The Borrower shall promptly notify the Lender of (i) any Lien made or threatened against the Collateral or any part thereof, and (ii) any material change in the Collateral, including without limitation, any material decrease in the value thereof.

2.3. The Borrower shall deliver to the Lender, promptly upon receipt of same, copies of all notices, certificates, documents and instruments received by the Borrower which materially affect the Collateral.

2.4. The Borrower shall pay or cause to be paid promptly when due all taxes, betterments, assessments and other governmental levies, insurance premiums and other charges, to whomever and whenever laid or assessed, whether on this agreement or on any interest therein or on the Secured Obligations, or on the Collateral, which if unpaid might by law become a Lien on the Collateral; provided, however, that any such tax, assessment, charge, levy or claim need not be paid if the validity or amount thereof shall currently be contested in good faith by appropriate proceedings and if the Borrower shall have set aside on its books appropriate reserves with respect thereto in accordance with generally accepted accounting principles; and provided, further, that the Borrower will pay all such taxes, assessments, levies or other governmental charges forthwith upon the commencement of proceedings to foreclose any Lien which may have attached as security therefore.

2.5. The Borrower will keep and maintain each item of Equipment in good operating condition, ordinary wear and tear excepted, and the Borrower will provide all maintenance and service and all repairs necessary for such purpose.

2.6. The Borrower will use the Collateral for lawful purposes only, with all reasonable care and caution in conformity with all applicable laws, rules, regulations and ordinances.

2.7. The Collateral is now and shall remain personal property, and the Borrower will not permit any of the Collateral to become a part of or affixed to real property without written prior consent of the Lender and without first making all arrangements and delivering, or causing to be delivered, to Lender all instruments and documents including, without limitation, waivers and subordination agreements by any party necessary, at the sole discretion of the Lender, to preserve and protect the primary security interest granted herein in the Collateral to the Lender.

2.8. At all times, and at its sole cost and expense, the Borrower shall (i) cooperate with Lender to record and maintain appropriate financing and continuation statements; (ii) pay all recording, filing or other taxes, fees and other charges relating thereto; and (iii) shall comply with all such statutes and regulations, as may be required by law in order to establish, preserve, perfect and protect the first Lien of the Lender in the Collateral (including, without limitation, any interests acquired after the execution hereof) and the rights of the Lender there under. The Lender may record or file as such a financing statement or statements, a carbon, photographic or other reproduction of this agreement. Borrower hereby authorizes the Lender to prepare and file such financing statements (including continuation statements or amendments thereof or supplements thereto) or other instruments as the Lender may from time to time deem necessary or appropriate in order to perfect and maintain the security interest granted hereunder in accordance with the UCC, including without limitation, any financing statement that describes the Collateral.

2.9. If and to the extent from time to time requested by the Lender, the Borrower shall furnish to the Lender written statements, signed and, if so requested, acknowledged, setting forth the amount of the Secured Obligations which the Borrower acknowledges to be due to the Lender, specifying any claims of offset or defense which the Borrower asserts against the Secured Obligations or any obligations to be performed hereunder, the then state of facts relative to the condition of the Collateral, and such other matters as the Lender shall request.

2.10. The Borrower shall notify the Lender at least thirty (30) days prior to any change in the name, structure or identity of the Borrower, or the use by the Borrower of any trade name or trade style not heretofore disclosed to the Lender, or the address of the Borrower's chief executive office or location and the address of any location of Collateral; in each case by an amendment to this Security Agreement.

2.11. The Borrower will promptly notify the Lender (a) of any material adverse change in its financial condition, assets, business or prospects and (b) any litigation, arbitration or administrative proceeding to which the Borrower may hereafter become a party and which may involve any material risk of any judgment or liability which may have a material adverse effect on the Collateral or Borrower's ability to pay and perform the Secured Obligations as and when due.

2.12. The Borrower shall allow the Lender and its representatives access and right of inspection of the Collateral at its location at reasonable times, with reasonable frequency, and in a reasonable manner, and in the event of loss or damage to the Collateral shall send prompt written notice thereof to the Lender.

2.13. The Borrower will maintain with financially sound and reputable companies insurance policies (i) insuring the Equipment against loss by fire, explosion, theft and such other casualties as are usually insured against by companies engaged in the same or similar businesses, and (ii) insuring the Borrower and the Lender against liability for personal injury and property damage relating to the Equipment, such policies to be in such form and in such amounts and coverage as may be reasonably satisfactory to the Lender, with losses payable, in the case of casualty policies, to the Lender as its interests may appear. All insurance policies with respect to the Equipment shall (i) contain a "Lender's Loss Payable" endorsement which shall provide that in respect of the interests of the Lender in such policy the insurance shall not be invalidated by any action or inaction of the Borrower or any other person and shall insure the interests of the Lender as they appear, regardless of any breach or violation of any warranties, declarations or conditions contained in such policies by the Borrower; (ii) provide that no cancellation, reduction in amount or change in coverage thereof shall be effective until at least thirty (30) days after receipt by the Lender of written notice thereof; (iii) waive any right of subrogation of the insurer against, or any right of set-off, counterclaim or any other deduction in respect of any liability of, the Lender to such insurer; (iv) provide that the Lender shall receive promptly copies of any notices to the Borrower of any default or other act or omission by the Borrower which might invalidate or render unenforceable, in whole or in part, such policy or result in the lapse thereof, in whole or in part; and (v) be otherwise satisfactory in all respects to the Lender. Each liability policy carried in accordance with this Section shall be primary without right of contribution from any other insurance policy which is carried by the Borrower or the Lender to the extent that such other insurance policy provides the Borrower or the Lender with contingent or excess liability insurance with respect to its interest in the insured property and shall expressly provide that all of the provisions thereof, except the limits on liability, shall operate in the same manner as if there were a separate policy covering each insured. The Borrower shall, if so requested by the Lender, deliver to the Lender as often as the Lender may reasonably request, a Certificate of Insurance evidencing such coverage. All such insurance proceeds received by the Lender may be applied by the Lender in its discretion to the satisfaction of the Secured Obligations or to repair or replacement of any property which sustained the casualty, except as otherwise required by applicable law.

