## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ATLAS COPCO CONSTRUCTION MINING TECHNIQUE USA LLC, a Delaware Limited Liability Company, and ATLAS COPCO CUSTOMER FINANCE USA LLC, a New Jersey Limited Liability Company** | ) ) ) ) ) ) ) | **No. 08CV2363 EDA JUDGE DER-YEGHIAYAN MAGISTRATE JUDGE BROWN** |
| **v.** | ) ) ) | |
| **INDIE ENERGY SERVICES COMPANY, LLC, an Illinois Limited Liability Company, and DANIEL CHEIFETZ, an individual.** | ) ) ) ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF REPLEVIN

Defendants Indie Energy Systems Company, LLC ("Indie Energy"), incorrectly named as Indie Energy Services Company, LLC, and Daniel Cheifetz, (collectively, "Defendants") through their attorneys, Schiff Hardin LLP, for their response to Plaintiffs' Motion For Entry of Replevin ("Replevin Motion") states the following:

### INTRODUCTION

Indie Energy has engaged in various written agreements with Plaintiffs through which Indie Energy has financed and/or purchased equipment and materials necessary for the operation of its business from Plaintiffs. Plaintiffs filed their original Motion For Entry of Replevin on April 29, 2008 seeking to gain possession of three pieces of equipment owned by Indie Energy: (1) an Atlas Copco drill, model T2W, serial number 6201 and the truck on which the T2W drill is mounted, International model Series 2674, vehicle identification number 1HTGLATT3VH431381 (collectively, the "T2W drill"), (2) an Atlas Copco Compressor, Model XRVS 976CD, Serial No. 539285 ("Compressor") and (3) an Atlas Copco drill, model number TH60, serial number 21129. The TH60 drill

was mounted on a Peterbilt truck, vehicle identification number 1NPAL40X-7-7D661603 (collectively, the "TH60 drill").

On May 20, 2008, this court denied Plaintiffs' Replevin Motion because they had not met their burden of establishing a *prima facie* case that they had a superior right to possession of the equipment.  This court directed counsel for the parties to review the documentation that evidenced which party had a superior right to possession of the equipment, consult with the appropriate principals of the parties on the ownership documentation and consult with respect to the amounts owed under the various agreements.  (*See* May 20, 2008 Hearing Transcript, attached hereto as Exhibit A.) Defendants' counsel made itself available to Plaintiffs' counsel for discussion on the documentation that establishes the party with the superior right to possession.  (*See* May 23, 2008 letter, attached hereto as Exhibit B).   Defendants' counsel even attempted a resolution of the dispute on June 2, 2008.   Counsel for Defendants correspondence to Plaintiffs' counsel went unanswered.  Instead, Plaintiffs re-filed their Replevin Motion on May 6, 2008.  Plaintiffs' pending Replevin Motion does nothing more than re-plead the allegations made in the original Replevin Motion.  As Plaintiffs' still have not met their burden of establishing their *prima facie* case for superior possession of the subject equipment, the Replevin Motion should be denied.

## ARGUMENT

## I.    PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY HAVE A SUPERIOR RIGHT TO POSSESS THE SUBJECT EQUIPMENT.

### A.    The T2W

Plaintiffs' re-filed Replevin Motion offers no new evidence that they have a superior right to immediate possession of the subject equipment.  With respect to the T2W Drill, Plaintiffs contend that the Master Capital Equipment Lease[1] provides that Plaintiffs have title to the T2W and that its failure to secure a lien on the title held by Defendants' is immaterial.  (*See* June 6, 2008 Replevin Motion, ¶¶ 6-11) Plaintiffs' argument is fundamentally flawed because it fails to acknowledge that Indie Energy has in its possession the **original** certificate of title to the T2W.  (*See* T2W Certificate of Title, attached hereto as Exhibit D).   The original certificate of title identifies Indie Energy as the **sole** owner.  No lien holders are identified on the original certificate and no lien has been recorded by any party with the Illinois Secretary of State.  (*See* Illinois Secretary of State VIN Status Inquiry for the T2W, attached hereto as Exhibit E).

Moreover, Plaintiffs' argument that an unperfected security interest in the T2W is sufficient to assert a superior right to possession is similarly flawed because the Master Capital Lease Agreement does not give Plaintiffs the right to any security interest in the T2W.  The *In re: Lortz*, 344 B.R. 579 (C.D. Ill. 2006) case cited by Plaintiffs involved the enforceability of a signed security agreement.   No provision in the agreement gives

---

[1] The Master Capital Lease Agreement referenced by Plaintiffs is not a true "lease" in any sense of the word.  This agreement, which **requires** Indie Energy to purchase the T2W at the end of the agreement's terms is, in fact, nothing more than a financing contract.  (*See* Master Capital Equipment Lease, attached hereto as Exhibit C.)

Plaintiffs any security interest in the T2W.    (See Exhibit C.)    The handwritten designation of Atlas Copco as a "new lien assignment" on the T2W certificate of title is **not** effective to create any security interest when that lien is not officially recorded with the Illinois Secretary of State.  As neither the Master Capital Equipment Lease, nor the T2W's original title confers on Plaintiffs any security interest, whether perfected or unperfected, Plaintiffs are not entitled to possession of the T2W.[2]

### B.    The TH60

In support of their argument that no material discrepancy exists with respect to the financing of the TH60, Plaintiffs cite to an affidavit from Atlas Copco account manager, Gail Rovere.  However, Ms. Rovere's affidavit does not clarify the discrepancy between the sales invoice and the Installment and Loan Agreement for the TH60.  The sales invoice indicates that the TH60 purchase price was $604,500.    It also indicates that a credit of $280,000 was given for the trade-in of other equipment, leaving a $349,281 balance owed by Indie Energy. This invoice is dated "7/05/31" (likely intended to be interpreted as May 31, 2007), which is dated before the Installment and Loan Agreement was signed in August 2007.  Atlas Copco was well aware of the amount of equity Indie Energy had in the traded-in equipment as of the date of the sales invoice, according to Ms. Rovere's affidavit.  Thus, the $280,000 credit given to Indie Energy for the traded-in equipment was part of a negotiated deal that, in all likelihood, directly influenced the negotiated $604,500 sales price for the TH60.  Ms. Rovere's affidavit does nothing to clarify whether Indie Energy was properly credited for the traded-in

---

[2] Moreover, Plaintiffs' contention that Defendants have never "raised any issue with respect to Atlas Copco's right to possess" the equipment is unfounded.  *See* June 6, 2008 Replevin Motion, ¶ 2. Defendants have filed with this Court an Answer to Plaintiffs' Complaint and Counterclaims that set forth Defendants' position with respect to their ownership and right to possess the subject equipment.

equipment, and since such a proper credit would satisfy any outstanding balance on the TH60, Plaintiffs still have not established their superior right to possession of the TH60.

## II.    PLAINTIFFS HAVE NOT ESTABLISHED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON ITS CLAIMS IN THE LAWSUIT.

Only if Plaintiffs establish a *prima facie* superior right to possession of the disputed property and ***also*** demonstrate to the court the probability that the underlying claim to possession will ultimately prevail on final hearing, is an order of replevin authorized by the Replevin Statute, 735 ILCS 5/19-107. *See Novak Food Service Equipment, Inc. v. Moe's Corned Beef Cellar, Inc.*, 460 N.E.2d 443, 444 (1st Dist. 1984). Where evidence of a defendant's counterclaim goes to the essence of the plaintiff's right to replevy goods, evidence in support of the counterclaim is relevant to the probability of the plaintiff's ultimate success on the underlying claim, and should be permitted at the preliminary hearing. *Id.*

In this case, Defendants have filed Counterclaims in this lawsuit for Breach of Contract, Breach of Implied Warranty, Breach of Express Warranty and Fraudulent Misrepresentation. (*See* Defendants' Answer to Plaintiffs' Complaint, Affirmative Defenses and Counterclaims, attached hereto as Exhibit F.) Defendants' Counterclaims assert that Atlas Copco CMT knew of the nature of Indie-Energy's business - to provide geothermal-based renewal HVAC systems and that Plaintiffs affirmatively represented and warranted to Defendants that the equipment and materials sold to Indie Energy were suitable for the business purposes for which Indie Energy intended to use them. (*See* Affidavit of Daniel Cheifetz, attached hereto as Exhibit G.) The T2W drill, the Compressor and the TH60 drill are component parts of Atlas Copco's proprietary Symmetrix drilling system. The drilling system failed to perform as expressly

and impliedly represented and warranted by Plaintiffs.  *Id*.  Plaintiffs were aware of the failures, deficiencies and insufficiencies of the T2W drill, the Compressor, the TH60 drill and the entire Symmetrix drilling system.  *Id*.

While Defendants deny that Plaintiffs have any ownership interest in or right to possess the subject equipment, Defendants have attempted to negotiate a return or trade-in of the defective drilling system.   *See* Exhibit G.  Plaintiffs and Defendants have engaged a course of dealing in which Defendants had allowed Plaintiffs to return or trade-in defective equipment.  (*See* January 7, 2007 e-mail correspondence between Atlas Copco and Indie Energy, attached hereto as Exhibit H.)  In March 2008, Indie Energy sought to return the T2W drill and the TH60 drill to Plaintiffs in exchange for a credit or a refund for the defective system.   In contravention of Defendants' and Plaintiffs' course of dealing, Plaintiffs refused to accept the return of the T2W drill and the TH60 drill.  Defendants' believe that Plaintiffs' refusal to accept the returns may have been, in part, based on confusion regarding which Atlas Copco division to which the returns could be made.  In order to negotiate the return of the equipment and as a result of Atlas Copco's failures to accept return of the defective drilling system and to provide usable equipment, Defendants stopped payments on the subject equipment in March 2008.  *Id*.  As a consequence of Plaintiffs' breaches of warranties and fraudulent misrepresentations, Defendants have incurred, and continue to incur, significant damages, including lost business opportunities.   *Id*.

Defendants' Counterclaims are not simply set-offs against any potential deficiency judgment, but go to the essence of Plaintiffs' right to replevy the equipment by virtue of their own breaches of the same financing agreements that they claim

Defendants have defaulted on. As a consequence of Plaintiffs' material breaches of contract and fraudulent misrepresentations regarding the suitability of the subject equipment, they breached their obligations under the subject purchase agreements and the parties' course of dealing and thus, there are no predicate defaults on which Plaintiffs' can base their right to replevin of the equipment.

**III.    IN LIGHT OF THE FACTUAL DISPUTES WITH RESPECT TO WHICH PARTY HAS THE SUPERIOR RIGHT TO POSSESSION OF THE SUBJECT EQUIPMENT, THIS COURT SHOULD STAY ITS FINAL RULING ON THE REPLEVIN MOTION UNTIL THE RIGHT TO POSSESSION IS FULLY LITIGATED.**

In light of all of the foregoing disputed issues of fact and the fact that Plaintiffs cannot establish a substantial likelihood of success on the merits, justice requires that this court deny this instant motion and delay ruling on the Replevin Motion until such time as these issues can be fully adjudicated. While maintaining the status quo would cause no prejudice to Plaintiffs, depriving the Defendants of the equipment which it purchased, and some of which is critical to its ongoing business operations, would cause significant prejudice to the Defendants. Defendants have been in possession of the subject equipment for at least one year and the equipment remains, as it has always been, at Indie Energy's place of business. The denial of the Replevin Motion at this stage does not foreclose Plaintiffs from pursuit of their remedies since further hearing is contemplated by the Replevin Statute, 735 ILCS 5/19-107. *See Novak*, 460 N.E. 2d at 446 (distinguishing between a preliminary injunction which disrupts the status quo and the denial of a replevin motion which maintains the status quo).

**CONCLUSION**

As a result of Plaintiffs' failure to establish their *prima facie* case to a superior right to possess the subject equipment, Defendants Indie Energy and Daniel Cheifetz, respectfully request that this Court deny Plaintiffs' Motion for Entry of Replevin.

Respectfully submitted,

SCHIFF HARDIN LLP

By: _____

Counsel for Indie Energy Systems
Company, LLC and Daniel Cheifetz

Tracy A. Campbell
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606
Tel:  (312) 258-5500
Fax:  (312) 258-5600

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that she caused a copy of the foregoing Defendants' Response to Plaintiffs' Motion For Entry of Replevin be served upon the following counsel of record via electronic filing, on June 11, 2008:

> Joseph R. Marconi
> Victor J. Pioli
> Johnson & Bell, Ltd.
> 33 W. Monroe Street
> Suite 2700
> Chicago, IL  60606

Tracy A. Campbell

# EXHIBIT  B



6600 SEARS TOWER
CHICAGO, ILLINOIS   60606
*t* 312.258.5500
*f* 312.258.5600
www.schiffhardin.com

Tracy A. Campbell
312-258-5602
tcampbell@schiffhardin.com

May 23, 2008

**VIA E-MAIL AND FACSIMILE**

Victor J. Pioli, Esq.
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, IL  60603-5404

Re:     *Atlas Copco v. Indie Energy*, N.D. Ill., No. 08 CV 0263

Dear Victor:

I am in receipt of your correspondence from May 20, 2008 and May 21, 2008 regarding the issues related to the rightful possession of the equipment that is the subject of the above-referenced suit.  First, I would first like to respond to what you have indicated have been my repeated representations that Atlas Copco had the legal right to possess the subject equipment.  I have represented nothing of the sort.  In our recent communications, I have stated that it had been my client's desire to negotiate a fair trade-in of some of the equipment (as evidenced in Indie Energy's March 2008 communication with Atlas Copco) and my belief that the entire matter could be resolved without resort to protracted litigation.  I still believe that may be the case.

