IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ATLAS COPCO CONSTRUCTION )
MINING TECHNIQUE USA, LLC, )
et al., )
                               )
        Plaintiffs, )
                               )
    v. )   No. 08 C 2363
                               )
INDIE ENERGY SERVICES COMPANY,)
LLC, et al. )
                               )
        Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, we grant Plaintiffs' motion for summary judgment and we deny Defendants' motion for summary judgment.

## BACKGROUND

Plaintiffs engage in the business of financing, leasing, and renting items such as construction and mining equipment. Plaintiffs allege that on July 17, 2006, they entered into a Master Capital Equipment Lease (T2W Agreement) under which Plaintiff Atlas Copco Construction Mining Technique USA LLC (CMT) leased to

1

Defendant Indie Energy Services Company, LLC (Indie) an Atlas Copco drill, model number T2W, that was attached to a vehicle (T2W). Under the T2W Agreement, Indie was allegedly required to make periodic payments. On April 12, 2007, CMT allegedly entered into an Installment Loan and Security Agreement (Compressor Agreement) under which CMT loaned $99,450 to Indie to be repaid in installments, and in exchange, CMT retained a security interest in the collateral, which was an Atlas Copco compressor, model number XRVS 976CD (Compressor). On June 20, 2007, CMT allegedly entered into an Installment Loan and Security Agreement (TH60 Agreement) under which CMT loaned $564,588.46 to Indie to be repaid in installments, and in exchange, CMT retained a security interest in the collateral, which was an Atlas Copco drill, model number TH60 (TH60). Defendant Daniel Cheifetz (Cheifetz) allegedly executed a personal guarantee for Indie's obligations under the T2W Agreement, the Compressor Agreement, and the TH60 Agreement. According to Defendants, Plaintiffs told Defendants that they could use Plaintiffs' patented system Symmetrix (Symmetrix) along with the purchased equipment. Plaintiffs allegedly represented that Symmetrix would enhance the efficiency and quality of Indie's drilling operations. Defendants contend that the T2W, Compressor, and TH60 (collectively referred to as "Equipment") failed to perform as promised and were unsuitable for Defendants' business purposes.

 Plaintiffs contend that in March 2008, Plaintiff Atlas Copco Customer Finance USA LLC (ACF) notified Defendants that the T2W, Compressor, and TH60 accounts were overdue and delinquent. Plaintiffs allegedly then notified Indie that it

was in default and demanded return of the collateral. Plaintiffs contend that as of the day of the filing of their complaint, Indie owed $187,497.81 on the T2W Agreement, $72,571.79 on the Compressor Agreement, and $529,575.87 on the TH60 Agreement.

Plaintiffs include in their complaint a replevin claim (Count I), a breach of contract claim based on the T2W Agreement (Count II), a breach of contract claim based on the Compressor Agreement (Count III), a breach of contract claim based on the TH60 Agreement (Count IV), a claim seeking to recover amounts due on an account (Count V), and a claim seeking to recover amounts due under guarantees (Count VI). Defendants filed an answer and included the following affirmative defenses: (1) failure to mitigate damages, (2) setoff and recoupment, (3) setoff, (4) detrimental reliance on representations and warranties, (5) waiver, and (6) TH60 Agreement does not reflect a credit/set-off for equipment traded-in to Plaintiffs. Defendants also brought as counterclaims a breach of contract claim (Count I), a breach of express warranties claim (Count II), a breach of implied warranties of merchantability claim (Count III), a breach of implied warranties of fitness for a particular purpose claim (Count IV), a breach of implied warranties of merchantability claim (Count V), and a fraudulent misrepresentation claim (Count VI). On June 18, 2008, the court granted Plaintiffs' motion for order of replevin and ordered Defendants to return the equipment to Plaintiffs, pending the resolution of this case. Plaintiffs and Defendants now move for summary judgment on all claims and counterclaims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-

moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment the court should "construe all inferences in favor of the party against whom the motion under consideration is made." *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007)(internal quotations omitted); *see also Krieg v. Seybold*, 481 F.3d 512, 516 (7th Cir. 2007).