2.14. The Borrower shall not permit the Collateral to be relocated to a jurisdiction outside the contiguous United States, and the Borrower shall give the Lender prior written notice if any item of Collateral is to be removed from its current jurisdiction to another within the United States.

2.15. The Borrower will defend the Collateral against the claims and demands of all persons.

**Section 3.   Right of Lender to Perform for Borrower.**

3.1. Whether or not an Event of Default exists under this Security Agreement, the Lender shall have the following rights: **(a)** The Lender is hereby specifically authorized to make, at the Lender's sole option, any or all payments required to be made either hereunder or otherwise in respect of the Collateral by the Borrower. Such payments may include, but are not limited to, payments for taxes, assessments, betterments and other governmental levies, and insurance premiums. The Lender

**Borrowers initials here**

shall have the right, but not the duty, to pe'    'n any obligations of the Borrower relating to the Collateral, without .    .ing any other rights or releasing the Borrower from obligation hereunder **(b)** The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding which, in the Lender's sole judgment, affects the Collateral or any of the rights created or secured by this Security Agreement. Such rights may be exercised by the Lender at any time, but only after notice to the Borrower, and only to the extent permitted by law and necessary to protect the Lender's rights hereunder and in the Collateral.

3.2. Any sums paid, and any costs or expenses, including reasonable attorneys' fees, incurred by the Lender, pursuant to the Lender's exercise of rights specified or referred to herein, shall: (a) as between the parties hereto and their successors-in-interest, be deemed valid, so that in no event shall the necessity or validity of any such payments, costs or expenses be disputed by the Borrower; and (b) with respect to such sums, costs and expenses, be, until paid, part of the Secured Obligations and, until paid, shall accrue interest at the Default Rate as defined in this Agreement.

**Section 4.   Events of Default.**

The occurrence of any one or more of the following events shall constitute an Event of Default hereunder (each an "Event of Default"): **(a)** the Borrower shall fail to make any payment of the Secured Obligations within five (5) days of when due; **(b)** the Borrower shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by the Borrower under this Agreement within fifteen (15) days after the date of written notice thereof sent by the Lender; **(c)** any representation or warranty made by the Borrower herein or in any document or certificate furnished to the Lender in connection herewith shall have been incorrect in any material respect when made; **(d)** the Borrower shall fail to make any payment of any "material indebtedness" (meaning indebtedness equal to or exceeding ten percent (10%) of the original principal amount of the Loan) (other than indebtedness constituting Secured Obligations) for money borrowed or indebtedness under any capitalized lease or other purchase money obligation or shall fail to perform the terms of any agreement relating to such indebtedness and such breach or default shall continue, without having been duly cured, waived or consented to, beyond the period of grace, if any, therein specified, or any such indebtedness shall be accelerated or declared due and payable prior to the stated maturity thereof; **(e)** the Borrower or any "affiliate" (meaning, as applied to any person or entity, a person or entity which directly or indirectly controls, is controlled by, or under common control with such person or entity) shall fail to pay, observe or perform any obligation, indebtedness, covenant or agreement to or with the Lender or any of its "affiliates" to be paid, observed or performed on the part of the Borrower or its "affiliates" and such default shall continue without having been duly cured, waived or consented to beyond the period of grace, if any, therein specified; **(f)** there shall be imposed on the Collateral or any part thereof any Lien other than a Lien in favor of the Lender; **(g)** there shall occur any loss, theft, fire, substantial damage to or destruction of a material portion of the Collateral, or any seizure of any of the Collateral; **(h)** there shall occur the entry of any material judgment against the Borrower, which judgment is not satisfied or appealed from (with execution or similar process stayed) within thirty (30) days of its entry; **(i)** (x) the Borrower shall generally not pay its debts as such debts become due, shall admit in writing its inability to pay its debts generally or shall make a general assignment for the benefit of creditors, (y) any proceeding shall be instituted by or against the Borrower seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or composition of it or its debts, under any applicable law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a custodian, receiver, trustee or other similar official for it or for any substantial part of its property; provided, however, that in the case of any such proceedings instituted against the Borrower (but not instituted by the Borrower) either such proceedings shall remain undismissed or unstayed for a period of 45 days or more or any action sought in such proceedings shall occur, or (z) the Borrower shall take any corporate action to authorize any action set forth in clauses (x) and (y) above; **(j)** any provision of this Agreement after delivery thereof shall for any reason fail or cease to be valid and binding on, or enforceable against, the Borrower, or the Borrower shall so state in writing; **(k)** this Agreement shall for any reason fail or cease to create valid and enforceable Liens on any Collateral purported to be covered hereby or, such Liens shall fail or cease to constitute the first priority Liens on the Collateral; **(l)** all, or a controlling interest of, the capital stock of the Borrower shall be sold, assigned, or otherwise transferred or if a security interest or other encumbrance shall be granted or otherwise acquired

therein or with respec' *hereto; **(m)** Lender shall determine, in its sole discretion and in go.    aith that there has been a material adverse change in the financial condition of the Borrower since the date hereof, or that Borrower's ability to make any payment under this Agreement promptly when due or otherwise comply with the terms of the Loan Documents is impaired; or **(n)** any one or more of the foregoing events shall occur with respect to the Guarantor as if it were the "Borrower" named herein.