However, whether a resolution is accomplished through the trade-in of equipment or not, does not in any way affect Indie Energy's ownership or right to possess the subject equipment.  Pursuant to the financing agreements entered into between Atlas Copco and Indie Energy, Indie Energy is vested with title and ownership rights of the subject equipment.  This is clearly evidenced, for instance, by the original title possessed by Indie Energy in the T2W drill and the truck on which it is mounted.  Hence, my references to a potential "trade-in" or "buy-back" of some of the equipment.

Moreover, there is no admission in Indie Energy's Answer to Atlas Copco's Complaint or its Counterclaim that contradicts any representation made with respect to Indie Energy's rightful ownership or possession of the subject equipment.  As the financing agreements schedule payments that extend well past the current year, it necessarily true that outstanding balances remain on the equipment.  Instead, Indie Energy's Answer and Counterclaim assert that Indie Energy is the rightful owner of the subject equipment and is



Victor J. Pioli, Esq.
May 23, 2008
Page 2

entitled to compensatory damages for Atlas Copco's breach of contract and breaches of warranty with respect to Indie Energy's purchase of the equipment. Thus, Indie Energy will not accede to your unwarranted demand for the immediate return of the equipment. The Court indicated at the May 20th hearing that you and I should discuss the documents evidencing the ownership and possession issues with respect to the equipment and I am willing to do so at our mutual convenience. Further to our conversation after the May 20th hearing, my client will be tendering a counter-proposal to your client's offer of May 19th in the near future. In the meantime, please contact me if you would like to discuss the above.

Sincerely,

Tracy A. Campbell

# EXHIBIT  C

## Master Capital Equipment Lease

This Master Capital Equipment Lease (this "Lease") is entered into and between the Atlas Copco Construction Mining Technique USA Inc., a Delaware corporation with an address at 3700 E. 68th Avenue, P.O. Box 1159, Commerce City, Colorado 80022 ("Lessor"), and Indie Energy Services Company, LLC. with an address at 1202 Church St. Evanston, IL. 60201 ("Lessee", and together with Lessor, the "Parties") and the parties hereto agree as follows:

1.   **Equipment Leased.** Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property identified on **Exhibits A** (with all attachments, replacement parts, substitutions, additions, repairs and accessories incorporated therein and/or affixed thereto, and proceeds thereof, the "Equipment").

2.   **Term.** The term of this Lease (the "Term") shall begin on the Effective Date and shall end on the date set forth on **Exhibits A.**

3.   **Payments.** During the Term Lessee shall pay to Lessor base rent ("Base Rent") as set forth on **Exhibits A.** Lessee shall begin paying Base Rent on the first day of the first calendar month following the Effective Date and shall make payments of Base Rent on the first day of every calendar month thereafter until the expiration of the Term. In addition to Base Rent, Lessee shall pay directly or reimburse Lessor in the full amount of all other taxes, fees or other costs associated with or connected to the Equipment or the delivery of the Equipment to Lessee if, as and when due and all such amounts, together with all of Lessee's other payment obligations and all costs incurred by Lessor on account of any default by Lessee, shall be payable by Lessee as "Additional Rent" upon demand by Lessor. If Lessee remains in possession of the Equipment after the expiration of the Term and Lessee has not purchased the Equipment as provided in this Lease, then, in addition to all other rights and remedies available to Lessor, Lessee shall make monthly payments to Lessor equal to two (2) times the Base Rent set forth herein. The Base Rent is based on Lessee's agreement to purchase the Equipment upon the expiration of the Term as provided in this Lease. If Lessee (i) fails to purchase the Equipment upon the expiration of the Term as provided in this Lease and (ii) uses the Equipment in excess of the usage hours set forth on **Exhibits A** (the "Maximum Usage Hours"), then, in addition to all other amounts payable by Lessee to Lessor pursuant to this Lease, Lessee shall pay to Lessor the Excess Usage Fee set forth on **Exhibits A** for each hour Lessee uses the Equipment in excess of the Maximum Usage Hours. Lessor shall not be liable to Lessee for any hindrance in the use of the Equipment whether caused by Lessee's inability to obtain service or spare parts or to proceed with any planned project(s) or for any other reason whatsoever. Lessee's payment obligations are absolute and are not subject to any contingency, credit, set-off or deduction of any kind.

4.   **Purchase Obligation.** Lessee shall purchase the Equipment from Lessor at the expiration of the Term. The purchase price for the Equipment (the "Purchase Price") at that time shall be the Residual Value of the Equipment set forth on **Exhibits A** plus the amount of any value added taxes and any other taxes or charges occasioned by the transfer title to the Equipment from Lessor to Lessee. Lessee shall pay the Purchase Price for the Equipment to Lessor on the day that the last payment of Base Rent is due.

5.   **Use, Nature and Location of Equipment.** Lessee warrants and agrees that the Equipment will be used primarily for the purpose indicated on **Exhibits A.** Lessee and Lessor agree that regardless of the manner of affixation, the Equipment shall remain personal property and not become part of any real estate. Lessee agrees to keep the Equipment at the location and in the state (the "State") set forth on **Exhibits A.** Upon prior written notice to Lessor, Lessee may change the location of the Equipment provided that: (i) Lessee is not in default at the time of such notice or at the time the location of the Equipment is changed and (ii) Lessee does not permit the Equipment to be located outside of the State. Lessee will not remove the Equipment from the State without the prior written consent of Lessor unless the Equipment is located in the State of Pennsylvania.

6.   **Delivery Acceptance.** Immediately upon delivery to and acceptance by Lessee of an item of Equipment, Lessee shall execute and deliver Exhibits A relating to such item of Equipment, identifying same and acknowledging receipt thereof, with the information required on said Exhibits A fully completed. Execution of such Exhibits A shall constitute Lessee's acknowledgement that (i) the Equipment is satisfactory and acceptable to Lessee and that Lessee has examined the Equipment to the extent and in the manner it deems necessary or appropriate; (ii) the Equipment is in good operating order, repair, condition and appearance; (iii) is of the design and capacity selected by Lessee; (iv) and is suitable for the purposes for which it was leased. The execution of such Exhibits A by Lessee shall also constitute Lessee's waiver of any right of revocation with respect to the Equipment.

7.   **Repairs.** Lessor shall not be obligated to install, erect, test, adjust, service or make any repairs or replacements to the Equipment or otherwise. Lessee shall not incur for Lessor's account any liability or expense without Lessor's prior written consent. Lessee shall inspect the Equipment within 48 hours after its receipt. If Lessor does not notify Lessor within such 48 hour period that the Equipment is defective, Lessee shall be conclusively presumed to have accepted the Equipment in its then condition. Thereafter, Lessee shall effect and bear the expense of all necessary repairs,

*8-5/-04 Revision Not for use in Texas*                          1                                    Initial here [signature]

07/18/2008 09:07 FAX   847 570 8100        THE HOMESTEAD                    ☑ 011/018

maintenance, operation and replacements required to be made to maintain the Equipment in good condition, normal wear and tear excepted. Lessee shall ensure that all adjustments, repairs and other servicing of the Equipment is done only by Atlas Copco authorized dealers and that all replacement parts installed into the Equipment shall be original Atlas Copco parts. Exhibit A indicates whether Lessor requires that Lessee enter into a Service Maintenance Contract with respect to the Equipment. If Lessor so requires, Lessee shall execute the Service Maintenance Contract attached to this Lease as Exhibit B.

8. Operating the Equipment. Lessee is responsible for the Equipment and any and all damages caused to or by the Equipment. Without limiting the foregoing, Lessee will use the Equipment only for its intended use and in accordance with its rated capacity, operating instructions and safety guidelines and Lessee shall maintain the Equipment in a commercially reasonable manner. Lessee shall insure that only such persons as are properly trained, qualified and, if applicable, licensed in its proper and safe use shall operate the Equipment. Lessee agrees to provide all persons who will use, handle or work in close proximity to the Equipment (i) all health, safety, and product information related to the Equipment that is provided or made available by the manufacturer and (ii) adequate health and safety protection and warnings, including, without limitation, those relating to noise exposure, vibration exposure and exposure to silica dust and other harmful dusts, particles, mists and vapors, if applicable. Lessee shall ensure compliance with all applicable laws, ordinances, rules and regulations governing the operation of the Equipment.

9. Indemnity. Lessee shall indemnify and save Lessor harmless from any and all injury to or loss of the Equipment from whatever cause, and from any and all liability arising out of the use, maintenance and/or delivery thereof. Lessee shall be credited with any amounts received by Lessor from insurance procured by Lessee. Damages for any loss or damage to the Equipment shall be based on the then fair market value of the Equipment, irrespective of rentals theretofore paid or accrued.

10. Insurance. All risk of loss, damage to or destruction of the Equipment and all property damage and personal injuries (including death) caused by the Equipment shall at all times be on Lessee. During the Term, Lessee, at Lessee's expense, shall procure and maintain insurance against all risks of loss or physical damage to the Equipment for the full insurable value thereof. Lessee shall also procure and maintain breach of warranty insurance and such other insurance in such amounts and against such risks as Lessor may specify, and shall promptly deliver each policy to Lessor with a standard long-form mortgagee endorsement attached thereto showing loss payable to Lessor. Each insurance policy maintained by Lessee shall be with an insurance carrier satisfactory to Lessor, provide Lessor with not less than 30 days written notice of cancellation and be satisfactory to Lessor in form, terms and amount. Lessor's acceptance of policies in lesser amounts or covering lesser risks shall not be a waiver of Lessee's obligations under this Lease. No act or omission of Lessee or any of its officers, agents, employees or representatives shall affect the obligations of the insurer to pay the full amount of any loss.

Lessee hereby assigns to Lessor any monies which may become payable under any such policy of insurance and irrevocably constitutes and appoints Lessor as Lessee's attorney in fact (a) to hold each original insurance policy, (b) to make, settle and adjust claims under each policy of insurance, (c) to make claims for any monies which may become payable under policies, including returned or unearned premiums, and (d) to endorse Lessee's name on any check, draft or other instrument received in payment of claims or returned or unearned premiums under each policy and to apply the funds to the payment of Lessee's indebtedness to Lessor; provided, however, Lessor is under no obligation to do any of the foregoing.

Should Lessee fail to furnish any insurance policy to Lessor, or to maintain such policy in full force, or to pay any premium in whole or in part relating thereto, then Lessor, without waiving or releasing any default or obligation by Lessee, may (but shall be under no obligation to) obtain and maintain insurance and pay the premium therefor on behalf of Lessee and add the premium to Lessee's indebtedness to Lessor under this Lease. The full amount of any such premium paid by Lessor shall be payable by Lessee upon demand, and failure to pay same shall constitute an event of default under this Lease.

11. Taxes. Lessee shall comply with all laws, ordinances and regulations relating to the ownership, possession, use or maintenance of the Equipment, and indemnify and save Lessor harmless against actual or asserted violations, and pay all costs and expenses of every character occasioned by or arising out of such ownership, possession, use or maintenance. Lessee agrees that, during the term of this Lease, in addition to all other amounts provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges (including penalties and interest, if any, and fees for titling or registration, if required) levied or assessed:

(a) upon the interest of the Lessee in the Equipment or upon the use or operation thereof or on the earnings arising therefrom; and

(b) against Lessor on account of its acquisition or ownership of the Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee, or the rent herein provided for, or the earnings arising therefrom, exclusive, however, of any taxes based on net income of Lessor.

*8-31-04 Revision Not for use in Texas*                         2                              Initial here _____

07/18/2008 08:08 FAX  847 570 8100          THE HOMESTEAD                              ☑012/018

Lessee agrees to file, on behalf of Lessor, all required tax returns and reports concerning the Equipment with all appropriate governmental agencies, and within not more than 30 days after the due date of such filing, to send Lessor confirmation, in form satisfactory to Lessor, of such filing.

12. **Title.** All Equipment shall remain personal property and title thereto shall remain in Lessor exclusively. Lessee shall keep the Equipment free from any and all liens and claims, and shall not permit Lessor's title or rights in the Equipment to be encumbered or impaired.

13. **Inspection.** Lessee shall, whenever requested, advise Lessor of the exact location and condition of the Equipment and shall give Lessor immediate notice of any attachment or other judicial process affecting the Equipment, and indemnify and save Lessor harmless from any loss or damage caused thereby. Lessor may, for the purpose of inspection, at all reasonable times enter upon any job, building or place where the Equipment is located and may remove the Equipment forthwith, without notice to Lessee, if, in the opinion of Lessor, the Equipment is being used beyond its capacity or Lessee is improperly caring for or abusing the Equipment in any manner.

14. **Non-Waiver.** Time is of the essence. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. Waiver of any default shall not waive any other default. No remedy of Lessor hereunder shall be exclusive of any other remedy available at law, in equity or otherwise provided in this Lease, but each shall be cumulative and in addition to every other remedy.

15. **No Warranty.** Lessor, not being the manufacturer of the Equipment, nor manufacturer's agent, makes no warranty or representation, either express or implied, as to the fitness, quality, design, condition, capacity, suitability, merchantability or performance of the Equipment or of the material or workmanship thereof, it being agreed that the Equipment is leased "as is" and that all such risks, as between the Lessor and the Lessee, are to be borne by the Lessee at its sole risk and expense and Lessee agrees not to assert any claim whatsoever against the Lessor based thereon. Lessee further agrees, regardless of cause, not to assert any claim whatsoever against the Lessor for loss of anticipatory profits or consequential damages. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding on Lessor. All prior conversations, agreements and/or representations related to this Lease and/or to the Equipment are integrated in this Lease.

16. **Possession.** Lessor covenants to Lessee that Lessor is the lawful owner of the Equipment free from all encumbrances and that, conditioned upon Lessee's performing the conditions hereof, Lessee shall peaceably and quietly hold, possess and use the Equipment during the Term without let or hindrance.