## DISCUSSION

I. Timeliness of Defendants' Filings

Plaintiffs argue that Defendants' motion for summary judgment and Defendants' response to Plaintiffs' motion for summary judgment were filed after the deadlines set by the court. However, Plaintiffs have not shown any undue hardship due to the lateness of the filings. Plaintiffs did not move to strike the filings during the briefing of the motions and Plaintiffs filed their corresponding responses to Defendants' briefs. Plaintiffs have not shown that the Defendants' late filings should be disregarded by the court and the court has considered Defendants' filings in ruling on the instant motions.

II. Prima Facie Elements of Plaintiffs' Claims

Plaintiffs contend that Defendants do not dispute that Plaintiffs can establish

5

the *prima facie* elements for each of their claims. However, Defendants have not admitted that they breached their contractual obligations. Although Defendants admit to the formation of valid contracts and to not performing as anticipated under the contracts, Defendants do not admit to breaching the contracts and argue that Defendants' non-performance was justified. For example, Defendants argue in regard to the breach of contract claims brought by Plaintiffs that although there was an acceptance of the equipment by Defendants, Defendants later executed a valid revocation of the acceptance. Defendants also argue that they were not obligated to perform as anticipated in the contracts because Plaintiffs breached their contractual obligations by providing Defendants equipment that was not suitable for Defendants' business purposes. Defendants further contend that their performance under the contracts with Plaintiffs was excused because Plaintiffs breached express and implied warranties and Plaintiffs made fraudulent representations to lure Defendants into the contracts. Thus, Defendants have not admitted that Plaintiffs can satisfy all of the *prima facie* elements of their claims.

III. Plaintiffs' Motion for Summary Judgment on Damages

Plaintiffs move for summary judgment "in their favor on all claims, defenses, and counterclaims," arguing that "none" of the counterclaims or defenses have merit. (P SJ 6, 15). Plaintiffs thus move for summary judgment on the affirmative defenses including those relating to damages. However, Plaintiffs have solely put forth arguments relating to the issue of liability and have not put forth any arguments

6

relating to damages or to Defendants' affirmative defenses, including Defendants' assertions that Plaintiffs failed to mitigate their damages. Nor have Plaintiffs proposed any damages amount that could be found reasonable as a matter of law.

IV. Plaintiffs' Claims

Defendants argue that their contractual obligations were nullified when they revoked their acceptance of the Equipment. Under Illinois law, pursuant to 810 ILCS 5/2-608:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. . . .

810 ILCS 5/2-608. The parties dispute whether the Equipment was inherently unsuitable for Defendants' business purposes, or whether the difficulties with the Equipment was due to Defendants' improper use of the Equipment. However, it is not necessary to resolve such disputed facts since Defendants failed to revoke their acceptance of the Equipment when given the opportunity to do so.

Plaintiffs argue that Defendants' position that the Equipment was defective is inconsistent with Defendants' continued use of the Equipment. Defendants claim that they were given assurances by Plaintiffs that Plaintiffs would fix the problems with the Equipment and that such assurances delayed Defendants' revocation. However, even if we were to accept as true Defendants' claims concerning assurances by Plaintiffs, that the value of the Equipment was substantially impaired, and that Defendants acted in a timely manner to attempt revocation, Defendants have not pointed to sufficient evidence to show that they executed a proper revocation.

### A. Refusal to Return Equipment

It is undisputed that Defendants never returned the Equipment to Plaintiffs. We note that Cheifetz stated in a conclusory manner that Defendants were willing to "drop [the Equipment] off in Wisconsin" to Plaintiffs, (Chief. Dep. 49), the overwhelming evidence in the record belies Defendants' willingness to give the Equipment back to Plaintiffs. In fact, it was necessary to conduct a replevin hearing in this case to order Defendants to relinquish possession of the Equipment to Plaintiffs. Defendants have not shown any justification for continuing to use and

possess the Equipment after allegedly attempting to revoke acceptance of the Equipment. Under Illinois law, a buyer cannot "retain possession of the property and use it for its own profit in its business and at the same time insist upon the rejection" since "[t]he two things are utterly inconsistent." *Brule C. E. & E. Inc. v. Pronto Foods Corp.*, 278 N.E.2d 477, 480 (Ill. App. Ct. 1971).