**Section 5.   Remedies.**

If an Event of Default hereunder shall have occurred, then, or at any time thereafter while such Event of Default is continuing, the Lender may lawfully exercise any of the following remedies (and the Borrower hereby authorizes and empowers the Lender with the aide and assistance of any persons): (a) To enter upon such place as the Collateral may be found and take possession of and carry away the Collateral with or without due process of law at any time or times, and to dispose of the Collateral and apply the proceeds thereof to the Secured Obligations ; and to exercise any or all of the rights and powers and pursue any or all of the remedies that are available to a secured party under the UCC or any other applicable law or in equity in respect to the Collateral. Beyond the safe custody of the Collateral, the Lender shall have no duty as to any of the Collateral in its possession or the possession of its nominee or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto

Upon issuance of a notice of default by Lender, all payments received by the Borrower in connection with the use of any of the Collateral shall be held by the Borrower in trust for the Lender, shall be segregated from other funds of the Borrower and shall forthwith upon receipt by the Borrower be turned over to the Lender, in the same form as received by the Borrower (duly endorsed by the Borrower to the Lender, if required). Any and all such payments so received by the Lender (whether from the Borrower or otherwise) shall be held by the Lender as collateral security for, and then or at any time thereafter, may be applied in whole or in part for the benefit of the Lender against, all or any part of the Obligations in such order as the Lender, in its discretion, may determine.

The Borrower will reimburse the Lender for all fees of attorneys or collection agencies and all expenses, costs and charges paid or payable to third persons or suffered or incurred by the Lender in attempting to effecting protection or preservation of its security interest in the Collateral or the enforcement of any provision of this Security Agreement. Costs of collecting the amounts secured hereby shall be added to the principal amount due hereunder and shall be secured by, and payable out of, the Collateral.

Any sale or other disposition of the Collateral may be at public or private sale upon such terms and in such manner as the Lender deems advisable, having due regard to compliance with any statute or regulation which might affect, limit, or apply to the Lender's disposition of the Collateral. Unless the Collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold on a recognized market (in which event the Lender shall provide the Borrower with such notice as may be practicable under the circumstances), the Lender shall give the Borrower at least the greater of the minimum notice required by law or seven (7) days prior written notice of the date, time, and place of any proposed public sale of, and of the date after which any private sale or other disposition, of the Collateral, or any portion thereof, is to be made.

In connection with the Lender's exercise of the Lender's rights under this Section, the Lender may enter upon, occupy, and use any premises owned or occupied by the Borrower, and may exclude the Borrower from such premises or portion thereof as may have been so entered upon, occupied, or used by the Lender. In no event shall the Lender be liable to the Borrower for use or occupancy by the Lender of any premises pursuant to this Section, nor for any charge (such as wages for the Borrower's employees and utilities) incurred in connection with the Lender's exercise of the Lender's rights and remedies.

The Lender may require the Borrower to assemble the Collateral and make it available to the Lender at the Borrower's sole risk and expense at a place or places which are reasonably convenient to both the Lender and the Borrower (including at the Borrower's premises) or the Lender may render any Collateral unusable to the Borrower.

All rights, remedies and options conferred upon the Lender by the terms of this Agreement or by law shall be cumulative and may be exercised

**Borrowers Initials here** ⟨initials⟩

successively or concurrently and are not alterna˜ ˜ or exclusive of any other such rights, remedies or options. No expre˜ ˜r implied waiver by the Lender of any default or event of default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent Default or Event of Default. The failure or delay of the Lender in exercising any rights granted hereunder shall not constitute a waiver of any such right in the future and any single or partial exercise of any particular right by the Lender shall not exhaust such rights or constitute a waiver of any other right provided herein.

**Section 6.    Miscellaneous.**

6.1. If the Lender is made a party defendant to any litigation concerning this Agreement, any Loan Document or the Collateral or any part thereof, then the Borrower shall indemnify, defend and hold the Lender harmless from and against all claims, liabilities, judgments, costs and expenses by reason of said litigation, including reasonable attorneys' fees and expenses incurred by the Lender in any such litigation, whether or not any such litigation is prosecuted to judgment.

All amounts due to the Lender pursuant to this Section shall bear interest at the Default Rate from time to time in effect until paid. The "Default Rate" shall mean a per annum rate of the lesser of (i) the interest rate of the Loan plus four percent (4%) per annum or (ii) the maximum rate of interest then permitted by law.

6.2.When all Secured Obligations have been indefeasibly paid and performed in full and no further obligation on the part of the Borrower shall exist, this Security Agreement shall cease and terminate, and, at the Borrower's written request, accompanied by such certificates, opinions and proof as the Lender shall reasonably deem necessary, the Collateral furnished hereunder shall revert to the Borrower and the estate, rights, title, and interest of the Lender therein shall cease, and thereupon on the Borrower's written request and at its cost and expense, the Lender shall execute proper instruments, acknowledging satisfaction of and discharging the Security Interest created by this Agreement, and shall redeliver to the Borrower the Collateral furnished hereunder then in its possession; subject, however, to the terms and provisions contained in Section 6.3 hereof.

6.3. All covenants, agreements, representations and warranties made herein or in the Note and in certificates delivered pursuant hereto or thereto shall be deemed to have been material and relied upon by Lender, notwithstanding any investigation made by Lender or on Lender's behalf, and shall survive the execution and delivery to Lender hereof and thereof. Each such covenant, agreement, representation and warranty is hereby confirmed by the Borrower to be true and correct in all respects with the same force and effect on and as of the date of delivery of any Collateral to Lender as though made as of the date of such delivery.

6.4.Borrower agrees to indemnify, defend and save and hold harmless Lender and its officers, directors, employees, agents and advisors and affiliates (each, an "Indemnified Party") from and against, and shall pay on demand, any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and expenses of counsel) that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or resulting from this Agreement (including, without limitation, enforcement of this Agreement), except to the extent such claim, damage, loss, liability or expense is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.

6.5.This Security Agreement may not be waived, changed or discharged orally but only by an agreement in writing and signed by the Lender, and any

oral waiver, change or ˜˜charge of any provision of this Agreement shall be without authority a˜ ˜ no force and effect.

6.6 (a)All notices, demands, requests, consents and other communications provided for in this Agreement shall be given in writing, (including electronic mail), and addressed to the party to be notified at the address for such party set forth below or at such other address as shall be notified in writing to the other parties. (b)All notices, demands, requests, consents and other communications described in clause (a) above shall be effective (i) if delivered by hand, including any overnight courier service, upon personal delivery, or (ii) if delivered by mail, three business days after deposited in the mails, and (iii) if delivered by electronic mail or any other telecommunications device, when transmitted to an electronic mail address (or by another means of electronic delivery) as provided in clause (a) above.