17. **Performance of Obligations of Lessee by Lessor.** In the event that the Lessee shall fail duly and promptly to perform any of its obligations hereunder, the Lessor may, at its option, perform them for the account of Lessee without thereby waiving such default, and any amount paid or expense, fee (including reasonable attorneys' and other professionals' fees), penalty or other liability incurred by the Lessor in such performance, together with interest thereon at a rate equal to the lesser of (i) 1 1/2% per month or (ii) the maximum rate of interest permitted by applicable law, shall be payable by the Lessee upon demand as Additional Rent for the Equipment.

18. **Further Assurances.** Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of this Lease and/or Lessor's rights hereunder.

19. **Default.** An Event of Default shall occur if:

   (A) Lessee fails to pay when due any installment of rent and such failure continues for a period of 10 days;

   (B) Lessee shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder and such failure continues uncured for 15 days after written notice thereof to Lessee by Lessor;

   (C) Lessee dies, ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation, or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action looking to its dissolution or liquidation;

   (D) within 60 days after the commencement of any proceedings against Lessee seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within 60 days after the appointment without

8-5/-04 Revision Not for use in Texas                    3                              Initial here ___

Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated;

(E) Lessee attempts to remove, sell, transfer, encumber, part with possession or sublet the Equipment or any item thereof or

(F) a third party takes any action to foreclose on, obtain possession or control of, collect, sell or otherwise dispose of or exercise any rights with respect to any of the Equipment without the express written consent of Lessor.

Upon the occurrence of an Event of Default, Lessor, at its option, may do any or all of the following:

1. declare all sums due and to become due hereunder immediately due and payable;

2. proceed by appropriate court action or actions or other proceedings either at law or in equity to enforce performance by the Lessee of any and all covenants of this Lease and to recover damages for the breach thereof;

3. demand that Lessee deliver the Equipment forthwith to Lessor at Lessee's expense at such place as Lessor may designate; and

4. Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the Equipment may be or by Lessor is believed to be, and repossess all or any item thereof, disconnecting and separating all thereof from any other property and using all force necessary or permitted by applicable law so to do, Lessee hereby expressly waiving all further rights to possession of the Equipment and all claims for injuries suffered through or loss caused by such repossession; Lessor may sell or lease the Equipment at a time and location of its choosing provided that Lessor acts in good faith and in a commercially reasonable manner, but Lessor shall, nevertheless, be entitled to recover immediately as liquidated damages for loss of the bargain and not as a penalty (i) any unpaid Base Rent or Additional Rent that accrued up to the time of Lessor's possession plus (ii) an amount equal to the difference obtained by subtracting (a) proceeds of such sale or the aggregate rental value from such lease (discounted to present value at the then prime rate of interest + 3%) from (b) the aggregate rent reserved hereunder for the unexpired term of this Lease plus the Residual Value of the Equipment, provided, however, that if any statute governing the proceeding in which such damages are to be proved specifies the amount of such claim, Lessor shall be entitled to prove as and for damages for the breach an amount equal to that allowed under such statute. The provisions of this Section shall be without prejudice to any rights given to the Lessor by such statute to prove for any amounts allowed thereby. Should any proceedings be instituted by or against Lessor for monies due to Lessor hereunder and/or for possession of any or all of the Equipment or for any other relief, Lessee shall pay a reasonable sum as attorneys' fees. No remedy referred to herein is intended to be exclusive of any other remedy stated herein or of any other remedy otherwise available to Lessor at law or in equity.

20. **Assignments.** Without the prior written consent of Lessor, Lessee shall not assign this Lease or its interests hereunder or enter into any sub-lease with respect to the Equipment, it being agreed that Lessor will not unreasonably withhold its consent to a sub-lease of the Equipment. The conditions hereof shall bind any permitted successors and assigns of Lessee. Lessor may assign the rents reserved herein or all or any of Lessor's other rights hereunder. After such assignment, Lessor shall not be the assignee's agent for any purpose. Lessee will settle all claims arising out of alleged breach of warranties or otherwise, defenses, set-offs and counterclaims it may have against Lessor directly with Lessor, and not assert any such against Lessor's assignee. Lessee hereby agreeing to remain responsible therefor. Lessee on receiving notice of any such assignment shall abide thereby and make payment as may therein be directed. Following such assignment, solely for the purpose of determining assignee's rights hereunder, the term "Lessor" shall be deemed to refer to Lessor's assignee.

21. **Miscellaneous.** Lessee will not change or remove any insignia or lettering on the Equipment and shall conspicuously identify each item of the Equipment by suitable lettering thereon to indicate Lessor's ownership. All transportation charges shall be borne by Lessee. All notices relating hereto shall be sent certified mail, return receipt requested to Lessor or Lessee at the addresses indicated on Exhibit A. If any part hereof is contrary to, prohibited by or deemed invalid under applicable laws or regulations of any jurisdiction, such provision shall be inapplicable and deemed omitted but shall not invalidate the remaining provisions hereof. Lessee waives all rights under all exemption laws. Lessee acknowledges the receipt of a true copy of this Lease. This Lease is irrevocable for the full term hereof and for the aggregate rental herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason. Any payment not made when due shall, at the option of Lessor, bear late charges thereon calculated at a rate equal to the lesser of (i) 1 1/2% per month or (ii) the maximum rate of interest permitted by applicable law. In the event this Lease is deemed to create a security interest, Lessee grants Lessor a security interest in the Equipment as security for all of Lessee's indebtedness and obligations owing under this Lease as well as all other present and future indebtedness and obligations of Lessee

07/18/2008 09:09 FAX  847 570 #100          THE HOMESTEAD                                    ☑014/018

to Lessor of every kind and nature whatsoever. Lessee shall be responsible for and pay to Lessor a returned check fee, not to exceed the maximum permitted by law, which fee will be equal to the sum of (1) the actual bank charges incurred by Lessor plus (ii) all other actual costs and expenses incurred by Lessor. The returned check fee is payable upon demand as Additional Rent under this Lease. Lessee authorizes Lessor to file a financing statement with respect to the Equipment and ratifies the filing by Lessor of any such financing statement previously filed.

22. **Lessee's Organizational Information.** If Lessee is an organization, Lessee (a) is the type of organization, (b) is organized under the laws of the jurisdiction, (c) has its principal place of business, and (d) if it is a "registered organization" as defined in Article 9 of the Uniform Commercial Code (i.e., organized solely under the laws of a single State and as to which the State must maintain a public record showing the organization to have been organized), has the organizational identification number (or, if none, has been assigned no such number by the State of organization), all as set forth on Exhibit A. Lessee's name, as it appears on Exhibit A and on the signature line of this Lease, is Lessee's exact and complete legal name. If Lessee is an individual, Lessee's exact and complete legal name and principal residence are as set forth under Lessee's name on the signature line of this Lease. Lessee agrees to notify Lessor immediately in the event of a change in any of the foregoing facts or information.

[The remainder of this page is intentionally left blank]



8-5/-94 Revision Not for use in Texas                    5                    Initial here

07/18/2008 08:08 FAX  847 570 8100          THE HOMESTEAD                              @015/018

This Lease contains the entire agreement between the parties with respect to the Equipment, and may not be altered, modified, terminated or discharged except by a writing signed by the party against whom such alteration, modification, termination or discharge is sought.  Lessee's initials - ___

IN WITNESS WHEREOF, Lessee and Lessor have duly executed this Lease as of July 17, 2006.

**LESSEE:**

Indie Energy Services Company, LLC.

By _____    Title _Manager_____

If Lessee is a corporation, have this Lease signed by the President, Vice President or Treasurer and indicate the signatory's official title.  If the Lessee is a limited liability company, have this Lease signed by the managing member.  If the signatory is an owner, so indicate.

**LESSOR:**

Atlas Copco Construction Mining Technique USA Inc.

By _____    Title VP Finance & Administration
   Jim Levitt

8-5/-04 Revision Not for use in Texas                    6

07/18/2008 08:10 FAX  847 570 8100        THE HOMESTEAD                              ☒018/018

## Exhibit A to Master Capital Equipment Lease
### (Schedule No 1 )

This exhibit is pursuant to and made part of the Master Capital Equipment Lease dated July 17, 2006, (as amended, restated, modified and supplemented, the "Master Capital Equipment Lease") between Atlas Copco Construction Mining Technique USA Inc., as Lessor, and Indie Energy Services Company, LLC, as Lessee.

Intro: The "Effective Date" of this Lease is July 17, 2006,

1.  Equipment Description, Serial Numbers and Application: Atlas Copco brand, model T2W. Serial number 6201.

2.  The "Term" of the Lease with respect to Equipment: 49 months, commencing on July 17, 2006, and ending on August 1, 2010.

3.  Base Rent: The aggregate amount of the Base Rent payable hereunder is $315,120.24 of which Lessee has paid $0 in advance. The balance of the Base Rent payable hereunder shall be paid in monthly installments of $6565.13 until fully paid.

4.  Residual Value: Upon the expiration of the Term, the Residual Value of the Equipment shall be $0.

5.  Acknowledgement of Receipt of Equipment: Lessee acknowledges that the Equipment above described has been delivered to and received by it, is as represented, and is acceptable and satisfactory to it, and the same has been accepted as Equipment leased by Lessee under said Master Equipment Lease.

6.  The Equipment shall be used primarily for:

    ☒ business or commercial purposes (other than agricultural)
    ☐ agricultural purposes (see definition below)
    ☐ both agricultural and business or commercial purposes.

    Agricultural purposes generally means farming, including dairy farming, but it also includes the transportation, harvesting, and processing of farm, dairy or forest products if what is transported, harvested, or processed is farm, dairy, or forest products grown or bred by the user of the Equipment itself. It does not apply, for instance, to a logger who harvests someone else's forest or a contractor who prepares land or harvests products on someone else's farm.

7.  Location of Equipment: The location at which the Lessee shall keep the Equipment is Cook County, IL.

8.  Service and Maintenance Contract: Lessor ☐ requires ☒ does not require that Lessee enter into a Service Maintenance Contract.

| LESSEE | LESSOR |
|---|---|
| Indie Energy Services Company, LLC: | Atlas Copco Construction Mining Technique USA Inc. |
| By: | By: |
| Title: | Title: VP Finance & Administration |
| Address: | Address: 3700 E 68th Ave. Commerce City, CO. 80022 |
| Phone #: | Phone #: 303.217.2604 |

(Address and Phone numbers are inserted for contact purposes only and not for purposes of effecting Notice)

8-31-04 Revision Not for use in Texas                    7

# EXHIBIT  D



## STATE OF ILLINOIS

### CERTIFICATE OF TITLE OR A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1HTGLATT8VH431351 | 1997 | INTERNATIONAL | 9000 SERIES 2674 | TANDEM | X8290057050 |

| DATE ISSUED | ODOMETER | CON | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 10/28/06 | | | USED | 07/17/06 |

MAILING ADDRESS

INDIE ENERGY SERVICES CO
1020 CHURCH ST
EVANSTON IL 60201-3623

ORIGINAL

Pine Brook, NJ 07058

### ASSIGNMENT OF TITLE

G01588300

Jesse White, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

# EXHIBIT  E



## Title Status Inquiry Result

| | |
|---|---|
| **VIN:** | 1HTGLATT3VH431381 |
| **Title Number:** | X6299057050 |
| **Application Number:** | 0583180791 |
| **Most recent title issuance:** | 10/26/2006 |
| **Type of title:** | Original |
| **Lienholder?** | No |
| **Multi-owner Yes/No?** | No |
| **Is better address needed for mailing?** | No |
| **Is vehicle tagged as rebuilt?** | No |
| **Is vehicle tagged as having flood damage?** | No |

Please contact the nearest Secretary of State Facility or call the toll free number (1-800-252-8980) with any corrections.

**Get the Registration Status of this vehicle**          **Check status of another Title or Registration**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# EXHIBIT  G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

ATLAS COPCO CONSTRUCTION          )
MINING TECHNIQUE USA LLC, a        )
Delaware Limited Liability Company, )
and ATLAS COPCO CUSTOMER          )        No. 08CV2363 EDA
FINANCE USA LLC, a New Jersey      )        JUDGE DER-YEGHIAYAN
Limited Liability Company           )        MAGISTRATE JUDGE BROWN
                                    )
v.                                  )
                                    )
INDIE ENERGY SERVICES COMPANY,     )
LLC, an Illinois Limited Liability   )
Company, and DANIEL CHEIFETZ, an    )
Individual.                         )

## AFFIDAVIT OF DANIEL CHEIFETZ

I, Daniel Cheifetz, declare under penalty of perjury that the following is true, accurate and within my personal knowledge and I will competently testify to the statements contained herein if called to do so:

1.    I am the Chief Executive Officer ("CEO") for Indie Energy Systems Company, LLC ("Indie Energy"). In my role as CEO of Indie Energy I have personal knowledge of the negotiation and execution of the purchase agreements and financing agreements for the T2W drill, the TH60 drill and the Compressor that are the subject of the above-captioned lawsuit.

2.    Indie Energy's business purpose is to design and manufacture clean energy systems by using, in part, geothermal drilling techniques.

3.    Indie Energy has engaged in various written agreements with Atlas Copco CMT through which Indie Energy has financed and/or purchased equipment and materials necessary for the operation of its business.

4.    Indie Energy specifically and expressly informed Atlas Copco CMT of the nature of its business - to provide geothermal-based renewal HVAC systems - at or near the beginning of the business relationship.

- 1 -

5.    Atlas Copco CMT affirmatively represented and warranted to Indie Energy that the equipment and materials sold to Indie Energy were suitable for the business purposes for which Indie Energy intended to use them and Indie Energy relied on those representations in deciding to purchase the equipment.

6.    The T2W drill, the Compressor and the TH60 drill, and two Symmetrix casing advancement additions are components of the Symmetrix drilling system purchased from Atlas Copco CMT. The Atlas Copco drilling system failed to perform as represented and warranted by Atlas Copco CMT.