Both Cheifetz and Eric Larson, an Indie employee, testified that when they discovered the true nature of the alleged defects in the Equipment and that the problems could not be remedied, they attempted to return the Equipment to Plaintiffs, but Plaintiffs refused to accept the Equipment. Cheifetz testified that due to Plaintiffs' efforts to fix the problems, Defendants did not initially return the equipment, but that Defendants "subsequently tried to return it." (Chief. Dep. 48). Larson testified at his deposition that Defendants did not initially return the equipment because Defendants "were trying to work through the issues with" CMT. (Lars. dep. 49-50). Larson contends that finally, Defendants attempted to return the Equipment and that Plaintiffs "rejected [Defendants'] attempts to return the [E]quipment." (Lars. dep. 28). However, Larson, when questioned further, explained that Defendants had proposed a trade-in of the Equipment to Plaintiffs for other items. Thus, the undisputed facts show that Defendants did not unconditionally seek to return the Equipment to Plaintiffs at the time of the alleged revocation by Defendants. Defendants have not pointed to any evidence that would indicate that Plaintiffs were obligated to accept the trade-in offer and, regardless, if Defendants wanted a revocation, then they needed to be willing to unconditionally relinquish

possession of the Equipment as part of their avowed revocation. Whether there should have been any equipment trade is a separate contractual issue.

Defendants' claims of assurances by Plaintiffs that they would correct the alleged defects does not excuse Defendants' ultimate failure to express a willingness to return the Equipment at the time of the supposed revocation. Defendants claim that "[w]hen it became clear to Defendants that the Symmetrix system as specified by Plaintiffs was inappropriate for Defendants' business purposes, they attempted to return the [E]quipment for other equipment that was appropriate." (Ans. P SJ 4). Thus, according to Defendants themselves, they were no longer deceived by Plaintiffs' alleged assurances, when they attempted a revocation, but conditioned a return of the Equipment on a trade-in deal. The undisputed evidence shows that despite Defendants' contention that the Equipment was not satisfactory to them, they continued to use the Equipment in their business. (Lars. dep. 37 ). Defendants also admit that while they continued to use the Equipment for their business, they ceased making payments because the Equipment "wasn't working for [Defendants'] intended business purposes." (Lars. dep. 24, 27, 43, 44, 46, 57). Defendants' claims of an attempted revocation and refusal to make payments owed under the agreements, is thus inconsistent with Defendants' refusal to return the Equipment to Plaintiffs and Defendants' continued use of the Equipment in their operations.

### B. Necessity of Retention of Equipment

Defendants argue that they could not return the Equipment to Plaintiffs due to

the necessity of the Equipment to complete their work. Defendants argue that "it was reasonable for Defendants to continue using the [E]quipment while Plaintiffs attempted to cure the defects because the [E]quipment was critical to the survival of its business and was the only equipment with which they could have continued operation." (Ans. P SJ 4). However, as explained above, Defendants acknowledge that they were no longer under the false impression that Plaintiffs were going to be able to fix the defects in the Equipment at the time of the supposed revocation. In addition, Defendants have failed to cite to evidence to support their necessity argument. The above quotation from Defendants' brief is supported only by a citation to page 37 of Larson's deposition. At no point in that portion of Larson's deposition did he indicate that "the [E]quipment was critical to the survival of its business and was the only equipment with which they could have continued operation." (Ans. P SJ 4). Larson, in fact, acknowledged at his deposition that Defendants were able to locate replacement equipment and currently use equipment made by another manufacturer. (Lars. dep. 51-52). Also, the assertion by Defendants in their answer brief that "the [E]quipment was critical to the survival of its business and was the only equipment with which they could have continued operation" is absent from Defendants' statement of material facts, Defendants' statement of additional material facts, and their response to Plaintiffs' statement of material facts.

Finally, even if there is some support in the record for their assertion that the Equipment was necessary to the survival of their business, Defendants have failed to

11

point to sufficient evidence to create a genuinely disputed fact that the Equipment was necessary for the survival of their business such that Defendants were justified in not returning the Equipment. We also note that as Plaintiffs' point out, it is undisputed that at the time of the proposed revocation and the alleged trade proposal, Defendants were attempting to trade-in the drill rigs for air compressors. (Chief. dep. 48-49). The fact that Defendants were not seeking to trade-in the drill rigs for replacement drill rigs is inconsistent with Defendants' unsupported assertions that they could not return the drill rigs at that time because they were essential to the survival of their business and that they could not get replacements. *See* 810 ILCS 5/2-606 (referring to acts "inconsistent with the seller's ownership"). In addition, if in fact the Equipment was necessary to the survival of Defendants' business and Defendants kept and used the Equipment, they should have been making payments to Plaintiffs under the contracts. Thus, based on the above, the undisputed evidence shows that Defendants did not execute a valid revocation and remained bound by their contractual obligations to make the necessary payments to Plaintiffs.