6.7 The covenants, representations, warranties and agreements herein set forth shall be binding upon the Borrower, its successors and assigns and shall inure to the benefit of the Lender, its successors and assigns. Any purchaser, assignee or transferee of any of the Secured Obligations and the Lender's Lien hereunder shall forthwith become vested with and entitled to exercise all the powers and rights given by this Agreement to the Lender, as if said purchaser, assignee, transferee or pledgee were originally named herein.

6.8.This Security Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois without regard to choice of law principles. Any action or suit in connection with this Agreement or the transactions contemplated herein or therein may be brought in any court of record in the State of New York, the parties hereby irrevocably submitting and consenting to the non-exclusive jurisdiction of each thereof, and each party irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may have or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and claim that the same has been brought in an inconvenient forum. Service of process may be made on the other party by mailing a copy of the summons to such party, by registered mail, at its address to be used for the giving of notices under this Security Agreement and the Note. IN THE EVENT OF ANY LITIGATION IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN, THE DEBTOR AND THE LENDER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ALL RIGHTS TO A TRIAL BY JURY.

6.9. This Agreement, any Schedules or Exhibits hereto and any riders or other attachments, any application submitted by the Borrow to the Lender and any guaranty or subordination agreement delivered together under this Agreement (the "Loan Documents") constitute the entire agreement between the parties with respect to the subject matter hereof. If at any time one or more provisions of this Agreement or the Loan Documents, any amendment or supplement thereto or any related writing is or becomes invalid, illegal or unenforceable in whole or in part in any jurisdiction, the validity, legality and enforceability of such provision in any other jurisdiction or of the remaining provisions shall not in any way be affected or impaired thereby.

6.10. If more than one Person constitutes the Borrower or the Guarantor, the obligations of such Persons shall be joint and several.

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Security Agreement, under seal, on the day and year first below written.

| LENDER | | BORROWER | |
|---|---|---|---|
| Name<br>Atlas Copco Construction and Mining USA LLC | Contact Person<br>G. Grammerstorf | Name<br>Indie Energy Services Company LLC | Contact Person<br>Daniel Cheifetz |
| Address<br>3700 E. 68th Avenue | Telephone<br>1.303.600.2330 | Address<br>1020 Church Street | Telephone<br>647.371.1604 |
| City / State<br>Commerce City, CO | Zip Code<br>80022 | City / State<br>Evanston, IL | Zip Code<br>60201 |
| Signature (Duly Authorized) | Date<br>08-31-07 | Signature (Duly Authorized) | Date<br>6/30/07 |
| Name<br>Jim Levitt | Title<br>VP Finance | Name<br>Daniel Cheifetz | Title<br>CEO |

JUN.05.2007 11:15 4147607963            ATLAS COPCO            #0340 P.003 /003



**INVOICE**

| No. | 305555 |
|---|---|
| Date: | 7/05/31 |
| Page: | 1 |

Remit To:
Atlas Copco CMT USA LLC
4795 Collection Center Drive
Chicago, IL 60693

**Sold to:**
INDIE ENERGY SERVICES CO, LLC

1020 CHURCH STREET

EVANSTON
IL  60201

**Ship to:**
INDIE ENERGY SERVICES CO, LLC

1020 CHURCH STREET
EVANSTON
IL  60201

| Customer Number | Purchase Order Number | Purchase Order Date | Terms Days |
|---|---|---|---|
| 801580 | DANIEL CHEIFETZ | 7/05/31 | **Net 30 days** |

| AC sales order | Shipped on | Weight | Shipping Information |
|---|---|---|---|
| 335771 | | .000 | |

| Description | Article no. | Qty | Unit price | Disc. | Total |
|---|---|---|---|---|---|
| TH-60 / sn 21129 | 9753202221 | 1 | 604500.00 | | 604500.00 |
| T2W / SN 6256 | 9753202477 | 1- | 280000.00 | | 280000.00- |
| Freight Charge From Factory to Milwaukee | | | | | 4500.00 |
| Sales Price          $604,500.00 | | | | | |
| Trade in T2W S/N 6256 $(-280,000.00) | | | | | |
| Freight From Factory  $4,500.00 | | | | | |
| Net invoice          $329,000 | | | | | |
| AC FINANCE | | | | | |
| STATE: IL | | | | | 20281.25 |

All claims must be made within 14 days from receipt of goods. No returns accepted without prior approval. All returns are subject to a minimum handling and restocking charge. Service charge on overdue accounts of 2% per month.

**TOTAL**          349281.25

**Atlas Copco Construction and Mining Technique USA LLC**          A Company within the Atlas Copco Group

3700 E. 68th Avenue                    Telephone:    (303) 287-8822
P.O. Box 1159                          Toll Free     (800) 732-6762
Commerce City, CO 80022                Fax:          (303) 288-8828
www.atlascopco.com



## CERTIFICATE OF ORIGIN FOR A VEHICLE

### PETERBILT MOTORS COMPANY
A DIVISION OF PACCAR

DATE
OCTOBER 13, 2006

INVOICE NO.
N/A

VEHICLE IDENTIFICATION NO.
1NPAL40X77D661603

YEAR
2007

MAKE
PETERBILT

BODY TYPE
TRUCK

SHIPPING WEIGHT
20,532 LB

| H.P. (S.A.E.) | G.V.W.R. | NO. CYLS. | SERIES OR MODEL |
|---|---|---|---|
| 565.0 | 5 TON | 6 | MODEL 357 |

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

RUSH TRK CTR, DALLAS
515 N. LOOP 12
P.O. BOX 560228
DALLAS          TX          75356

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

PETERBILT MOTORS COMPANY

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)          (AGENT)

PE 600136

DENTON, TEXAS
CITY-STATE

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle.
**FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:**