7.    Atlas Copco CMT was aware of the failures, deficiencies and insufficiencies of the T2W drill, the Compressor, the TH60 drill, Symmetrix and the entire Atlas Copco drilling system purchased by Indie Energy. On several occasions, Atlas Copco CMT sent its personnel to Indie Energy to attempt to repair the components of the defective system. On June 12, 2007, Atlas Copco CMT sent representatives to Indie Energy to discuss the continuing defects in the Atlas Copco drilling system sold to Indie Energy.

8.    Throughout the business relationship, Indie Energy and Atlas Copco CMT have engaged a course of dealing in which Atlas Copco CMT has allowed Indie Energy to return or trade-in defective equipment. In March 2008, Indie Energy sought to return the T2W drill and the TH60 drill to Atlas Copco CMT in exchange for a credit or a refund for the defective Symmetrix drilling system.

9.    In contravention of the course of dealing between Atlas Copco CMT and Indie Energy, Atlas Copco CMT refused to accept the return of the T2W drill and the TH60 drill.

10.    It is my belief that that the refusal of the Atlas Copco CMT to accept the returns may have been based on confusion regarding which Atlas Copco division the returns could be made to.

11.    As a result of Atlas Copco CMT's failure to promptly communicate with us regarding our desire to return or trade-in the component parts of the defective system and as a

- 2 -



result of Atlas Copco CMT's multiple failures to provide equipment suitable for our business purposes, Indie Energy stopped payments on the subject equipment in March 2008.

12.    Atlas Copco CMT's misrepresentations as to the appropriateness of the subject equipment for Indie Energy's business purposes and Atlas Copco CMT's failures to properly repair, replace or reimburse Indie Energy for the components of the defective drilling system have led Indie Energy to incur significant costs for the repair and replacement of the component parts of the drilling system and has led Indie Energy to incur substantial business losses resulting from work delays, work stoppages and lost contracts.

13.    In addition to the facts set forth above, the facts set forth in Defendants' Counterclaims in the above-captioned action are true and correct.

FURTHER AFFIANT SAITH NAUGHT.

Executed this 11th day of June, 2008.

Daniel Cheifetz

Sworn to or affirmed and subscribed before me this 11th day of June, 2008.

NOTARY PUBLIC

My commission expires: 6 12·08

CHI\5836102.3

OFFICIAL SEAL
MARIA ORTIZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-12-2008

# EXHIBIT  H

**Subject: Indie Energy - Invoices**
**Date:** Sunday, January 7, 2007 9:12 PM
**From:** todd.armstrong@us.atlascopco.com
**To:** <Jennifer.Cali@us.atlascopco.com>, <jack.beyers@us.atlascopco.com>,
<erik@indieenergy.com>, <buck@indieenergy.com>
**Cc:** <sturges.taggart@us.atlascopco.com>, <bruce.mcconville@us.atlascopco.com>,
<steve.taggart@us.atlascopco.com>
**Conversation:** Indie Energy - Invoices


I met with Indie Energy and reviewed all open Invoices.  Below is a list of each with comments and actions to be take by either Atlas or Indie.  If it is annotated with OK - then this invoice will be paid by Indie and no issue where seen.  Please contact me directly with any questions or issues.

Eric and Buck - please let me know when I will be able to pick up the parts that need to be returned.

| Invoice # | Date | Amount | Comments/Action |
|---|---|---|---|
| 209883 | 9.07.17 | 823.94 | On T2W 1996 - what was this? Was it Tax on the unit.  We believe this was paid already.  Request additional information |
| 2105629 | 6.08.01 | 395.22 | OK |
| 222110 | 6.08.22 | 380.22 | Item to be returned - never worked.  See Todd for details. |
| 225531 | 6.08.31 | 559.61 | Return |
| 226021 | 6.09.01 | 535.87 | OK |
| 228638 | 6.09.11 | 1,295.25 | OK |
| 228638 | 6.09.13 | 146.31 | See Invoice # 222110.  Wrench that did not work.  See Todd for details. |
| 230960 | 6.09.21 | 139.76 | OK |
| 234327 | 6.09.29 | 2,067.91 | OK |
| 239128 | 6.10.13 | (2,522.91) | OK - credit |
| 240524 | 6.10.18 | 137.52 | OK |
| 243784 | 6.10.27 | 238.62 | OK |
| 243877 | 6.10.27 | 468.32 | OK |
| 244264 | 6.10.30 | 1,126.67 | OK |
| 245117 | 6.10.31 | 450.50 | Return - extra switch |
| 247057 | 6.11.06 | 137.66 | OK |
| 247507 | 6.11.07 | 732.06 | Over Charged - need to correct. List Price = $645.00.  Customer should have been charged $444.75 |
| 249393 | 6.11.14 | 115.62 | OK |

Estimated Total Funds Due from Above = $4,134.66        To Be refunded or Under

Review = $2,268.50

| Invoice # | Date | Amount | Comments/Action |
|-----------|---------|-----------|---------------------------------------|
| 253623 | 6.11.29 | 5,569.18 | OK. Equipment |
| 260111 | 6.12.21 | 5,714.90 | OK. Backhammer |
| 260117 | 6.12.21 | 212.50 | OK |
| 260115 | 6.12.21 | 15,188.94 | Hold.  Reviewing Labor Cost.  See |

Todd for details.

This should cover all open invoices.  Indie Energy has agreed to inform me of any issue or questions they have on invoices each month to avoid any hold ups.
Thanks for your time and help in resolving this.

Best regards,

Todd Armstrong
Deephole Sales Specialist

---

**Atlas Copco Construction Mining Technique USA LLC**
24238 S. Northern Illinois Drive
Channahon, IL 60410 USA
Phone: (815) 467-8166; Fax: (815) 467-8169
Cell: (630) 205-4788
E-mail: todd.armstrong@us.atlascopco.com <mailto:todd.armstrong@us.atlascopco.com>
Visit Atlas Copco at: www.atlascopco.com <www.atlascopco.com>

---

**We are committed to your superior productivity through interaction and innovation**

# EXHIBIT  F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ATLAS COPCO CONSTRUCTION MINING TECHNIQUE USA LLC, a Delaware Limited Liability Company, and ATLAS COPCO CUSTOMER FINANCE USA LLC, a New Jersey Limited Liability Company<br><br>v.<br><br>INDIE ENERGY SERVICES COMPANY, LLC, an Illinois Limited Liability Company, and DANIEL CHEIFETZ, an individual. | No. 08CV2363 EDA<br>JUDGE DER-YEGHIAYAN<br>MAGISTRATE JUDGE BROWN |

**DEFENDANTS' ANSWER TO VERIFIED COMPLAINT,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendants Indie Energy Systems Company, LLC ("Indie Energy"), incorrectly named as Indie Energy Services Company, LLC, and Daniel Cheifetz, (collectively, "Defendants") through their attorneys, Schiff Hardin LLP, hereby answer Plaintiffs' Verified Complaint, as follows:

**NATURE OF ACTION**

1.    This is an action to recover property, amounts due on Indie Energy's accounts with Plaintiff, and fees, costs, and expenses, based on Indie Energy's failure to make payments to Plaintiff and Cheifetz's personal guarantee of those payments.

**ANSWER:**  This paragraph makes no allegations against Defendants and they therefore make no answer thereto.

## PARTIES

2.    Plaintiff CMT is a Delaware Limited Liability Company with its principal place of business in Commerce City, Colorado.  Its sole member is Atlas Copco North America LLC, a Delaware Limited Liability Company with its principal place of business in New Jersey.  Atlas Copco North America LLC has two members: Atlas Copco USA Holdings Inc., a Delaware Corporation with its principal place of business in New Jersey, and Atlas Copco Finance S.a.r.l., a Luxembourg corporation.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 and therefore demand strict proof thereof from Plaintiffs.

3.    Plaintiff ACF is a Delaware Limited Liability Company with its principal place of business in New Jersey.  Its membership is identical to that of CMT. Specifically, its sole member is Atlas Copco North America LLC, a Delaware Limited Liability Company with its principal place of business in New Jersey.  Atlas Copco North America LLC has two members: Atlas Copco USA Holdings Inc., a Delaware Corporation with its principal place of business in New Jersey, and Atlas Copco Finance S.a.r.l., a Luxembourg corporation.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 and therefore demand strict proof thereof from Plaintiffs.

4.    Defendant Cheifetz is a citizen of Illinois, residing at 1000 Michigan Avenue, Wilmette, Illinois 60091.

2

**ANSWER:** Admitted.

5.    Defendant Indie Energy is an Illinois Limited Liability Company with its principal place of business located at 1020 Church Street, Evanston, Illinois 60201. Its sole member is Defendant Cheifetz, a citizen of Illinois.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

6.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy, without interest and costs, exceeds $75,000.

**ANSWER:** Admitted.

7.    This court has personal jurisdiction over Defendants because of Defendants' presence in, and contacts with, the forum state.

**ANSWER:** Admitted.

8.    Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) because both Defendants reside therein, a substantial part of the events or omissions giving rise to the claim occurred therein, and a substantial part of the property that is the subject of the action is situated therein.

**ANSWER:** Admitted.

## FACTS COMMON TO ALL COUNTS

9.    Plaintiffs are, and were at all relevant times, engaged in the business of financing, leasing, and renting, among other things, construction and mining equipment.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and therefore demand strict proof thereof from Plaintiffs.

10.    On or about July 17, 2006, CMT and Indie Energy entered into a Master Capital Equipment Lease ("T2W Agreement") whereby Plaintiff leased to Indie Energy an Atlas Copco drill, model number T2W, serial number 6201, attached to a vehicle, year 1997, make International, model 2000 Series 2674, vehicle ID number 1HTGLATT3VH431381, in exchange for periodic rent payments.  CMT delivered said property to Indie Energy.  A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit A.**

**ANSWER:** Defendants admit that Indie Energy entered into a written agreement with Atlas Copco Mining Construction Technique, LLC on July 17, 2006 for the financing of an Atlas Copco model number T2W, serial number 6201, attached to a vehicle, year 1997, make International, model 2000 Series 2674, vehicle ID number 1HTGLATT3VH431381.  Defendants deny that it was a "lease."

11.    On or about July 18, 2006, Defendant Cheifetz executed a Guarantee ("First Guarantee") whereby he personally agreed to assume any and all of Indie Energy's obligations to CMT upon Indie Energy's default or failure to pay on any of its

4

obligations to CMT. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit B**.

**ANSWER:** The July 18, 2006 Guarantee speaks for itself.


12.    On or about April 12, 2007, CMT and Indie Energy entered into an Installment Loan & Security Agreement ("Compressor Agreement") whereby CMT loaned $99,450 to Indie Energy to be repaid in installments at an interest rate of 7.95%. In exchange, CMT retained a security interest in the collateral, an Atlas Copco compressor, model number XRVS 976CD, serial number 539285. The compressor was previously delivered on or about April 4, 2007. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit C**.

**ANSWER:** Admitted.


13.    On or about April 12, 2007, Defendant Cheifetz executed a Guarantee ("Second Guarantee") whereby he personally agreed to assume any and all of Indie Energy's obligations to CMT upon Indie Energy's default or failure to pay on any of its obligations to CMT. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit D**.

**ANSWER:** The April 12, 2007 Guarantee speaks for itself.


14.    On or about June 20, 2007, CMT and Indie Energy entered into an Installment Loan & Security Agreement ("TH60 Agreement") whereby CMT loaned $564,588.46 to Indie Energy to be repaid in installments at an interest rate of 7.95%. In

5

exchange, CMT retained a security interest in the collateral, an Atlas Copco drill, model number TH60, serial number 21129, mounted on a Peterbilt truck, serial number 1NPAL40X-7-7D661603. The collateral was previously delivered on or about May 23, 2007. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit E**.

**ANSWER:** Admitted.


15.    On or about May 24, 2007, Defendant Cheifetz executed a Guarantee ("Third Guarantee") whereby he personally agreed to assume any and all of Indie Energy's obligations to CMT upon Indic Energy's default or failure to pay on any of its obligations to CMT. A true and correct copy of relevant documents is attached hereto and made a part hereof as **Group Exhibit F**.

**ANSWER:** The May 24, 2007 Guarantee speaks for itself.


16.    CMT's rights under these agreements were duly assigned to ACF, a related entity.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 and therefore demand strict proof thereof from Plaintiffs.


17.    On or about March 7, 2008, ACF notified Indie Energy and Cheifetz that the T2W, Compressor, and TH60 accounts were overdue and delinquent. On or about March 24, 2008, Plaintiffs notified Indie Energy that it was in default and demanded

6

return of the collateral.  A true and correct copy of relevant documents is attached hereto and made a part hereof as **Exhibit G**.

**ANSWER:**  Admitted.


18.    As of the date of this Complaint, Indie Energy owes $187,497.81 on the T2W Agreement, $72.571.79 on the Compressor Agreement, and $529,575.87 on the TH60 Agreement.

**ANSWER:**    Defendants admit only that as of the date of Plaintiffs' Complaint, there were outstanding balances owed on the T2W Agreement, the Compressor Agreement and the TH60 Agreement.


19.    As of the date of this Complaint, Indie Energy has an outstanding consumables balance of $57,078.05.  A true and correct copy of relevant documents is attached hereto and made a part hereof as **Exhibit H**.

**ANSWER:**    Defendants admit only that as of the date of Plaintiffs' Complaint, there were outstanding balances owed on the T2W Agreement, the Compressor Agreement and the TH60 Agreement.


**COUNT I: ACTION FOR REPLEVIN**

20.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-19 as though fully set forth herein.

**ANSWER:**  Defendants re-allege and incorporate by reference their answers to the allegations in paragraphs 1 through 19 above as if fully set forth herein.