C.  Waiver

Defendants assert that Plaintiffs' breach of contract claim is barred by a waiver on the part of Plaintiffs. Defendants contend that Plaintiffs waived their right to enforce the payment terms of the agreements when Plaintiffs accepted untimely and partial payments in the past. Plaintiffs acknowledge that in the past they accepted such payments from Defendants. However, as pointed out by Plaintiffs, the

agreements contain non-waiver clauses stating that Plaintiffs would not waive the right to demand future strict compliance with the terms of the agreements by failing to require strict compliance at an earlier time. (R PSF Par. 36). Particularly in light of the non-waiver clauses, Defendants have not pointed to sufficient evidence to show that they could prevail on a waiver defense. Therefore, based on the above, we grant Plaintiffs' motion for summary judgment on Plaintiffs' claims and we deny Defendants' motion for summary judgment on Plaintiffs' claims. In addition, Defendants have asserted a breach of contract counterclaim premised on the alleged failure of Plaintiffs to provide equipment suitable for Defendants' business purposes. However, as explained above, Defendants have failed to provide sufficient evidence that such was the case, and even if such allegations are accurate, Defendants accepted the Equipment and failed to properly revoke the acceptance. Therefore, we also grant Plaintiffs' motion for summary judgment on Defendants' breach of contract counterclaim (Count I) and we deny Defendants' motion for summary judgment on Defendants' breach of contract counterclaim (Count I).

V. Breach of Warranties Counterclaims

Defendants argue in their counterclaims that Plaintiffs breached express warranties (Count II), implied warranties of merchantability (Counts III, V), and implied warranties of fitness for a particular purpose (Count IV). Plaintiffs argue that Defendants cannot premise a breach of contract claim on any supposed warranties since the agreements between the parties precluded such warranties.

13

### A. Express Warranties

Plaintiffs point out that all three agreements at issue contain integration and no-reliance clauses. Plaintiffs also point out that none of the agreements contain applicable express warranties. Defendants only response is to point to a warranty in the TH60 Agreement. However, such warranty merely guaranteed that the items would be "free of defects in material and workmanship" and that any parts with defects would be repaired or replaced. (TH60 War. 4). Defendants have not asserted in this case that the Equipment was inherently defective. Rather, Defendants contend that the Equipment was not suited for their business purposes. Thus, the express warranty is not applicable. In response to Plaintiffs' motion for summary judgment, Defendants also point to the deposition testimony of Eugene Mattila (Mattila). Mattila testified that Plaintiffs offered warranties with the Equipment guaranteeing the "product to be free of defects, material and manufacturer defects." (Matt. dep. 37). However, Defendants have not pointed to evidence showing that any of the Equipment was inherently defective. Thus, in the absence of sufficient evidence to support Defendants' express warranties counterclaims, we grant Plaintiffs' motion for summary judgment on the breach of express warranties counterclaim claim (Count II) and we deny Defendants' motion for summary judgment on that claim.

### B. Implied Warranties

Plaintiffs also argue that there cannot be any implied warranties based on the no-reliance and integration clauses in the agreements at issue. The T2W Agreement

disclaims any implied warranties, providing that the equipment "is leased 'as is.'" (T2W Ag. Par. 15); *see* 810 ILCS 5/2-316(3)(a)(stating that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty"). Defendants have not pointed to sufficient evidence of circumstances to negate the implied warranty disclaimer in the T2W Agreement.