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S) ATLAS COPCO DRILLING SOLUTIONS
ADDRESS 2100 NORTH FIRST STREET    GARLAND, TX   75046
I certify to the best of my knowledge that the odometer reading is 47
DEALER RUSH TRUCK CENTER    P52503    BY: _____
NAME OF DEALERSHIP    DEALERS LICENSE NUMBER    Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of TEXAS    before this 8 day of NOV 20 06
County of DALLAS    _____ Notary Public
**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S) Atlas Copco CMT
ADDRESS 13825 West Farmer Rd. Milwaukee WI 53225
I certify to the best of my knowledge that the odometer reading is
DEALER _____
GLORIA ORTEGA GAMEZ
MY COMMISSION EXPIRES
August 28, 2010
NAME OF DEALERSHIP    DEALERS LICENSE NUMBER    BY: X _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
before this _____ day of _____ 20 07
_____ Notary Public
**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S) _____
ADDRESS _____
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER _____
NAME OF DEALERSHIP    DEALERS LICENSE NUMBER    BY: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of _____    before this _____ day of _____ 20 ___
County of _____    _____ Notary Public
**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S) _____
ADDRESS _____
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER _____
NAME OF DEALERSHIP    DEALERS LICENSE NUMBER    BY: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
State of _____    before this _____ day of _____ 20 ___
County of _____    _____ Notary Public
**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

**ODOMETER DISCLOSURE FOR RETAIL SALE**

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge, that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading _____ ☐ No Tenths ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage.
**WARNING ODOMETER DISCREPANCY**
(Signature(s) of Seller(s)) _____ Dealers No. _____ Date of Statement _____ Date of Sale _____
(Printed Name(s) of Seller(s)) _____
(Signature(s) of Purchaser(s)) _____
(Printed Name(s) of Purchaser(s)) _____
Company Name (if Applicable) _____
Address of Purchaser(s) _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me
before this _____ day of _____ 20 ___
_____ Notary Public
State of _____
County of _____
**USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION**

**LIENHOLDER**

1st lien in favor of _____
whose address is _____
2nd lien in favor of _____
whose address is _____

JOY SIMCKINS
Notary Public, State of Texas
My Commission Expires
May 02, 2010

## ODOMETER MILEAGE STATEMENT

(FEDERAL REGULATIONS REQUIRE YOU TO STATE THE ODOMETER MILEAGE UPON TRANSFER OF OWNERSHIP. AN INACCURATE OR UNTRUTHFUL STATEMENT MAY MAKE YOU LIABLE FOR DAMAGES TO YOUR TRANSFEREE, FOR ATTORNEY FEES, AND FOR CIVIL OR CRIMINAL PENALTIES, PURSUANT TO SECTIONS 409, 412, and 413 OF THE MOTOR VEHICLE INFORMATION AND COST SAVINGS ACT OF 1972 (PUB.L.92-513, AS AMENDED BY PUB. L. 94-364)).

I, __Rush Truck Center, DFW_____, STATE THAT THE ODOMETER MILE-
TRANSFEROR'S NAME-SELLER -PRINT
AGE ON THE VEHICLE
DESCRIBED BELOW NOW READS __47_____MILES/KILOMETERS.
ODOMETER READING

CHECK ONE BOX ONLY:

[X] (1) I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING AS STATED ABOVE REFLECTS THE ACTUAL MILEAGE OF THE VEHICLE DESCRIBED BELOW.

[ ] (2) I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING AS STATED ABOVE REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF DESIGNED MECHANICAL ODOMETER LIMIT OF 99,999 MILES/KILOMETERS OF THE VEHICLE DESCRIBED BELOW.

[ ] (3) I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING AS STATED ABOVE IS NOT THE ACTUAL MILEAGE OF VEHICLE DESCRIBED BELOW AND SHUOULD NOT BE RELIED UPON.

| MAKE | MODEL | BODY TYPE |
|------|-------|-----------|
| Peterbilt | 357 | |
| VEHICLE IDENTIFICATION NO. | YEAR | |
| 1NPAL40X77D661603 | 2007 | |

CHECK ONE BOX ONLY:

[X] (1) I HEREBY CERTIFY THAT THE ODOMETER OF SAID VEHICLE WAS NOT ALTERED, SET BACK OR DISCONNECTED WHILE IN MY POSSESSION, AND I HAVE NO KNOWLEDGE OF ANYONE ELSE DOING SO.

[ ] (2) I HEREBY CERTIFY THAT THE ODOMETER WAS ALTERED FOR REPAIR OR REPLACEMENT PURPOSES WHILE IN MY POSSESSION, AND THAT THE MILEAGE REGISTERED ON THE REPAIRED OR REPLACEMENT ODOMETER WAS IDENTICAL TO THAT BEFORE SUCH SERVICE.

[ ] (3) I HEREBY CERTIFY THAT THE REPAIRED OR REPLACEMENT ODOMETER WAS INCAPABLE OF REGISTERING THE SAME MILEAGE, THAT IT WAS RESET TO ZERO, AND THAT THE MILEAGE ON THE ORIGINAL ODOMETER OR THE ODOMETER BEFORE REPAIR WAS _____ MILES/KILOMETERS.

| TRANSFEROR'S STREET ADDRESS (SELLER) | | |
|------|------|------|
| 515 N Loop 12 | | |
| CITY | STATE | ZIP CODE |
| Irving | TX | 75061 |
| DATE OF STATEMENT | TRANSFEROR'S SIGNATURE (SELLER) | |
| 11/08/2006 | X _Jay emmons_ | |

| TRANSFEREE'S NAME (BUYER) |
|------|
| Atlas Copco Drilling Solutions |

| STREET ADDRESS | | |
|------|------|------|
| 2100 North First Street | | |
| CITY | STATE | ZIP CODE |
| Garland | TX | 75046 |

RECEIPT OF COPY ACKNOWLEDGED X1
TRANSFEREE'S SIGNATURE –BUYER
580.6 REV.8/77
REORDER: TADA SERVICES, INC., P.O. Box 1028, Austin, Texas 78767        1085-07432SC