21. After executing the above-referenced Agreements, Indie Energy became delinquent in its payments.

**ANSWER:** Defendants admit only that as a result of Plaintiffs' breaches of contract, breaches of warranties and fraudulent misrepresentations that Indie Energy eventually stopped payments on the Agreements.

22. On or about March 7, 2008, Plaintiffs notified Indie Energy that the accounts were overdue and delinquent. Indie Energy refused to make the required payments, and continues to do so. On or about March 24, 2008, Plaintiffs notified Indie Energy that it was in default and demanded return of the collateral.

**ANSWER:** Defendants admit that on March 7, 2008, Plaintiffs notified Indie Energy that the accounts were overdue and delinquent and that on March 24, 2008, Plaintiffs notified Indie Energy it was in default and demand return of the collateral. Defendants deny the remaining allegations of Paragraph 22.

23. Due to Indie Energy's default on the three Agreements, Plaintiffs are entitled to the immediate possession of (1) the T2W drill, serial number 6201; (2) the vehicle, year 1997, make International, model 2000 Series 2674, vehicle ID number 1HTGLATT3VH431381; (3) the compressor, model number XRVS 976CD, serial number 539285; (4) the TH60 drill, serial number 21129; and (5) the Peterbilt truck, serial number 1NPAL40X-7-7D661603.

**ANSWER:** Denied.

24.    Defendants' refusal to surrender possession of said property is wrongful and in violation of Plaintiff's right to immediate and exclusive possession of this equipment.

**ANSWER:** Denied.

25.    As a proximate result of Defendants' wrongful possession and detention of said property, Plaintiffs have suffered, and continue to suffer, the loss of use of said property, and the depreciation of said property.

**ANSWER:** Denied.

26.    Plaintiffs have incurred, and continue to incur, the cost of possession, including, without limitation, attorney's fees, court costs and litigation expenses, in an attempt to enforce their rights.

**ANSWER:** Denied.

27.    Said property not [sic] been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of Plaintiffs, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against Plaintiffs.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 and therefore demand strict proof thereof from Plaintiffs.

9

28.    WHEREFORE, Defendants respectfully request that the Court deny all relief sought by Plaintiffs.

## COUNT II: BREACH OF CONTRACT (T2W AGREEMENT)

29.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-28 as though fully set forth herein.

**ANSWER:**  Defendants re-allege and incorporate by reference their answers to the allegations in paragraphs 1 through 28 above as if fully set forth herein.

30.    Indie Energy was notified by e-mail on or about March 7, 2008 that all of its accounts, including the T2W Agreement, were delinquent.

**ANSWER:** Admitted.

31.    Indie Energy has refused to pay the amounts due on said Agreement.

**ANSWER:**  Defendants admit only that as a result of Plaintiffs' breaches of contract, breaches of warranties and fraudulent misrepresentations that Indie Energy eventually stopped payment on said Agreement.

32.    Pursuant to ¶ 19(A) of said Agreement, Indie Energy is in default due to its continuing failure to pay amounts due under the Agreement.

**ANSWER:**  Paragraph 19(A) of the referenced Agreement speaks for itself.  To the extent a response is necessary, Defendants deny the allegations of this paragraph.

33.　　Pursuant to ¶ 19(F) of said Agreement, all sums due and to become due under said agreement are immediately due and payable to Plaintiffs.

**ANSWER:**　Paragraph 19(F) of the referenced Agreement speaks for itself.　To the extent a response is necessary, Defendants deny the allegations of this paragraph.

34.　　WHEREFORE, Defendants respectfully request that the Court deny all relief sought by Plaintiffs.

### COUNT III: BREACH OF CONTRACT (COMPRESSOR AGREEMENT)

35.　　Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-34 as though fully set forth herein.

**ANSWER:**　Defendants re-allege and incorporate by reference their answers to the allegations in paragraphs 1 through 34 above as if fully set forth herein.

36.　　Indie Energy was notified by e-mail on or about March 7, 2008 that all of its accounts, including the Compressor Agreement, were delinquent.

**ANSWER:**　Admitted.

37.　　Indie Energy has refused to pay the amounts due on said Agreement.

**ANSWER:**　Defendants admit only that as a result of Plaintiffs' breaches of contract, breaches of warranties and fraudulent misrepresentations that Indie Energy eventually stopped payment on said Agreement.

38.    Pursuant to Section 4 of said Agreement, Indie Energy is in default due to its continuing failure to pay amounts due under the Agreement.

**ANSWER:**  Section 4 of said Agreement speaks for itself.  To the extent a response is necessary, Defendants deny the allegations of this paragraph.

39.    Pursuant to said Agreement, the outstanding principal balance, with all accrued and unpaid interest thereon, and all other amounts payable to Plaintiff under the terms of said Agreement are immediately due and payable to Plaintiffs.

**ANSWER:**  The referenced Agreement speaks for itself.  To the extent a response is necessary, Defendants deny the allegations of this paragraph.

40.    WHEREFORE, Defendants respectfully request that the Court deny all relief sought by Plaintiffs.

## COUNT IV: BREACH OF CONTRACT (TH60 AGREEMENT)

41.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-40 as though fully set forth herein.

**ANSWER:**  Defendants re-allege and incorporate by reference their answers to the allegations in paragraphs 1 through 40 above as if fully set forth herein.

42.    Indie Energy was notified by e-mail on or about March 7, 2008 that all of its accounts, including the TH60 Agreement, were delinquent.

**ANSWER:**  Admitted.

43.    Indie Energy has refused to pay the amounts due on said Agreement.

**ANSWER:**  Defendants admit only that as a result of Plaintiffs' breaches of contract, breaches of warranties and fraudulent misrepresentations that Indie Energy eventually stopped payment on said Agreement.

44.    Pursuant to Section 4 of said Agreement, Indie Energy is in default due to its continuing failure to pay amounts due under the agreement.

**ANSWER:**  Section 4 of said Agreement speaks for itself.  To the extent a response is necessary, Defendants deny the allegations of this paragraph.

45.    Pursuant to said Agreement, the outstanding principal balance, with all accrued and unpaid interest thereon, and all other amounts payable to Plaintiffs under the terms of said Agreement are immediately due and payable to Plaintiffs.

**ANSWER:**  The referenced Agreement speaks for itself.  To the extent a response is necessary, Defendants deny the allegations of this paragraph.

46.    WHEREFORE, Defendants respectfully request that the Court deny all relief sought by Plaintiffs.

### COUNT V: ACTION TO RECOVER AMOUNTS DUE ON AN ACCOUNT

47.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-46 as though fully set forth herein.

**ANSWER:**  Defendants re-allege and incorporate by reference their answers to the allegations in paragraphs 1 through 46 above as if fully set forth herein.

13

48.     Indie Energy owes CMT $57,078.05 on the consumables account set forth in Exhibit H.

**ANSWER:** Indie Energy admits only that it has a consumables account with Atlas Copco that as of the date of this Answer has an outstanding balance.

49.     Pursuant to the above-referenced Guarantees executed by Cheifetz, this amount is also due and payable in full by Cheifetz.

**ANSWER:** The above-referenced Guarantees speak for themselves.   To the extent a response is necessary, Defendants deny the allegations of this paragraph.

50.     WHEREFORE, Defendants respectfully request that the Court deny all relief sought by Plaintiffs.

## COUNT VI: ACTION TO RECOVER AMOUNTS DUE UNDER GUARANTEES

51.     Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-50 as though fully set forth herein.

**ANSWER:** Defendants re-allege and incorporate by reference their answers to the allegations in paragraphs 1 through 50 above as if fully set forth herein.

52.     Defendant Cheifetz executed three separate Guarantees, each corresponding to one of the above-referenced Agreements.

**ANSWER:** Defendants admits only that Daniel Cheifetz executed three separate Guarantees.

53.    Each Guarantee requires Cheifetz to promptly pay <u>all</u> of Indie Energy's obligations, indebtedness, and liabilities of any kind, including unrelated and after-acquired debt, due to Plaintiff upon Indie Energy's default on <u>any</u> agreement, in addition to costs and expenses, including attorney fees.

**ANSWER:** The Guarantees referenced in this paragraph speak for themselves.

54.    As a result of Indie Energy's defaults on all three said Agreements, all three accounts are immediately due and payable in full.

**ANSWER:** Denied.

55.    In addition to the amounts due under the three said Agreements, Indie Energy has an outstanding consumables balance of $57,078.05. This balance is also immediately due and payable under said Guarantees.

**ANSWER:** Indie Energy admits only that it has a consumables account with Atlas Copco that as of the date of this Answer has an outstanding balance.

56.    WHEREFORE, Defendants respectfully request that the Court deny all relief sought by Plaintiffs.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs' claims are barred, in whole or in part, by Plaintiff' failure to avoid, minimize or mitigate Plaintiffs' damages.

2.     Any recovery by Plaintiffs on their claims is barred by the doctrines of set-off and recoupment.

3.     Defendants are entitled to a setoff from any amounts claimed by Plaintiffs for all payments made and equity attained in the equipment purchased and/or leased pursuant to the June 17, 2006 Agreement, the April 12, 2007 Agreement and the June 20, 2007 Agreement.

4.     Plaintiffs' claims are barred because Indie Energy detrimentally relied on Plaintiffs' representations and warranties regarding the suitability of the subject equipment for Indie Energy's business purposes.

5.     Plaintiffs' claims are barred because they have waived and/or are estopped from contending that Indie Energy has defaulted on any of the subject agreements by reason of the parties' course of dealing with respect to partial payments made by Indie Energy.

6.     Plaintiffs' claims with respect to the June 20, 2007 Agreement are barred because June 20, 2007 Agreement does not reflect a credit/set-off for equipment traded-in to the Plaintiffs, and therefore does not truly and accurately state the amount owed by Defendants.

## **DEFENDANTS INDIE ENERGY SYSTEMS COMPANY, LLC'S**
## **AND DANIEL CHIEFETZ'S COUNTERCLAIMS**

Defendants/Counter-claimants Indie Energy Systems Company LLC ("Indie Energy") and Daniel Cheifetz (collectively, "Counter-Claimants") for their Counterclaims against Atlas Copco Construction Mining Technique USA, LLC ("Atlas Copco CMT") and Atlas Copco Customer Finance USA LLC, (collectively, "Counter-Defendants") state as follows:

### **INTRODUCTION**

1.      Counter-Claimants bring these counterclaims to recover damages based on Counter-Defendants' breaches of contract, breaches of express warranties, breaches of implied warranties and fraudulent misrepresentations with respect to purchase and loan agreements for drilling equipment.

### **THE PARTIES**

2.      Counter-claimant, Indie Energy, is an Illinois Limited Liability Company with its principal place of business located at 1020 Church Street, Evanston, Illinois 60201.

3.      Counter-claimant, Daniel Cheifetz, is an individual who resides in Cook County, Illinois.

4.      Counter-defendant, Atlas Copco Construction Mining Technique USA, LLC, is a Delaware Limited Liability Company with its principal place of business in New Jersey.

5.    Counter-defendant, Atlas Copco Customer Finance USA LLC, is a Delaware Limited Liability Company with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

6.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy, without interest and costs, exceeds $75,000.  Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) because the Counter-Defendants do business in this district, a substantial part of the events or omissions giving rise to the claim occurred therein, and the property that is the subject of this action is located therein.

## FACTS

7.    At all times relevant to these Counterclaims, Counter-Claimant, Indie Energy, designed and manufactured clean energy systems by using, in part, geothermal drilling techniques.

8.    Counter-Defendants manufacture, sell and finance industrial equipment, including mining and drilling equipment.

9.    Indie Energy has engaged in various written agreements with Counter-Defendants through which Indie Energy has financed and/or purchased equipment and materials necessary for the operation of its business from Counter-Defendants.

10.    Indie Energy specifically and expressly informed Counter-Defendants of the nature of its business - to provide geothermal-based renewal HVAC systems - at or near the beginning of the business relationship.

11.    Atlas Copco CMT knew of the nature of Indie-Energy's business - to provide geothermal-based renewal HVAC systems – at or near the beginning of the business relationship.

12.    Atlas Copco CMT affirmatively represented, warranted and proposed to the Counter-Claimants that the equipment and materials sold to Indie Energy were suitable for the business purposes for which Indie Energy intended to use them.

13.    Specifically, Atlas Copco CMT represented to the Counter-Claimants that the use of Counter-Defendants' patented system Symmetrix, along with the purchased equipment, would enhance the efficiency and quality of Indie Energy's drilling operations.  Atlas Copco CMT represented, among other things, that the cocentric working principle of Symmetrix guaranteed effective drilling performance in all formations, boulders, sand, gravel etc; that Symmetrix would drill straight holes at any angle from vertical to horizontal equally effectively and that Symmetrix's construction and working principles would ensure substantially lower downtime, consumables and running costs.

14.    On or about July 17, 2006, Indie Energy entered into a lease/purchase agreement with Atlas Copco CMT whereby it financed the purchase of an Atlas Copco drill, model T2W, serial number 6201 and the truck on which the T2W drill is mounted, International model Series 2674, vehicle identification number 1HTGLATT3VH431381

(collectively, the "T2W drill"). See Master Capital Lease Agreement, attached hereto as Exhibit A.

15.    The total of the amount financed for the T2W drill was $315,126.24.

16.    Indie Energy holds title to the T2W drill. See Certificate of Title of a Vehicle, attached hereto as Exhibit B.

17.    Counter-Defendants are not lien holders with respect to the T2W drill.

18.    On or about April 12, 2007, Indie Energy entered into an Installment Loan & Security Agreement with Counter-Defendants to purchase an Atlas Copco Compressor, Model XRVS 976CD, Serial No. 539285 ("Compressor"). See April 12, 2007 Installment Loan & Security Agreement, attached hereto as Exhibit C.