All three agreements at issue contain integration and no-reliance clauses. Under Illinois law, warranties can be waived in contracts by the agreement of the parties. 810 ILCS 5/2-316. The agreements at issue provide for example, that "[n]o oral agreement, guarantee, promise, condition, representation or warranty shall be binding on Lessor," and "[a]ll prior conversations, agreements and/or representations related to th[e] Lease and/or Equipment are integrated in th[e] Lease." (T2W Ag. Par. 15). The agreements also provide that the written agreements "constitute the entire agreement between the parties. . . ." (Compr. Ag. Par. 6.9); (TH60 Ag. Par. 6.9). Defendants have not pointed to sufficient evidence of circumstances that would negate such contractual waivers and Defendants are therefore barred from pursuing their warranties counterclaims. Thus, we grant Plaintiffs' motion for summary judgment on Defendants' warranties counterclaims (Counts II-IV) and we deny Defendants' motion for summary judgment on Defendants' warranties counterclaims (Counts II-IV).

## VI. Fraud Counterclaim

Defendants argue as a counterclaim that Plaintiffs committed fraud when Plaintiffs allegedly assured Defendants that the Equipment would be suitable for their business purposes. Under Illinois law, for a common law fraud claim, a plaintiff must establish: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). Plaintiffs contend that Defendants cannot prevail on their fraud claim because Defendants have not presented evidence showing the details concerning alleged misrepresentations and Defendants did not rely on any representations by Plaintiffs.

Defendants claim that they did rely on Plaintiffs' advice, pointing out that . Cheifetz testified in his deposition that Defendants relied on CMT and that CMT was "the multibillion [dollar] company that was supposed to have the expertise." (Chief. Dep. 48). Larson also indicated at his deposition that Plaintiffs represented that the Equipment would be suitable for Defendants' business purposes, stating that CMT "presented the Symmetrix system as a system to improve [Defendants'] drilling operations in the company" and that the "T2W and Symmetrix system did not perform as was represented by" CMT. (Lars. dep. 25, 27). However, Defendants have failed to point to any evidence detailing what the statements were or when they were made. The record is devoid of such facts that would enable Defendants to

16

prove their fraud counterclaim at trial.

In addition, the undisputed evidence shows that Defendants did not rely on Plaintiffs' advice in selecting Symmetrix and there is an absence of evidence to show that any representations by Plaintiffs, if such were made, caused any harm to Defendants. Defendants contend, without supporting evidence, that Plaintiffs' employees Todd Armstrong and John Hislop made representations to Defendants. However, the record indicates that they have no knowledge of any such statements. (Hislop dep. 37-38). Larson, Defendants' employee, also indicated at one point during his deposition that Armstrong did not make representations guaranteeing effective drilling performance. (Lars. dep. 63-64). The record also indicates that to the extent that Plaintiffs gave any recommendations concerning problems with the Equipment and the proper operation of the Equipment, such recommendations were made after the Equipment was leased and the recommendations were mainly disregarded by Defendants. (Hislop dep. 22-23, 25-26, 37-38, 45, 56-60, 72). Plaintiffs have also produced the affidavit of Howard White, a former employee of Defendants. White states in his affidavit that "[t]he decision to move to Symmetrix was not based on any misrepresentations made by Atlas Copco as to the adequacy or suitability of Symmetrix for Indie['s] purposes." (White Dep. Par. 7). Defendants contend that they had difficulty locating White for a deposition and he will not be available for trial. However, there is no requirement that affiants be subject to cross examination at the summary judgment stage. Federal Rule of Civil Procedure 56 specifically allows parties to support their summary judgment motions with

affidavits. Fed. R. Civ. P. 56. It is speculation on Defendants' part that White would not be available at trial and, in fact, Plaintiffs contend that White was on vacation during the period when Defendants attempted to contact him. Finally, to the extent that Defendants refer to certain representations by Plaintiffs and marketing materials put forth by Plaintiffs, such statements amount to nothing more than opinion and puffery and cannot form the basis of a fraud claim. It appears, based on the totality of the circumstances, that Defendants after using the Equipment leased to them by Plaintiffs, and being sued for failing to pay for such Equipment, have made allegations of fraud relating to the leases without sufficient support. Therefore, we grant Plaintiffs' motion for summary judgment on the fraud counterclaim (Count VI), and deny Defendants' motion for summary judgment on the fraud counterclaim (Count VI).

## CONCLUSION

Based on the foregoing analysis, we grant Plaintiffs' motion for summary on all claims and deny Defendants' motion for summary judgment on all claims. As to the issue of damages, Plaintiffs are given until January 19, 2010, to file a memorandum. Defendants are given until February 7, 2010, to file a response. Plaintiffs are given until February 21, 2010, to file a reply.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   December 2, 2009