302929

RECEIVED
SECRETARY OF STATE
UNIFORM COMMERCIAL CODE DIV

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2007 MAY 30　PM 4 30

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282 Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

11051 ATLAS COPCO CM

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

11251047

ILIL

UCU105/30/07:02:2331:
20.00 CK01
SOSIL 13:08  12155352 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| INDIE ENERGY SERVICES COMPANY LLC | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1020 CHURCH ST | EVANSTON | IL | 60201 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | LLC | IL | 01901982 | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| INDIE ENERGY SERVICES COMPANY LLC | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1020 CHURCH ST | EVANSTON | IL | 60201 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | LLC | IL | 019011982 | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ATLAS COPCO CONSTRUCTION MINING TECHNIQUE USA LLC | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3700 E. 68TH AVE. | COMMERCE CITY | CO | 80022 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE (1) ATLAS COPCO BRAND DRILL, MODEL #TH60, SERIAL #21129, INCLUDING ALL ATTACHMENTS, ACCESSORIES, REPLACEMENTS AND SUBSTITUTIONS THERETO AND ALL PROCEEDS AND PRODUCTS THEREOF, TOGETHER WITH ALL DOCUMENTS, GENERAL INTANGIBLES, CONTRACT RIGHTS, INSTRUMENTS, ACCOUNTS AND CHATTEL PAPER ARISING OUT OF THE LEASING, SALE OR OTHER DISPOSITION THEREOF.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.　Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

| 11251047 | George | Indie Energy (4) - 5/29/07 |
|---|---|---|

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)



# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| INDIE ENERGY SERVICES COMPANY LLC | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

**10. MISCELLANEOUS**

11251047-IL-0

11051 ATLAS COPCO CM

George

Indie Energy (4) - 5/29/07

File with:  Illinois

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one_ name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☐ NONE |

**12.** ☒ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - insert only one_ name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ATLAS COPCO CUSTOMER FINANCE USA LLC | | | | | |
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 34 MAPLE AVE PO BOX 2028 | | PINE BROOK | NJ | 07058 | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years
☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

Prepared by UCC-Direct Services, Inc.,  P.O. Box 29071
Glendale, CA  91209-9071  Tel (800) 331-3282

08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN

# GROUP EXHIBIT F

## GUARANTY

**IN CONSIDERATION** of credit and financial accommodations extended, to be extended or continued to the Customer identified on Schedule A attached hereto (the "Customer"), by the Vendor identified on Schedule A (the "Vendor"), the undersigned (and joint and severally if more than one guarantor) does hereby guarantee to the Vendor the prompt payment at maturity, or when otherwise due, of the Guaranteed Indebtedness, as defined below, together with any and all costs and expenses incurred by the Vendor in enforcing this Guaranty. The term "Guaranteed Indebtedness" means all obligations, indebtedness and liabilities of the Customer to the Vendor or its assigns of any kind or character, now existing or hereafter arising, whether primary, secondary, direct, indirect, related, unrelated, fixed, contingent, liquidated, joint, several, or joint and several, whether arising by direct indebtedness or by right of indemnification, and all interest and other sums due and to become due thereon, and all extensions, renewals, modifications and rearrangements thereof, howsoever arising, including, without limitation, the "Financing Documents" described on Schedule A. The undersigned further guarantees to the Vendor that the Customer will fully, promptly and punctually perform and observe each and every agreement, covenant or condition of any agreement, loan agreement, note or mortgage on the part of the Customer to be performed and observed. The undersigned agrees to pay to the Vendor upon demand all costs and expenses, including counsel fees, which may be incurred in the collection of the Guaranteed Indebtedness and/or the undersigned's obligations under this Guaranty.

1.    The undersigned hereby: (a) assents to all terms made or to be made with the Vendor by the Customer; (b) consents that the Vendor may: (1) exchange or surrender any collateral now or hereafter held as security for the Guaranteed Indebtedness, (2) waive, release or delay the exercise of any of the Vendor's rights or remedies with respect to the Guaranteed Indebtedness or this Guaranty; (c) waives all suretyship defenses and defenses in the nature thereof; and (d) waives all notices whatsoever in respect to this Guaranty and to the Guaranteed Indebtedness.

2.    The Vendor may release all or any part of any obligation of any of the undersigned, if more than one, and any such release shall not affect or release any obligation hereunder of any of the undersigned not so released. No delay in making demand on the undersigned for payment of the obligations of undersigned hereunder shall prejudice the Vendor's right to enforce such payment. All of the Vendor's rights and remedies shall be cumulative.

3.    In the event the Customer fails to pay when due all or any portion of the Guaranteed Indebtedness, or if the Customer defaults in any agreement, covenant or condition of any agreement, loan agreement, note or mortgage, then the Guaranteed Indebtedness shall be deemed, for the purposes of this Guaranty, to be immediately due, without further notice or demand from the Vendor, and the obligations of the undersigned



hereunder shall be immediately due. The Vendor shall not be bound to exhaust its recourse against the Customer or other persons or upon any collateral or liens the Vendor may hold before being entitled to payment from the undersigned, the undersigned hereby waiving all rights to invoke the principles of marshalling, and all similar equitable remedies. The obligation of the undersigned shall not be affected by any determination made with respect to impairment, adequate protection or collateral valuation in any proceeding affecting the Customer, and the undersigned waives any and all claims or defenses to the Vendor's right to payment and performance of the Guaranteed Indebtedness, including, without limitation, the Vendor's failure to properly perfect a security interest or mortgage lien upon property of the Customer.

4.    The payment made by the undersigned of any amount pursuant to this Guaranty shall not in any way entitle the undersigned to any right, title or interest (whether by way of subrogation or otherwise) in or to any of the Guaranteed Indebtedness or any proceeds thereof, or any security therefore, and the undersigned does hereby expressly acknowledge and agree that he is not a creditor of the Customer by virtue of this Guaranty.