19.    Pursuant to the Compressor Agreement, Indie Energy was to maintain ownership of the Compressor, subject to a security interest held by Counter-Defendants.

20.    The total of the amount financed for the Compressor was $99,450.00.

21.    On or about June 20, 2007, Indie Energy entered into an Installment and Loan Agreement (the "June 20, 2007 Agreement") with Counter-Defendants to purchase an Atlas Copco drill, model number TH60, serial number 21129. The TH60 drill was mounted on a Peterbilt truck, vehicle identification number 1NPAL40X-7-7D661603 (collectively, the "TH60 drill"). See June 20, 2007 Installment and Loan Agreement, attached hereto as Exhibit D and the May 30, 2007 UCC Financing Statement, attached hereto as Exhibit E.

22.    Pursuant to the June 20, 2007 Agreement, Indie Energy was to maintain ownership of the TH60 drill, subject to a security interest held by Counter-Defendants.

23.    The total purchase price for the TH60 drill was $604,500.00.

24.    The purchase invoice for the TH60 drill reflects that the balance due for the equipment, after a $280,000 credit was given for equipment traded-in, was $349,281.25. See TH60 drill Purchase Invoice, attached hereto as Exhibit F.

25.    The June 20, 2007 Agreement states that the total amount financed for the TH60 was $564,588.46.

26.    The agreements entered into between Indie Energy and the Counter-Defendants required Indie Energy to use Atlas Copco replacement parts and service technicians.

27.    The T2W drill, the Compressor and the TH60 drill (collectively, the "Subject Equipment"), as well as the Symmetrix drilling system, all failed to perform as expressly and impliedly represented and warranted by Counter-Defendants.

28.    Counter-Defendants were aware of the failures, deficiencies and insufficiencies of the T2W drill, the Compressor, TH60 drill and the entire Symmetrix drilling system.  See Atlas Copco Symmetrix Drilling Presentation to Indie Energy, attached hereto as Exhibit G.

29.    Counter-Defendants were aware that the failures, deficiencies and insufficiencies of the T2W drill, the Compressor, the TH60 drill and the entire Symmetrix drilling system were due to their unsuitability for Indie Energy's business purposes.

30.    Atlas Copco CMT performed repairs and replacements of parts and accessories for the Symmetrix drilling system and applied the costs of such repairs and replacements to a "Consumables" account.

31.    Atlas Copco CMT's repairs and replacements of parts and accessories for the Symmetrix drilling system were unsatisfactory, defective and did not result in the adequate operation of any of the subject equipment.

32.    In contravention of Indie Energy's and Counter-Defendants' course of dealing, Counter-Defendants refused to accept the return of the defective T2W drill and the TH60 drill.

## COUNT I - BREACH OF CONTRACT

33.    Counter-Claimants incorporate by reference and reallege paragraphs 1 through 32, inclusive, as though fully set forth herein.

34.    Indie Energy entered into three agreements with Counter-Defendants, the June 17, 2006 Agreement, the April 12, 2007 Agreement and the June 20, 2007 Agreement, to purchase drilling equipment that, when used with Atlas Copco's Symmetrix drilling system, would facilitate Indie Energy's business purpose of providing clean energy HVAC systems to its customers.

35.    Counter-Defendants materially breached their contracts with Indie Energy by failing:

    a.    To provide suitable geothermal drilling equipment as contracted and as appropriate for Indie Energy's business purposes.

    b.    To provide truthful and accurate information regarding the suitability, performance characteristics and cost of the Symmetrix drilling system for Indie Energy's business purposes.

c.    To provide drilling equipment free of design and manufacturing defects and flaws.

36.    As a direct result of Counter-Defendants' breaches of contract, Indie Energy has incurred significant expense in repairing and replacing component parts of the Symmetrix system and incurred significant incidental and consequential damages, including lost business opportunities.

WHEREFORE, Counter-Claimants Indie Energy and Daniel Cheifetz, respectfully request that this Court enter judgment against Atlas Copco Construction Mining Technique USA, LLC and Atlas Copco Customer Finance USA LLC and in favor of Counter-Claimants for a sum in excess of $75,000 (in an amount to be determined at trial), plus interest, costs and attorneys' fees and any other relief this Court deems just and appropriate.

## COUNT II – BREACH OF EXPRESS WARRANTIES - UCC

37.    Counter-Claimants incorporate by reference and reallege paragraphs 1 through 36, inclusive, as though fully set forth herein.

38.    At all relevant times, there was in force and effect in Illinois, the Uniform Commercial Code, Sales, 810 ILCS 5/2-101, *et seq.*, which governs the contracts at issue.

39.    Counter-Defendants' preceding    affirmations,    representations    and promises regarding the cost, appropriateness and performance of Atlas Copco's Symmetrix drilling system and the Subject Equipment created an express warranty that

23

the drilling system and the Subject Equipment would conform to the affirmations, representations and promises made by the Counter-Defendants, in accordance with 810 ILCS 5/2-313 "Express Warranties."

40.    Atlas Copco CMT advertised, marketed, showed and displayed depictions of its Symmetrix system, its T2W drill, its TH60 drill and its Compressor to representatives of Indie Energy.    Such action by Counter-Defendants created an express warranty that the Symmetrix system and the Subject Equipment would conform to Indie Energy's expectations, in accordance with 810 ILCS 5/2-313 "Express Warranties."

41.    As a direct result of Counter-Defendants breaches of their express warranties with respect to the sale of the Symmetrix system, the T2W drill, the TH60 drill and the Compressor, Indie Energy has incurred significant expense in repairing and replacing component parts of the Symmetrix system and incurred significant incidental and consequential damages, including lost business opportunities.

WHEREFORE, Counter-Claimants Indie Energy and Daniel Cheifetz, respectfully request that this Court enter judgment against Atlas Copco Construction Mining Technique USA, LLC and Atlas Copco Customer Finance USA LLC and in favor of Counter-Claimants for a sum in excess of $75,000 (in an amount to be determined at trial), plus interest, costs and attorneys' fees and any other relief this Court deems just and appropriate.

## COUNT III - BREACH OF IMPLIED WARRANTIES (MERCHANTABILITY) – UCC

42.    Counter-Claimants incorporate by reference and reallege paragraphs 1 through 41, inclusive, as though fully set forth herein.

24

43.    At all relevant times, there was in force and effect in Illinois, the Uniform Commercial Code, Sales, 810 ILCS 5/2-101, *et seq.*, which governs the contracts at issue.

44.    Counter-Defendants' foregoing affirmations, representations and promises regarding the cost, appropriateness and performance of its Symmetrix drilling system and the subject equipment created an implied warranty that the drilling system and the Subject Equipment would be merchantable and fit for the ordinary purposes for which such equipment is used, *inter alia*, fit for Indie Energy's geothermal drilling work, in accordance with 810 ILCS 5/2-314 "Implied Warranty – Merchantability – Usage of Trade."

45.    Atlas Copco CMT advertised, marketed, showed and displayed depictions of its Symmetrix system, its T2W drill, its TH60 drill and its Compressor to representatives of Indie Energy. Such action by Counter-Defendants created an implied warranty that the Symmetrix system and the subject equipment would be merchantable and fit for the ordinary purposes for which such equipment is used, *inter alia*, fit for Indie Energy's geothermal drilling work,, in accordance with 810 ILCS 5/2-314 "Implied Warranty – Merchantability – Usage of Trade."

46.    As a direct result of Counter-Defendants' breaches of their implied warranties with respect to the merchantability and fitness ordinary purposes of the Symmetrix system, the T2W drill, the TH60 drill and the Compressor, Indie Energy incurred significant additional expense in repairing and replacing component parts of the Symmetrix system and incurred significant incidental and consequential damages, including lost business opportunities.

25

WHEREFORE, Counter-Claimants Indie Energy and Daniel Cheifetz, respectfully request that this Court enter judgment against Atlas Copco Construction Mining Technique USA, LLC and Atlas Copco Customer Finance USA LLC and in favor of Counter-Claimants for a sum in excess of $75,000 (in an amount to be determined at trial), plus interest, costs and attorneys' fees and any other relief this Court deems just and appropriate.

## COUNT IV - BREACH OF IMPLIED WARRANTIES
## (FITNESS FOR A PARTICULAR PURPOSE) – UCC

47.    Counter-Claimants incorporate by reference and reallege paragraphs 1 through 46, inclusive, as though fully set forth herein.

48.    At all relevant times, there was in force and effect in Illinois, the Uniform Commercial Code, Sales, 810 ILCS 5/2-101, *et seq.*, which governs the contracts at issue.

49.    Counter-Defendants knew, or had reason to know, at the time that the Agreements were executed that the Subject Equipment was required for a particular purpose, specifically, for Indie Energy's geothermal drilling operations in urban areas.

50.    Counter-Defendants' knowledge created an implied warranty that the drilling system and its component drills and compressor would be fit for a particular purpose, *inter alia*, fit for Indie Energy's geothermal drilling work, in accordance with 810 ILCS 5/2-315 "Implied Warranty – Fitness for Particular Purpose."

51.    Indie Energy relied on Atlas Copco CMT's skill and judgment to select and furnish suitable equipment.

52.    As a direct result of Counter-Defendants breaches of their implied warranties with respect to the fitness for a particular purposes of the Symmetrix system, the T2W drill, the TH60 drill and the Compressor, Indie Energy incurred significant additional expense in repairing and replacing component parts of the Symmetrix system and incurred significant incidental and consequential damages, including lost business opportunities.

WHEREFORE, Counter-Claimants Indie Energy and Daniel Cheifetz, respectfully request that this Court enter judgment against Atlas Copco Construction Mining Technique USA, LLC and Atlas Copco Customer Finance USA LLC and in favor of Counter-Claimants for a sum in excess of $75,000 (in an amount to be determined at trial), plus interest, costs and attorneys' fees and any other relief this Court deems just and appropriate.

## COUNT V - BREACH OF IMPLIED WARRANTIES (MERCHANTABILITY) – UCC

53.    Counter-Claimants incorporate by reference and reallege paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.    At all relevant times, there was in force and effect in Illinois, the Uniform Commercial Code, Sales, 810 ILCS 5/2-101, *et seq.*, which governs the contracts at issue.

55.    Counter-Defendants' foregoing affirmations, representations and promises regarding the cost, appropriateness and performance of its Symmetrix drilling system and the subject equipment created an implied warranty that the drilling system and its

27

component drills and compressor would be merchantable and fit for the ordinary purposes for which such equipment is used, *inter alia*, fit for Indie Energy's geothermal drilling work, in accordance with 810 ILCS 5/2-314 "Implied Warranty – Merchantability – Usage of Trade."

56.    Atlas Copco CMT advertised, marketed, showed and displayed depictions of its Symmetrix system, its T2W drill, its TH60 drill and its Compressor to representatives of Indie Energy.  Such action by Counter-Defendants created an implied warranty that the Symmetrix system and the subject equipment would be merchantable and fit for the ordinary purposes for which such equipment is used, *inter alia*, fit for Indie Energy's geothermal drilling work,, in accordance with 810 ILCS 5/2-314 "Implied Warranty – Merchantability – Usage of Trade."

57.    As a direct result of Counter-Defendants' breaches of their implied warranties with respect to the merchantability and fitness ordinary purposes, their Symmetrix system, their T2W drill, their TH60 drill and their Compressor, Indie Energy incurred significant additional expense in repairing and replacing component parts of the Symmetrix system and incurred significant incidental and consequential damages, including lost business opportunities.

WHEREFORE, Counter-Claimants Indie Energy and Daniel Cheifetz, respectfully request that this Court enter judgment against Atlas Copco Construction Mining Technique USA, LLC and Atlas Copco Customer Finance USA LLC and in favor of Counter-Claimants for a sum in excess of $75,000, plus interest, costs and attorneys' fees and any other relief this Court deems just and appropriate.

## COUNT VI – FRAUDULENT MISREPRESENTATION

58.    Counter-Claimants incorporate by reference and reallege paragraphs 1 through 57, inclusive, as though fully set forth herein.

59.    Counter-Defendants knowingly made false statements and representations regarding the suitability, fitness, appropriateness and cost of the Symmetrix drilling system, the T2W drill, the TH60 drill and the Compressor for Indie Energy's business purpose of providing geothermal energy solutions to its customers.

60.    Counter-Defendants made such false statements and representations in order to induce Indie Energy to enter into leasing and purchase contracts for the Symmetrix system and the Subject Equipment and to repeatedly purchase repair and replacement parts for such equipment.

61.    Indie Energy, in justifiable reliance on the statements, warranties and representations made by Counter-Defendants, entered into leasing and purchasing agreements with the Counter-Defendants for the Subject Equipment.

62.    As a direct result of Counter-Defendants' fraudulent misrepresentations with respect to the suitability, fitness appropriateness and cost of the Symmetrix drilling system, the T2W drill, the TH60 drill and the Compressor Indie Energy has incurred significant expense in repairing and replacing component parts of the Symmetrix system and incurred significant incidental and consequential damages, including lost business opportunities.

WHEREFORE, Counter-Claimants Indie Energy and Daniel Cheifetz, respectfully request that this Court enter judgment against Atlas Copco Construction Mining Technique USA, LLC and Atlas Copco Customer Finance USA LLC and in favor of

29

Counter-Claimants for a sum in excess of $75,000 (in an amount to be determined at trial), plus interest, costs and attorneys' fees and any other relief this Court deems just and appropriate.