5.    This Guaranty has been delivered by the undersigned for bona fide business and/or personal reasons, in that the undersigned will derive a direct or indirect business or personal benefit. The undersigned hereby specifically and expressly acknowledges that the delivery of this Guaranty is a material consideration to the Vendor without which the Vendor would not extend or continue the credit and financial accommodations to the Customer pursuant to the terms and provisions of the Financing Documents.

6.    Should a claim be made upon the Vendor at any time for repayment of any amount received by the Vendor, in full or partial payment of the Guaranteed Indebtedness, regardless of the source of such payment, the undersigned shall remain liable to the Vendor for the amount so repaid to the same extent that it is as if such amount had never originally been received by the Vendor, and notwithstanding any prior satisfaction or termination hereof, or the cancellation of any note or other instrument evidencing any of the Guaranteed Indebtedness. The undersigned further waives any and all claims of subrogation and the like which the undersigned may obtain as a result of having to make payments to the Vendor hereunder and do further agree that they shall not become a creditor of the Customer.

7.    This Guaranty shall, in all respects, be continuing and absolute, and shall remain in full force and effect with respect to each Guarantor until written notice by United States certified mail of its discontinuance as to such Guarantor, or notice of the death or dissolution of such Guarantor, shall have been actually received by the Vendor; provided, however, that no notice shall affect or release such Guarantor's obligation hereunder with respect to (a) Guaranteed Indebtedness which was incurred prior to receipt by the Vendor of such notice or which is thereafter incurred in renewal, extension or modification of any or all of such Guaranteed Indebtedness; or (b) any Guaranteed Indebtedness incurred pursuant to an agreement entered into prior to receipt by the



Vendor of such notice, which agreement bound the Vendor to permit such Guaranteed Indebtedness to be incurred.

8.      With respect to any of the obligations or undertakings of the Customer or any other Guarantor, nothing stated herein shall be construed to:

a.      release, modify, impair, change, limit, or waive any of the Guaranteed Indebtedness;

b.      release, modify, impair, limit, change, or waive any liens securing or any security for any liens securing or any security for any or all of the Guaranteed Indebtedness;

c.      limit or impair enforcement of any of the Guaranteed Indebtedness;

d.      limit, release, modify, impair, change, or waive any of the Financing Documents or the enforcement thereof;

e.      release, modify, limit, change, or waive any indebtedness, obligations, or undertakings of any maker, guaranty, or endorser of any of the Guaranteed Indebtedness other than the undersigned;

f.      cause the failure of the undersigned to pay or perform any liability or obligation of the undersigned to the Vendor hereunder as, when and in the manner required hereby or under the Financing Documents as, when and in the manner required thereby;

g.      limit or impair the undersigned's liability with respect to recovery of insurance or condemnation proceeds or other similar funds under the Financing Documents or payments attributable to any part or all of any collateral which secures any Guaranteed Indebtedness;

h.      limit or impair the Vendor's rights, powers, remedies, or privileges under any other document, instrument, or agreement executed and/or delivered pursuant to the Note or any of the Guaranteed Indebtedness;

i.      limit or impair the Vendor's right to recover costs or expenses from any other guarantor;

j.      limit or impair obligations of the undersigned under any other agreement with the Vendor; or

9.      <u>Miscellaneous</u>.

a.    This Guaranty shall be construed in accordance with the internal substantive laws of the State of New York.  Any action hereon or related hereto may only be brought in a court of competent jurisdiction located within the State of New York, and the undersigned hereby consent to the jurisdiction of such courts for all purposes related hereto.

b.    **THE UNDERSIGNED, FOR THE EXPRESS PURPOSE OF EXPEDITING THE RESOLUTION OF DISPUTES HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING IN WHICH THE UNDERSIGNED AND LENDER ARE ADVERSE PARTIES.**

c.    This Guaranty shall inure to the benefit of the Vendor, its successors, assigns, endorsees and any person to whom the Vendor may grant any interest in the Guaranteed Indebtedness, and shall be binding upon the undersigned and the undersigned's successors, assigns, heirs, executors, administrators and other legal representatives thereof.

*[Signature Page Follows.]*



Executed and delivered to the Vendor as of the 24th day of May, 20 01

GUARANTOR:

DANIEL CHEIFETZ

By:
Name:
Title:
Duly Authorized

STATE OF
COUNTY OF

The foregoing instrument was acknowledged before me this 24th day of
May, 20 01 by Daniel Cheifetz, the CEO (title) of
Ludie Eversz (Guarantor).

Sherry L Davenport
Notary Public/Justice of the Peace
My Commission Expires: 3.2.09

My Commission Expires: _____

"OFFICIAL SEAL"
Sherry L. Davenport
Notary Public, State of Illinois
My Commission Exp. 03/02/2009



## **SCHEDULE A**

**Guarantor:**
Name: Daniel Cheifetz
Address: 1020 Church Street
        Evanston, IL 60201
Tel:  847.910.4850
Fax:  _708 - 526  9840_ _____
E-mail: _____

**Vendor:**
Atlas Copco Construction Mining Technique USA LLC.
Address: 3700 E 68th Ave
Commerce City, CO.80022
Attn: George Grammerstorf
Tel:  303.600.2330
Fax:  303.600.2323
E-mail: george.grammerstorf@us.atlascopco.com

**Customer:**
Indie Energy Services Company, LLC
1020 Church Street
Evanston, IL 60201
Attn: _____
Tel:   _____
Fax:   _____
E-mail: _____

**Financing Documents:**
Installment Loan & Security Agreement
Guaranty
Schedule A (to Guaranty)
Amortization Agreement
ACH Debit Authorization Form





## AUTOMATIC DEBIT AUTHORIZATION FORM

We hereby authorize Atlas Copco Customer Finance USA LLC to initiate ACH debit entries to our account listed below in accordance with contractual payments due. This authority is to commence on (date) **May 23, 2007** and remain in effect until the aforementioned contractual obligation(s) is satisfied or otherwise agreed.