Respectfully submitted,

SCHIFF HARDIN LLP

By: _Tracy Campbell_

Counsel for Indie Energy Systems
Company, LLC and Daniel Cheifetz

Tracy A. Campbell
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606
Tel:  (312) 258-5500
Fax:  (312) 258-5600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she caused a copy of the foregoing Defendants' Answer to Verified Complaint, Affirmative Defenses and Counterclaims be served upon the following counsel of record via electronic filing, on May 20, 2008:

Joseph R. Marconi
Victor J. Pioli
Johnson & Bell, Ltd.
33 W. Monroe Street
Suite 2700
Chicago, IL 60606

Tracy A. Campbell

# EXHIBIT  A

1

1               IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3

4  ATLAS COPCO CONSTRUCTION MINING    )  Docket No. 08 C 2363
   TECHNIQUE USA LLC, et al.,       )
5                             )
                   Plaintiffs,   )
6                             )
             vs.             )
7                             )  Chicago, Illinois
   INDIE ENERGY SERVICES COMPANY, LLC,  )  May 20, 2008
8  et al.,                    )  10:00 o'clock a.m.

9                      Defendants.

10
                   TRANSCRIPT OF PROCEEDINGS
11         BEFORE THE HONORABLE SAMUEL DER-YEGHIAYAN

12
   APPEARANCES:
13

14  For the Plaintiffs:     JOHNSON & BELL, LTD.
                     BY:  MR. VICTOR J. PIOLI
15                  33 West Monroe Street, Suite 2700
                     Chicago, Illinois  60603
16                  (312) 372-0770

17
   For the Defendants:     SCHIFF HARDIN, LLP
18                     BY:  MS. TRACY ANN CAMPBELL
                     6600 Sears Tower
19                  Chicago, Illinois  60606
                     (312) 258-5602
20

21

22

23
   Court Reporter:         MS. CAROLYN R. COX, CSR, RPR, CRR
24                  Official Court Reporter
                     219 S. Dearborn Street, Suite 1854-B
25                  Chicago, Illinois  60604
                     (312) 435-5639

2

1        (The following proceedings were had in open court:)

2              THE CLERK:  08 C 2363, Atlas Copco v. Indie Energy

3    Services.

4              MR. PIOLI:  Good morning, Judge; Victor Pioli on

5    behalf of the plaintiffs.

6              THE COURT:  Good morning.

7              MS. CAMPBELL:  Good morning, your Honor; Tracy

8    Campbell on behalf of the defendants.

9              THE COURT:  Good morning.  We're here for a hearing,

10   replevin hearing.  Have the parties discussed this matter?

11             MR. PIOLI:  We have discussed it, your Honor.

12             THE COURT:  Any resolution?

13             MR. PIOLI:  Well, I don't want to mischaracterize Ms.

14   Campbell's position and I don't want to mischaracterize our

15   conversation, but I will take a stab at it.  I think the

16   dispute that we ultimately have is with regard to how much

17   money is owed on these accounts.  I don't think there's a

18   dispute that the accounts are in arrears pursuant to the three

19   agreements, the equipment lease and the two installment loan

20   agreements, and I don't think there is a dispute that we are

21   entitled to possession at this point.  It was just a dispute as

22   to how much ultimately they're going to owe us, because they

23   believe they're entitled to some credits and we are not so sure

24   about that.  I'll let Ms. Campbell talk, but I think that's

25   where we're at.

3

1          THE COURT:  Okay.

2          MS. CAMPBELL:  Essentially while I do agree that there

3    is a disagreement with respect to how much is owed on the

4    various agreements, number one, we would submit that while

5    there are some past due -- there are some past due obligations

6    on the agreements, we believe that we have just cause for those

7    past due payments with regard to the fact that some of the

8    equipment was defective and it is not working properly.  And

9    with respect to the ownership of the various pieces of

10   equipment, we do have some issues with regard to that.  There

11   are three primary agreements at issue, one which is

12   characterized as a lease, and two which are clearly finance

13   purchase agreements, and we believe that pursuant to, at the

14   very least, the finance purchase agreements, we have ownership

15   rights in those for the equipment that is identified in those

16   particular agreements.  So we certainly have some issues here,

17   but I do think that at its heart it's with regard to the value

18   of the various equipment.

19          There had been some prior negotiations before the

20   lawsuit was filed with regard to possibly trading in some of

21   this equipment that has been defective and has not been working

22   for our purposes, and those negotiations were not fruitful at

23   that point.  You know, we do expect that there will be further,

24   you know, negotiations and discussions with regard to value and

25   hopefully resolution.

4

1    THE COURT:  So if I heard both of you right, there is
2  some equipment that the defendant has?
3    MS. CAMPBELL:  We have all the equipment, your Honor.
4    THE COURT:  Yes.  And some of them are on lease, some
5  of them are based on purchase agreements, is this what you are
6  saying?
7    MS. CAMPBELL:  That is correct.
8    THE COURT:  And the dispute is obviously about the
9  money, and, Defendant, you're saying that some of that dispute
10  is created because some of the equipment that you have is
11  defective or not functioning properly?
12    MS. CAMPBELL:  In part.
13    THE COURT:  Some of it.
14    MS. CAMPBELL:  Right.
15    THE COURT:  So the question for today's purpose is
16  whether plaintiff has established a prima facie case to
17  superior right of possession of the disputed properties.
18  That's why I asked you if there was any resolution relating to
19  that issue because, you know, a lawsuit is filed, and I don't
20  even see on the docket service or any answer yet.
21    MS. CAMPBELL:  My answer is due today I believe, your
22  Honor.
23    THE COURT:  Excuse me?
24    MS. CAMPBELL:  I believe my answer is due today.
25    THE COURT:  Due today?

5

1          MS. CAMPBELL:  Yes.

2          THE COURT:  That's what I am saying.  So we are a

3     little early relating to those issues.  There's going to be

4     discovery and so on.

5          On the issue of the replevin motion, that's what we're

6     here for, so I thought that maybe you two could have come to

7     some type of resolution about that.

8          MR. PIOLI:  Well, Judge, as I told Ms. Campbell, we

9     can always fight about the money later on.  And with regard to

10    possession, I don't think there's any dispute that we are

11    entitled to possession.  Whether the equipment is defective or

12    not defective, we just want it back, and I think the fact that

13    they haven't paid gives us a right.

14         THE COURT:  You have to establish a prima facie case

15    first.  That's why we scheduled this hearing.  Are you going to

16    do that through documents, through witnesses, through

17    testimony?  How are you going to do that?

18         MR. PIOLI:  Your Honor, we filed a verified complaint

19    which is sworn and attested to by Gail Rogner (phonetic), who

20    is our account manager, and we believe that the allegations of

21    the complaint, along with the exhibits attached thereto,

22    establish our prima facie case.

23         As you know, Judge, we're seeking possession of five

24    pieces of equipment that are in defendant's possession by

25    virtue of three agreements.  The first two pieces of equipment

6

1   are a T2W drill which is attached to a 1997 vehicle.  Those

2   pieces of equipment were taken by defendant pursuant to an

3   equipment lease which is attached as Exhibit A to our

4   complaint.

5           THE COURT:  So that was a lease, you're saying?

6           MR. PIOLI:  That was a lease, correct, your Honor.

7           THE COURT:  Okay.  What else?

8           MR. PIOLI:  I'm sorry?

9           THE COURT:  What other items?

10          MR. PIOLI:  Okay.  Also, there was a compressor, an

11  Atlas Copco compressor, and that was taken pursuant to an

12  installment loan and security agreement.

13          THE COURT:  So the compressor, that's not a lease;

14  it's a purchase agreement but installment payments?

15          MR. PIOLI:  That is correct, your Honor.

16          THE COURT:  Okay.

17          MR. PIOLI:  And then finally, there were an additional

18  two pieces of equipment, a TH60 drill, which is attached to a

19  Peterbuilt truck, and that was similarly taken pursuant to a

20  purchase agreement, an installment loan and security agreement.

21          THE COURT:  Okay.  And then what else?

22          MR. PIOLI:  That's it.  Those are the five pieces of

23  equipment.

24          THE COURT:  You told me the T2W, the compressor, and

25  TH60.

7

1          MR. PIOLI:  Yes.

2          THE COURT:  That's three items.

3          MR. PIOLI:  And the T2W drill is attached to a vehicle

4   that is also --

5          THE COURT:  What type of vehicle is that?

6          MR. PIOLI:  It's a 1997 vehicle, and I will give you

7   the vehicle identification number.  It's a model 2000 series

8   2674, vehicle ID No. 1HTGLATT3BH431381.

9          THE COURT:  Okay.  Was that also part of the T2H

10  equipment lease?

11         MR. PIOLI:  Yes, it was, your Honor.

12         THE COURT:  Okay.  And the other vehicle, is there

13  anything else?

14         MR. PIOLI:  Yes.  The other vehicle is what the TH60

15  drill is attached to.

16         THE COURT:  Okay.

17         MR. PIOLI:  And that was also part of that purchase

18  agreement.  And that is a Peterbuilt truck, serial No.

19  1NPAL40X-7-7D661603.

20         THE COURT:  Okay.  Defense Counsel, plaintiff contends

21  that with their exhibits to the verifiable complaint, they have

22  established superior right.  What do you have to say?

23         MS. CAMPBELL:  Your Honor, we say that based on the

24  documents that are attached to the verified complaint that they

25  have not in fact met their prima facie case with respect to the

8

1    five pieces of equipment.

2            Beginning with the first piece, the T2W, as indicated,

3    that's subject to what is characterized as a master capital

4    equipment lease; but, in fact, your Honor, upon closer

5    inspection of this agreement, it's really nothing more than a

6    finance purchase agreement with a requirement that my client

7    purchase the equipment at the end of the term.

8            THE COURT:  Show me a document that it's a lease that

9    turns into a purchase.

10           MS. CAMPBELL:  Your Honor, page 2 I believe -- I'm

11   sorry -- page 1 of the master capital equipment lease agreement

12   provides that there is a purchase obligation under this

13   agreement, and it attaches as an exhibit to the master capital

14   equipment lease an Exhibit A which identifies the property to

15   be quote-unquote leased.  And in the equipment description, it

16   states serial number and application, and the only thing it

17   states there is the Atlas Copco brand model T2W, serial number

18   6201.  There is no indication there at all that that includes

19   the International truck on which the T2W drill is mounted.

20           With respect to the T2W drill, because it's a

21   non-consumer good, the plaintiffs must perfect their security

22   interest through a UCC financial financing statement.  There

23   was attached to the complaint a UCC financing statement, but it

24   does not appear that it was ever filed with the Illinois

25   Secretary of State; and, therefore, your Honor, we submit that

9

1   there is no security interest in the T2W drill.

2          MR. PIOLI:  Judge, if I may.  I don't understand what

3   the difference is, if it's a lease with an option to purchase

4   or if it's a lease with a requirement to purchase.  The fact is

5   they took possession of the equipment, they didn't pay, it's an

6   event of default that's ascribed in the document attached as

7   Exhibit A, however you want to characterize it.  And pursuant

8   to paragraph 19, we are entitled to take possession back upon

9   an event of default, namely, not paying.  It specifically

10  provides in the occurrence of default, lessor at its option may

11  do any or all of the following:  One is declare all sums due to

12  become immediately payable, and No. 3 is demand that the lessee

13  deliver the equipment forthwith to lessor at lessee's expense

14  at such place as lessor may designate.  We have done that, they

15  refused to do that, and that's why we are here today.

16         MS. CAMPBELL:  Your Honor, the UCC financing

17  statement, which apparently was -- which actually is further

18  evidence that this was intended to be a purchase contract does

19  not, in fact, identify the International truck as part --

20         THE COURT:  Have you paid for the item?

21         MS. CAMPBELL:  I'm sorry?

22         THE COURT:  Have you purchased it?  Has your client

23  purchased it?

24         MS. CAMPBELL:  We are financing both the International

25  truck and the T2W.

10

1          THE COURT:  Have you paid people who gave you this

2  item?

3          MS. CAMPBELL:  Have we paid --

4          THE COURT:  Have you paid them?

5          MS. CAMPBELL:  We have been making payments, your

6  Honor.  We stopped making payments in March by virtue of what

7  we said earlier with regard to the breaches of warranty.

8          THE COURT:  There is a dispute obviously, but I think

9  what I am hearing right now is that the property, the disputed

10 property has to belong to somebody.  It cannot belong to two

11 people.  It has to belong to somebody, and thus far I haven't

12 heard that it belongs to you.

13         MS. CAMPBELL:  Well, as a matter of fact, your Honor,

14 we do have title to the International truck.  As a matter of

15 fact, I have the original of the title -- of the certificate of

16 title to the vehicle for the International truck.  There is a

17 handwritten notation that attempts to give a lien to Atlas, but

18 this lien has not been perfected.  We, in fact, still own the

19 International truck.

20         THE COURT:  Okay.  Plaintiff, you gave them the title?

21         MR. PIOLI:  Certainly, Judge, pursuant to and assuming

22 that they abide by their obligations under the agreement, and

23 they haven't done that.  They haven't paid.  So because of the

24 fact that they haven't paid, we are entitled pursuant to the

25 terms of the agreement.  They have taken title pursuant to

1    their obligation under the lease agreement.

2          THE COURT:  I understand there is going to be a

3    dispute about who owes who how much money, but right now I have

4    to determine who has the superior right to possession of the

5    disputed properties.

6          MS. CAMPBELL:  Yes, your Honor.  With respect to the

7    International truck, the only method to perfect the security

8    interest in the International truck would have been for them to

9    have applied for a lien on their certificate of title, and,

10   your Honor, I will represent to you that as of this morning,

11   after having checked, having done a title inquiry on this

12   particular VIN number, there is no indication that there is a

13   lienholder at all on the International truck.

14         THE COURT:  Have you registered as the lienholder?

15         MR. PIOLI:  Judge, the certificate of title expressly

16   gives us a lien.

17         MS. CAMPBELL:  Your Honor, it's handwritten in there.

18         THE COURT:  Handwritten, but does it have to be

19   registered with somebody?