| ACCOUNT FOR ACH CREDIT PAYMENT | |
|---|---|
| Bank Name | HARRIS BANK |
| Bank Address | 1638 MAPLE AVE, EVANSTON, IL 60201 |
| Routing/ABA # | 0 7 1 1 0 2 5 6 6 1 |
| Account Name | |
| Account # | 4 8 0 0 7 2 0 8 5 0 |

| PAYOR INFORMATION |
|---|

Business Name: INDIE ENERGY

Address: 1020 CHURCH ST

Federal Employee ID #: 2 0 - 5 1 3 0 0 5 2

Contact Name: JANAN ASFOUR

Contact Phone #: 312 848 9934

These instructions are authorized, and the Terms & Conditions for Automatic Debit are accepted by:

Signature: _____  Date: MAY 24, 2007

Printed Name: DANIEL CHEIFETZ

Title: CEO

Please mail this original signed form to:  **Atlas Copco Customer Finance USA LLC**
**P.O. Box 2028**
**34 Maple Avenue**
**Pine Brook, NJ 07058**

### TERMS & CONDITIONS

Atlas Copco Customer Finance USA LLC will initiate a pre-notification to your financial institution prior to debiting your account based on this authorization. The pre-notification is a zero dollar entry transmitted to your financial institution for the purpose of verifying the accuracy of the account and transit routing numbers provided and entered into our system. The authorization will become active approximately 10 days after the pre-notification is originated. If your financial institution returns a correction to us, the process will be repeated with the corrected information.

Only the authorized representative of the Payor may make any changes to the information provided on this form. Any changes must be made in writing. Changes to the account information will cause the original authorization to be immediately deactivated and the new account information will be processed as described above. The authorization will remain in effect until withdrawn in writing with sufficient notice to Atlas Copco Customer Finance USA LLC to allow adequate time to effect termination.

The Electronic Debits Authorization form authorizes Atlas Copco Customer Finance USA LLC to initiate debit entries and, if necessary, a reversing entry in accordance with NACHA rules Article II, Sections 2.4 and 2.5 in order to correct a debit entry made in error. A reversing credit entry may be made without notice to the Payor and can be initiated only within five (5) banking days after the settlement date of the duplicate or erroneous entry.

In no event shall Atlas Copco Customer Finance USA LLC be liable for any consequential, special punitive or indirect loss or damage that the Payor may incur or suffer resulting from errors or omissions in the Payment Authorization Form submitted by the Payor.

08CV2363 EDA
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE BROWN

# EXHIBIT G



**Gail Rovere/USA/GROUP/ATLAS COPCO**

03/07/2008 02:52 PM

To    Daniel Cheifetz <danielche@gmail.com>,
      janan@indieenergy.com, erik@indieenergy.com
cc    charles.wolk@us.atlascopco.com,
      George.Grammerstorf@us.atlascopco.com
bcc
Subject  INDIE ENERGY/ATLAS COPCO CUSTOMER FINANCE

Mr. Cheifetz:

To date, we have not received the following payments on your accounts:

| Account | Collateral | Amount Past Due |
|---------|-----------|-----------------|
| 301795  | T2W        | $13,050.26      |
| 302755  | Compressor | $6,229.76       |
| 302919  | TH60       | $21,355.92      |

Total amount overdue at this time is $40,635.94, representing your February and March payments--this amount does not include any late charges.  Your account is delinquent as indicated above with late charges accumulating and the next payment due April 1st.

Please give this matter your immediate attention.  Your immediate action is anticipated and expected.

Our wire information is as follows:

Bank: Nordea Bank Finland Plc
Routing #: 026010786
Account #: 8879013001
Acct Name: Customer Finance

I expect a wire in the amount of $40,635.94 on Monday March 10, 2008.  If you anticipate any delay beyond this date, please contact me promptly.

If you have any questions or desire further information regarding your accounts, please feel free to contact me directly.

Thank you.

Best regards,

Gail Rovere
Account Manager

---

**Atlas Copco Customer Finance North America**
34 Maple Avenue, PO Box 2028, Pine Brook, NJ 07058 USA

Phone: +1.973.439.3427 - Fax: +1.973.439.9455
E-mail: gail.rovere@us.atlascopco.com
Visit Atlas Copco at: atlascopco.com

---

**We are committed to your superior productivity through interaction and innovation**

# JOHNSON&BELL Ltd.
## ——————— Attorneys at Law ———————

SUITE 2700
33 WEST MONROE STREET
CHICAGO, IL 60603-5404
TELEPHONE: (312) 372-0770
FACSIMILE: (312) 372-9818

1435 E. 85TH AVENUE
MERRILLVILLE, IN 46410
TELEPHONE: (219) 791-1900
FACSIMILE: (219) 791-1901

Direct Dial: 312-984-6661
E-Mail: volmertj@jbltd

April 24, 2008

**Via U.S. Mail**

Daniel Cheifetz
Indie Energy Services Company, LLC
1020 Church Street
Evanston, IL 60201

Re:    **Atlas Copco Contracts in Default**

Dear Mr. Cheifetz:

Please be advised that this firm represents Atlas Copco Construction Mining Technique USA LLC ("CMT") and Atlas Copco Customer Finance USA LLC ("CFA") (collectively, "Atlas Copco"). Indie Energy Services Company, LLC ("Indie Energy") has entered into three agreements with CMT (Contract Nos. 301795, 302755, and 302919), which have been assigned to CFA. You have personally guaranteed these agreements.

Indie Energy is now in default of these agreements. You are hereby advised that unless the following collateral is returned immediately to Atlas Copco, Atlas Copco has instructed this firm to take appropriate legal action to obtain recovery of the collateral: (1) drill, model number T2W, serial number 6201; (2) vehicle, year 1997, make International, model 2000 Series 2674, vehicle ID number 1HTGLATT3VH431381; (3) compressor, model number XRVS 976CD, serial number 539285; (4) drill, model number TH60, serial number 21129; and (5) Peterbilt truck, vehicle ID number 1NPAL40X-7-7D661603.

Failure to abide by the instructions set forth in this letter may result in additional attorney's fees and other costs against you and others who participate in converting the collateral.

Best regards,

Justin H. Volmert