20         MS. CAMPBELL:  Yes, your Honor, it has to be

21   registered with the Secretary of State, and I have a copy here

22   of the title and registration status info we pulled off the

23   Secretary of State website from this morning which indicates

24   that there is no lienholder on this particular vehicle.

25         THE COURT:  Counsel for plaintiff, when you give

1    somebody a document like a title, then that person can sell

2    that item right now if they went and transferred that item to

3    somebody else.   The Secretary of State has to look in their

4    records to see if there is any lien on it, and if there is no

5    lien, they will allow the sale to somebody else.   The title

6    then goes into somebody else's possession.   Why wasn't there

7    some type of lien registered with the Secretary of State?

8              MR. PIOLI:   Well, Judge, I will confess as I stand

9    here right now, I don't know if it was registered or not.

10   Counsel has represented that it hasn't.   I haven't had an

11   opportunity to investigate that.

12             THE COURT:   Well, counsel is an officer of the Court

13   and she is saying that and you don't have any information to

14   rebut that.   I am just pointing out that just from, you know, a

15   practical standpoint where individuals just go buy a car or

16   sell a car, they cannot sell it if there is a lien on it.

17             MR. PIOLI:   Absolutely, Judge, but also whenever this

18   vehicle is sold, if they tried to sell it, they would have to

19   hand over title to the vehicle, and the title to the vehicle

20   expressly lists our lien interest.

21             THE COURT:   She says it's handwritten.   It's not

22   registered with the Secretary of State.

23             MR. PIOLI:   But I don't think they are disputing that

24   we actually hold that lien interest, whether it was recorded or

25   not.

1          THE COURT:  You might have written something there.  I

2     am not ruling on who has superior possession yet, but I am just

3     saying counsel is pointing out some problems with this type of

4     transaction that the parties have engaged in.

5          MR. PIOLI:  Whether it's recorded or not, that deals

6     with rights as to third parties.  It doesn't deal with our

7     possession rights proposed between the two parties before you

8     today.  They didn't go and sell it to some third party.  That's

9     the only time when they're not recorded.

10          THE COURT:  They have a title.  You know what title

11     means?  Title means I own it.

12          MR. PIOLI:  That's correct, Judge.

13          THE COURT:  Unless there is a lien.

14          MR. PIOLI:  That's correct, but they are not disputing

15     that we do have the lien.  Whether it's handwritten in or not,

16     it's there, and they are not disputing that it exists, and they

17     can only take title pursuant to the terms and conditions of the

18     master lease agreement.  That's how they got title to begin

19     with.

20          THE COURT:  Okay.  Next item, Defense Counsel.

21          MS. CAMPBELL:  Your Honor, with respect to the TH60

22     drill, that was purchased pursuant to a loan and security

23     agreement where there are some discrepancies between the loan

24     and security agreement and the purchase contract.  The purchase

25     contract for the TH60 indicates that Indie Energy owes

14

1   $349,000, yet the loan agreement through which it was financed

2   indicates that Indie Energy owes $564,000.  That approximately

3   $234,000 difference, your Honor, we submit means that there is

4   no default under the TH60 -- I'm sorry -- yes, that there is no

5   default under the TH60 agreement by virtue of the discrepancies

6   between the purchase contract for the TH60 and the loan

7   agreement.

8           THE COURT:  Okay.  Counsel for plaintiff.

9           MR. PIOLI:  Once again, Judge, we are getting to the

10  amounts that are disputed.

11          THE COURT:  Let me tell you this before even we

12  continue.  Plaintiff has to establish a prima facie case to a

13  superior right to possession of the disputed property, and it

14  doesn't stop there.  And you have to establish probably that

15  you will ultimately prevail on the underlying claim for

16  possession.  So you have to give me some probability that there

17  is a default about that purchase agreement that you will

18  probably prevail, and counsel is saying that based on the

19  numbers, there is no default on that agreement.  This is just

20  for the purpose of the replevin.

21          MR. PIOLI:  That's correct, Judge.  We submitted a

22  verified complaint.  We have given you sworn allegations that

23  they have not made any payments that are due under the

24  installment loan agreement.

25          THE COURT:  That's your side.  One side believes that

15

1    the other party hasn't paid me, and the other party is saying,

2    look, we don't owe any money at this point.

3         MR. PIOLI:  Judge, if I may.  As of today, the only

4    evidence before you is our sworn complaint.

5         THE COURT:  Yours and hers.

6         MR. PIOLI:  They have not submitted an answer, they

7    have not put any witnesses up on the stand.

8         THE COURT:  But this is the hearing, and, Counsel,

9    repeat what you're saying one more time about this TH60.

10        MS. CAMPBELL:  Absolutely, your Honor.  With respect

11   to the verified complaint and the attachments in the complaint,

12   I'm actually referring to two of the attachments, sorry, two of

13   the exhibits in the verified complaint.  I'm referring to the

14   installment loan and security agreement for the TH60 and also

15   the purchase invoice for the TH60.  The purchase invoice

16   indicates that the amount owed is $349,000.

17        THE COURT:  Stop there.  349.  How much?

18        MS. CAMPBELL:  Yes, $349,000.

19        THE COURT:  $349,000.  Plaintiff's counsel, do you

20   agree so far with what defense counsel says?

21        MR. PIOLI:  That was the equipment invoice that we

22   sent you?

23        MS. CAMPBELL:  Yes.

24        MR. PIOLI:  That's correct, Judge.  As of that date,

25   that's the invoice that was sent to them, and that's what they

1   owed.

2              THE COURT:  As of what date?

3              MR. PIOLI:  The date of the invoice which is --

4              THE COURT:  What exhibit are you looking at?

5              MS. CAMPBELL:  It's Group Exhibit C, your Honor.

6              THE COURT:  Okay.

7              MS. CAMPBELL:  Your Honor, in that invoice it

8    indicates that the way the TH60 was being financed which was --

9    I'm sorry -- the way the TH60 was being financed was through a

10   trade-in of another piece of equipment.  It actually turns out

11   to be another T2W, one that's not related to this particular

12   case, but we traded in the T2W, thereby having a balance of

13   $349,281.50, yet the installment and loan agreement with

14   respect to this very same piece of equipment, the TH60, does

15   not reflect that full trade-in, and it further reflects that

16   there is a principal finance of $564,588.46.

17             MR. PIOLI:  Judge, they signed and agreed to the

18   installment and loan agreement agreeing to make the payments

19   that are specified therein.  They failed to do so.

20             THE COURT:  Show me this document.

21             MR. PIOLI:  It's Group Exhibit C, Judge.

22             THE COURT:  What page?

23             MR. PIOLI:  The first page of Group Exhibit C.

24             THE COURT:  The first page, it says what?

25             MS. CAMPBELL:  The first page, your Honor, where it

1  says principal finance, $564,588.46, is in that first table on

2  the right-hand side.  Do you see where it indicates --

3          THE COURT:  Yes.  Are we looking at the same document,

4  Group Exhibit C?

5          MS. CAMPBELL:  Yes, Judge.

6          THE COURT:  Okay.  First page, on the right-hand side,

7  all I see is a purchase price in the top line of 104,000.

8          MS. CAMPBELL:  Is this what you are looking at?  No,

9  it's not.

10          MR. PIOLI:  I am looking at what you are looking at,

11  Judge.

12          THE COURT:  It's identified Group Exhibit.

13          MS. CAMPBELL:  I'm sorry, your Honor.  I'm sorry, the

14  TH60 actually -- because these installment and loan agreements

15  look virtually identical, it's part of another group exhibit.

16  I believe it's Group Exhibit E within your package.

17          THE COURT:  Let me get that group exhibit out.

18          MR. PIOLI:  Judge, can we just deal with this piece of

19  equipment right now?  This is Group Exhibit C.

20          MS. CAMPBELL:  Actually we are dealing with the TH60.

21          THE COURT:  We are dealing with something else.  Let

22  me follow up with what we are addressing first.  That's Group

23  Exhibit D now.  That's a different document.

24          MS. CAMPBELL:  Sorry, your Honor, about that.  So

25  that's -- in the right corner --

1          THE COURT:  It says principal financed, $564,588.46.

2     And we need to slow down because it's being transcribed.

3          MS. CAMPBELL:  And to the left of that, you'll see

4     where there is an indication as to the down payment of 44,761.

5     We submit, your Honor, that that is incorrect.  In fact, the

6     down payment should have been the value of the traded in piece

7     of equipment, which is indicated on a document that's included

8     within that group exhibit.  The purchase contract -- I'm

9     sorry -- the purchase invoice for that indicates that the

10    purchase price, the overall price was 604,500.

11         THE COURT:  Show me the document.

12         MS. CAMPBELL:  It's document -- it's right after the

13    installment and loan agreement, your Honor.

14         THE COURT:  Okay.

15         MS. CAMPBELL:  It's this document here.

16         THE COURT:  Identify it with something.

17         MS. CAMPBELL:  It says page 6 of 11 at the top at the

18    header.

19         THE COURT:  Okay.  On the bottom it says total 34 --

20    239,481.

21         MS. CAMPBELL:  Precisely, your Honor.  And this is the

22    document through which the correct -- the correct setoff was

23    reflected with respect to the trade-in of the equipment done.

24         THE COURT:  Okay.  Time out.  Time out.  The item was

25    -- principal financed was 564,000 and change and with a down

19

1    payment of 44,000; and then it says number of payments and

2    amount of payments $10,677; and it goes from July 1, 2007, to

3    July 1, 2010; total amounts of payments 671,000 and change,

4    correct, thus far?

5            MS. CAMPBELL:  That's correct, your Honor.

6            THE COURT:  This document was initialed by the

7    borrower on the bottom.  That's you?

8            MS. CAMPBELL:  That's my client, your Honor.

9            THE COURT:  Okay.  And now the page that you're

10   referring to attached to that document, exactly what do you

11   believe it's doing to this amount or to the requirements of the

12   payments?

13           MS. CAMPBELL:  We believe that this is the accurate

14   reflection of what the purchase price should have been for the

15   installment loan and security agreement; therefore, the

16   installment loan and security agreement is incorrect as to the

17   principal finance and the total amount owed.

18           MR. PIOLI:  Judge, if I may.  They signed the

19   agreement.  It has an integration clause.  There were no other

20   agreements.  This is it.  They agreed to make these payments

21   every month.  They failed to do so.

22           THE COURT:  Okay.

23           MR. PIOLI:  And the fact that --

24           THE COURT:  I understand what you're saying.  There is

25   an agreement.  Did you go change this agreement, Defendant?

1    Did you go back to the plaintiff and say, look, this is not a

2    correct agreement?  This started July 1, 2007.  Did you pay

3    monthly $10,600 at that time?

4         MS. CAMPBELL:  Yes.  Yes, your Honor, we were making

5    payments on the TH60, and the point that I am trying to make

6    here is with respect to whether or not there is actually a

7    balance owed currently and whether or not a default actually

8    exists in this particular circumstance where it's clear that we

9    traded in a piece of equipment, and, therefore, we had a credit

10   for that that's not reflected in the loan and security

11   agreement.  Therefore, there is technically no default under

12   the TH60, and the TH60 -- I'm sorry -- and the installment loan

13   and security agreement for the TH60 clearly provides on the

14   second page of the document that we shall retain ownership and

15   possession of the collateral.

16        THE COURT:  Okay.  Counsel for plaintiff, the page

17   that we are looking at, 6 of 11, what does that mean to you?

18        MR. PIOLI:  Judge, this precisely proves the point.

19   Whether or not we gave them a credit subsequent to their

20   signing the security agreement, they were still obligated to

21   make the payments.

22        THE COURT:  One second.  One second.  What does this

23   document mean to you?

24        MR. PIOLI:  As I look at it right now, Judge, without

25   having consulted my client about this specific invoice, it

1    looks like we gave them an additional credit, and they still

2    owe us the amount that's due on this invoice which they haven't

3    paid, and that's why we're here today.

4        THE COURT:  Okay.  Somebody has a contract with

5    another person, and under that contract, which is the

6    installment loan agreement, certain amounts are going to be

7    paid every month.  And let's assume it's $10,000 every month.

8    So in one year, that's going to be $120,000.  But then six

9    months later you go give credit for $60,000 or plus amount,

10   then the party has satisfied their payment obligations relating

11   to the remaining balance.  So there is some type of give and

12   take here going on.

13       So I think, you know, you two, instead of sitting down

14   and looking at the facts, you guys run to court and try to have

15   the court possess equipment or property without getting all the

16   facts together.

17       MR. PIOLI:  Judge, this is all news to me today.  I

18   never heard any of this.

19       THE COURT:  That's why I am saying you two should have

20   looked at this.  I am going to strike today's hearing.  I want

21   you to go back, get with your clients, get to the bottom of

22   these documents and see who owes who what; and if there is any

23   right to possession, after reviewing all these agreements and

24   payments and credits, then at that time you can come prepared

25   to argue and present to me what I need to rule on.  I cannot

1   rule on this thing just based on this confusing documentation

2   presentation.

3        The motion for replevin is denied without prejudice.

4   You can renew it after you get together with the parties.

5        MR. PIOLI:  Judge, can I have a written response to my

6   motion so I can understand what the arguments are?

7        THE COURT:  Counsel, I have ruled, and after you get

8   together with your client -- you don't have all the facts --

9   and get together with the other party, and I will rule on it,

10  but I cannot rule based on the documents and information

11  presented right now.  That's all.

12       MR. PIOLI:  Thank you.

13       MS. CAMPBELL:  Thank you, your Honor.

14   (Which were all the proceedings had in the above-entitled

15  cause on the day and date aforesaid.)

16   I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.

17

18  Carolyn R. Cox            Date
Official Court Reporter

19  Northern District of Illinois

20

21

22

23

24

25